UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

YOUSEF AHMED, *et al.*,

                  *Plaintiffs*,

v.

CITY OF BUFFALO, et al.,
                 *Defendants*.

_____

Civil Action No.: 25-cv-391

---

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S TOWN OF TONAWANDA, GRANT F. CURREY,
NICHOLAS J. LUND, MITCHELL F. MARASCHIELLO,
JEREMIAH J. WALSCH-STEINER,
AND KELLY J. WRIGHT, MOTION TO DISMISS**

---

COLUCCI & GALLAHER, P.C.
*Attorneys for Defendants Town of
Tonawanda, Grant F. Currey,
Nicholas J. Lund, Mitchell F.
Maraschiello, Jeremiah J. Walsch-
Steiner, and Kelly J. Wright*
800 Main Place Tower
350 Main Street
Buffalo, New York 14202

Paul Joyce
Marc Smith
     *of counsel.*

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL STANDARD.................................................................................................. 1

ARGUMENT ............................................................................................................................ 2

    I.  Most of Plaintiffs' claims under 42 U.S.C. §1983 are facially implausible. .............. 2

        A.  The 108-page Complaint Contains Only Two Substantive Allegations against the Tonawanda Officers. .................................................................................................... 3

        B.  With the absence of substantive allegations against the Officers, Plaintiffs' §1983 claims become near-universally implausible. ............................................................... 4

    II.  Plaintiffs' §1983 Substantive Due Process claim must be dismissed.......................... 7

    III. Plaintiffs' *Monell* Claims Do Not Allege a Policy or Custom for Tonawanda. .......... 9

    IV. Plaintiffs' state law claims must be dismissed for various reasons. ..........................11

        A.  All of Plaintiff Frazier's state law claims must be dismissed. ...................................11

        B.  Plaintiffs' Civil Rights Law section 40-c claims must be dismissed. ........................ 13

        C.  Plaintiffs' Civil Rights Law section 79-n claims must be dismissed......................... 13

        D.  Plaintiffs' Assault/Battery claims must be dismissed. .................................................. 14

        E.  Plaintiffs' False Arrest and False Imprisonment claims must be dismissed. ............. 15

        F.  Plaintiffs' Abuse of Process claims must be dismissed............................................... 16

        G.  Plaintiffs' Negligence/Gross Negligence claims must be dismissed. ......................... 18

        H.  Plaintiffs' State Constitutional Claims Must Be Dismissed....................................... 18

        I.  Plaintiffs' Negligent Hiring/Training/Supervision Claims Must Be Dismissed. ........ 19

    VI. The Tonawanda Officers Have Qualified Immunity. .................................................. 21

        A.  The Tonawanda Officers Have Qualified Immunity Against Ms. Krull. .................... 22

        B.  The Tonawanda Officers have qualified immunity against the Non-Krull Plaintiffs. 25

CONCLUSION......................................................................................................................... 25

## Cases

*Ahluwalia v. St. George's Univ.*, 626 F. App'x 297 (2d Cir. 2015) .................................... 19

*Alexander v. City of New York*, 2004 U.S. Dist. LEXIS 17042 (S.D.N.Y. 2004) ............... 12

*Amore v. Novarro*, 624 F.3d 522 (2d Cir. 2010) ............................................... 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................... 2, 7, 20

*Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001) ...................................... 6, 21

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir. 2004) .......... 2, 5

*Bass v. Jackson*, 790 F.3d 260 (2d Cir. 1986) ................................................. 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................. 2

*Bernard v. United States*, 25 F.3d 98 (2d Cir. 1994) .......................................... 18

*Betts v. Sherman*, 751 F.3d 78 (2d Cir. 2014) ................................................ 22

*Boehner v. City of Rochester*, 609 F. Supp. 3d 220 (W.D.N.Y. 2022) ............................ 18

*Bowles v. State Univ.,* 2022 U.S. Dist. LEXIS 58585 (W.D.N.Y. 2022) .......................... 19

*Cardona Cmty. Access, Inc.*, 2013 U.S. Dist. LEXIS 10778 (E.D.N.Y. 2013) ................. 13

*Case v. City of New York*, 233 F. Supp. 3d, 372 (S.D.N.Y 2017) ................................. 4, 6

*Coleman v. City of New York*, 585 F. App'x 787 (2d Cir. 2014) ................................. 16, 17

*Collier v. City of Mount Vernon*, 2024 U.S. Dist. LEXIS 159330 (S.D.N.Y. 2024) ........... 12

*Collins v. Putt*, 979 F.3d 128 (2d Cir. 2020) ................................................ 8

*Connick v. Thompson*, 563 U.S. 51 (2011) ................................................... 9, 11

*Dollard v. City of New York*, 408 F. Supp. 3d 231 (E.D.N.Y. 2019) ............................. 18

*Ganek v. Leibowitz*, 874 F.3d 73 (2d Cir. 2017) ............................................. 22, 24

*Garcia v. Doe*, 779 F.3d 84 (2d Cir. 2014) .................................................. 23

*Giamo & Vreeburg v. Smith*, 599 N.Y.S.2d 841 (App. Div. 1993) ................................ 13

*Hardy v. City of New York*, 2013 U.S. Dist. LEXIS 100665 (S.D.N.Y. 2013) ................... 7

*Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789 (2d Cir. 1999) ................ 12

*Hernandez v. United States*, 939 F.3d 191 (2d Cir. 2019) ..................................... 16

*Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013) .............................................. 1

*Hu v. City of New York*, 927 F.3d 81 (2d Cir. 2019) .......................................... 8

*In re NYSE Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007) ........................................... 2, 8

*Jones v. Town of East Haven*, 691 F.3d 72 (2d Cir. 2012) ...................................... 9

*Jordan v. Wright*, 2024 U.S. Dist. LEXIS 141795, *26 (D. Conn. 2024) .......................... 4

*Kass v. City of New York*, 864 F.3d 200 (2d Cir. 2017) ....................................... 22

*LaMagna v. Brown*, 474 F. App'x 788 (2d Cir. 2012) ........................................... 3

*Lazare v. City of New York*, 2021 U.S. Dist. LEXIS 243332 (E.D.N.Y. 2021) ................. 15

*Levantino v. N.Y. State Police*, 56 F. Supp. 3d 191 (E.D.N.Y. 2014) .......................... 15

*Linton v. Zorn*, 135 F.4th 19 (2d Cir. 2025) ................................................ 22, 25

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015) .................................. 10

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) .......................................... 9

*Montero v. City of Yonkers*, 890 F.3d 386 (2d Cir. 2018) ...................................... 9

*Panetta v. Crawley*, 460 F.3d 388 (2d Cir. 2006) ............................................. 22, 24

*Paul v. City of New York*, 2017 U.S. Dist. LEXIS 156416 (S.D.N.Y. 2017) ...................... 19

*Pearson v. Callahan*, 555 U.S. 223 (2009) ................................................................. 21

*Peters v. Ulster Cnty. Sheriffs*, 2025 U.S. Dist. LEXIS 42612 (N.D.N.Y. 2025)................. 4

*Pierre v. Doorley*, 830 F. App'x 58 (2d Cir. 2020) ...................................................... 9

*Pinto v. City of New York*, 728 F. App'x 26 (2d Cir. 2018) ......................................... 22

*Potrzeba v. Sherburne Earlville*, 2023 U.S. Dist. LEXIS 227159 (N.D.N.Y. 2023)............ 4

*Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. 2001) .......................................... 21

*Raspardo v. Carlone*, 770 F.3d 97 (2d Cir. 2014)....................................................... 2

*Rodriguez v. City of New York*, 291 F. Supp. 3d 396 (S.D.N.Y. 2018)............................ 4

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003)............................................. 16

*Drawbridge v. Schenectady Cnty.,* 2024 U.S. App. LEXIS 6381 (2d Cir. 2024) ............... 10

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995)....................................... 15

*Snead v. City of New York*, 463 F. Supp. 3d 386, 399–400 (S.D.N.Y. 2020) ...................... 6

*Stevens v. City of New York*, 2012 U.S. Dist. LEXIS 165936 (S.D.N.Y. 2012) ................ 12

*Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020) ............................................ 2, 25

*Thomas v. Vendetto*, 925 F. Supp. 2d 353 (E.D.N.Y. 2013)........................................ 6

*United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.3d 105 (2d Cir. 1993) .......... 14

*Vasallo v. City of New York*, 2016 U.S. Dist. LEXIS 162704 (S.D.N.Y. 2016) ................... 9

*Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005)................................................................. 8

*Wright v. City of Syracuse*, 2014 U.S. Dist. LEXIS 44524 (N.D.N.Y. 2014) .................... 19

*Wyllie v. DA*, 770 N.Y.S.2d 110 (App. Div. 2003) ........................................................ 14

*Ying Li v. City of New York*, 246 F. Supp. 3d 578 (E.D.N.Y. 2017) ............................5, 6, 7

*Zalaski v. City of Hartford*, 723 F.3d 382 (2d Cir. 2013) ........................................... 23

*Zeng v. Chell*, 2022 U.S. Dist. LEXIS 36266 (S.D.N.Y. 2022) ......................................... 14

## PRELIMINARY STATEMENT

Defendants the Town of Tonawanda (hereinafter the "Town") and Officers Grant F. Currey, Nicholas J. Lund, Mitchell F. Maraschiello, Jeremiah J. Walsch-Steiner, and Kelly J. Wright (collectively, the "Tonawanda Officers"), by and through their counsel, Colucci & Gallaher, P.C.,   respectfully submit this memorandum of law in support of their motion to dismiss.

Plaintiffs' 466-paragraph complaint is 108 pages long, but as much as it concerns Tonawanda and the Tonawanda Officers, length is deceptive.  Primarily, for the complaint's 466 paragraphs, there are only *two* substantive factual allegations against the Tonawanda Officers – concerning one Plaintiff – so most of Plaintiffs' 42 U.S.C. §1983 ("§1983") claims are facially implausible.  Second, all of Plaintiffs' §1983 substantive due process claims must be dismissed as duplicative.  Third, like the §1983 claims against the Tonawanda Officers, Plaintiffs' *Monell* claim against Tonawanda is similarly positioned by lack of substance: Plaintiffs offer scores of conclusory allegations against Tonawanda, but fail to offer *any* factual allegations showing the existence of an unconstitutional policy or custom.  Fourth, for reasons both substantive and procedural, the myriad New York state law claims cannot survive a 12(b)(6) motion.  Fifth, Plaintiff Frazier's and Mr. Ayoub's specific claims against Tonawanda are both vague and conclusory.  Last, the Tonawanda Officers are entitled to qualified immunity against all of the claims.

## PROCEDURAL STANDARD

Courts must grant a Rule 12(b)(6) motion to dismiss when a complaint does not "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013).  Courts "need not accord

1

'[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness[.]" *In re NYSE Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).   Instead, to determine whether a complaint states a claim for relief that is plausible on its face, courts must engage in a "context-specific task[,]" focusing only on a complaint's "well-pleaded facts[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When a complaint's well-pleaded facts do not "nudge" a plaintiff's claims "across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

### I.   Most of Plaintiffs' claims under 42 U.S.C. §1983 are facially implausible.

There are only two factual allegations against the Tonawanda Officers that are arguably "well-pleaded," so Plaintiffs' §1983 claims are near-universally implausible. Section 1983 creates liability against individuals "who, under the color any statute, ordinance, regulation, custom or usage . . . subjects, or causes to be subjected . . . any person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. §1983.  To establish liability, plaintiffs must prove: "(a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004).

Importantly, the Second Circuit has cautioned that "if a defendant has not *personally* violated a [§1983] plaintiff's constitutional rights, the plaintiff cannot succeed ..." *Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) (emphasis added); *see Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020) (explaining that the plaintiff "must ... establish that [the defendant] violated the Eighth Amendment by [her] own conduct, not by reason of [her]

2

supervision of others that committed the violation."). To sufficiently plead a §1983 claim, then, "A plaintiff must . . . allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson*, 790 F.3d 260, 263 (2d Cir. 1986). Absent this connection, §1983 claims cannot stand. *See LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (affirming dismissal of complaint for failure to allege personal involvement).

Here, the complaint only offers two substantive factual allegations against the Tonawanda Officers, and so, given this paltry substantive pleading, many §1983 claims must fail.

### A. The 108-page Complaint Contains Only Two Substantive Allegations against the Tonawanda Officers.

The Complaint begins by introducing Tonawanda and the Tonawanda Officers with copy & paste legal conclusions. *See* Compl. ¶34 ("Officers from each respectively municipality directly caused or failed to prevent the constitutional violations described herein."). The first time the complaint mentions the individual officers specifically is paragraph forty-two, but even then, that paragraph simply claims that the Officers "were acting under color of state law." Compl. ¶42.

It is not until paragraph 192 that the complaint first addresses the Tonawanda Officers in a non-formulaic manner. There, the complaint states: "Ms. Krull was violently tacked, piled upon, zip-tied, and apprehended by officers of the Tonawanda Police Department, including Defendants Maraschiel, Lund, [and] Walsh-Steines ...." Compl. ¶192. After that, Officers Maraschiel, Lund, and Walsh-Steines are not mentioned again. In that same vein, it is not until paragraph 333 that Officer Wright is first mentioned, though the allegation bears no relation to any plaintiff. Rather, paragraph 333 alleges that "Defendant Wright from the Town of Tonawanda Police Department instructed Tonawanda officers to get 'physically

3

involved if necessary for the safety of the public.'"  Compl. ¶333.  The complaint contains

no elaboration on when, where, or in what context Officer Wright made that instruction.  And

after that paragraph, the complaint does not mention Officer Wright again.  Finally, it must

be noted that Officer Currey is not mentioned *at all* after paragraph forty-two.

### B. With the absence of substantive allegations against the Officers, Plaintiffs' §1983 claims become near-universally implausible.

Count I (Retaliation), Count II (Freedom to Record), Count III (Excessive Force),

Count IV (False Arrest), Count VI (Religious Discrimination) and Count VII

(Substantive/Procedural Due Process) must be dismissed.[1]  Courts in the Second Circuit

routinely dismiss these types of §1983 claims when plaintiffs fail to allege defendant officers'

personal involvement.  *See Peters v. Ulster Cnty. Sheriffs Dep't/Employees*, No. 9:22-cv-

0638 (DNH/TWD), 2025 U.S. Dist. LEXIS 42612, *17 (N.D.N.Y. Feb. 28, 2025) (finding

that the plaintiff failed to state a Free Exercise claim or an Equal Protection claim); *Jordan

v. Wright*, No. 3:24-cv-1166 (VAB), 2024 U.S. Dist. LEXIS 141795, *26 (D. Conn. Aug. 9,

2024) (dismissing Procedural Due Process claim); *Potrzeba v. Sherburne Earlville High Sch.*,

No. 3:23-cv-191 (BKS/ML), 2023 U.S. Dist. LEXIS 227159, *16–17 (N.D.N.Y. Dec. 21,

2023) (dismissing the First Amendment retaliation claims against individual defendants);

*Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 410 (S.D.N.Y. 2018) (dismissing a §1983

false arrest claim where the plaintiff failed to allege a defendant-officer "had any

involvement in – beyond physical proximity to – [his] arrest"); *Case v. City of New York*, 233

F. Supp. 3d, 372, 398 (S.D.N.Y 2017) (explaining that the plaintiff "has not provided any

---

[1]  Except as to Ms. Krull.  Ms. Krull's claims still must be dismissed, however, because the Tonawanda Officers are entitled to qualified immunity against them.  *See* Section V, *infra*.

facts suggesting a plausible basis for [the defendant's] personal involvement in the excessive force she alleges").

The only Plaintiff whom the complaint alleges the Tonawanda Officers' direct contact with is Ms. Krull.  *See* Compl. ¶ 192.  The other nine Plaintiffs—Mr. Ahmed, Mr. Jay Ayoub, Mr. Majd Ayoub, Ms. Soleigh Dougherty, Ms. Elvi Dougherty, Plaintiff Frazier, Mr. Georger, Mr. Khatib, and Ms. Mohammed (the "Non-Krull Plaintiffs") do not allege any contact with any of the Tonawanda Officers.  And given this absence of interaction, the idea that the Tonawanda Officers thus "caused [them] to be deprived of a federal right" becomes entirely implausible.  *Back*, 365 F.3d at 122; *see Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598–99 (E.D.N.Y. 2017) (dismissing the plaintiff's section 1983 claims where she did not "allege that any of the[] five officers had even a minimal role in arresting, investigating or prosecuting her.").  The Non-Krull Plaintiffs' section 1983 claims must be dismissed.

In opposition, Plaintiffs might claim that: (a) they *do* plead the Tonawanda Officers' personal involvement in the other Plaintiffs' injuries, in that the Tonawanda Officers were "present" at the scene; (b) the complaint, in using terms like "Defendant" and "Defendant Officers," *does* make more than two well-pleaded factual allegations against the Tonawanda Officers; and (c) similar to "presence," the complaint *does* adequately allege the Tonawanda Officers' personal involvement, through a failure-to-intervene theory.  These arguments would all miss the mark.

First, merely alleging the Tonawanda Officers' "presence" at the May 1 protest does not plausibly allege section 1983 claims against the non-Krull Plaintiffs.  Second Circuit courts have consistently held that alleging only 'presence' – apart from actual, concerted participation – is insufficient to state a §1983 claim.  *See Snead v. City of New York*, 463 F.

Supp. 3d 386, 399–400 (S.D.N.Y. 2020) ("An officer's mere presence at the scene of a stop or an arrest generally does not constitute sufficient personal involvement for §1983 liability."); *Ying Li*, 246 F. Supp. 3d at 599  ("The translating officers' mere presence . . . is simply not enough to allege their direct involvement in the *unlawful* conduct . . . ."); *Case*, 233 F. Supp. 3d at 398  (holding the allegation that an officer "was present in the area of the protest" as insufficient to state a section 1983 excessive force claim).  Thus, the absence of allegations of personal involvement beyond 'presence' is fatal.

Second, use of the group label "Defendants" and "Defendant Officers" fails to make well-pleaded section 1983 allegations against the Tonawanda Officers.  Including John/Jane Does, there are 128 defendants in this case – in most instances, therefore, when the complaint uses the terms "Defendants" and "Defendant Officers," it refers to at a minimum dozens of individuals and at a maximum over 100.  Yet without elaboration into which "Defendant Officer" did what, this employment of group pleading cannot not plausibly state a §1983 claim under Second Circuit law. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed [to state a claim]."); *Thomas v. Vendetto*, 925 F. Supp. 2d 353, 363 (E.D.N.Y. 2013) (finding it "insufficient for the plaintiffs to rely on group pleading . . . without making specific allegations").  Thus, the Non-Krull Plaintiffs must make specific factual allegations supporting including the Tonawanda Officers into group labels: they have not do so.

Third, apart from conclusory allegations, the complaint offers nothing *substantive* supporting a failure-to-intervene section 1983 theory against the Tonawanda Officers.  The complaint conclusively states that "Each Defendant Officer had a realistic opportunity to

intervene to prevent the unlawful acts being committed[,]" Compl. ¶207, but that allegation means nothing. *See Iqbal*, 556 U.S. at 678. Besides merely stating that the Tonawanda Officers could have intervened in *every* possible constitutional violation, failure-to-intervene plausibility requires some elaboration of the greater context. As one District Court stated:

> Plaintiff asserts that the Individual Defendants were all present at the stop, search, and arrest of Plaintiff . . . , but he does not say what they *did*. . . . Th[e] restatement of the legal standard for stops and searches does not sufficiently allege constitutional violations in which the Individual Defendants might have intervened. Where were the officers in relation to Plaintiff and in relation to each other? What impermissible actions did they take? Which officers observed those actions? Plaintiff does not say. Accordingly, he fails to nudge his failure to intervene claim from possible to plausible.

*Hardy v. City of New York*, No. 12 Civ. 17 (RJS), 2013 U.S. Dist. LEXIS 100665, *11–12 (S.D.N.Y. July 8, 2013).

Questions such as where were the Tonawanda Officers? What impermissible actions did the non-Tonawanda Officers take? Which Tonawanda Officers observed those actions? Plaintiffs, like in *Hardy*, do not say. Such general and conclusory failure-to-intervene pleading is insufficient to state a plausible §1983 claim. *See Ying Li*, 246 F. Supp. 3d at 619 ("Plaintiff resorts to conclusory generalized allegations asserting her failure to intervene claim against every single Defendant and refers to the numerous defendants collectively."). Their section 1983 claims against the Tonawanda Officers cannot stand.[2]

## II.    **Plaintiffs' §1983 Substantive Due Process claim must be dismissed.**

Plaintiffs' Due Process claim (Count VII) fails due to the lack of allegation regarding the Tonawanda Officers' personal involvement; to the extent the claim is staked on Substantive Due Process, it must also be dismissed. The Second Circuit has explained that

---

[2] Except as to Ms. Krull, but again, those claims still must be dismissed because the Tonawanda Officers have qualified immunity. *See* Section V, *infra*.

"[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision" – and it is inappropriate to do so "under the more generalized notion of substantive due process." *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019). Accordingly, when plaintiffs couch Substantive Due Process claims in the same allegations they base more particularized constitutional claims, the Due Process claims are routinely dismissed. *See Collins v. Putt*, 979 F.3d 128, 136 (2d Cir. 2020) (holding that a First Amendment claim subsumed the Substantive Due Process claim); *Hu*, 927 F.3d at 104 (dismissing Substantive Due Process claim because it "rest[ed] on the same set of factual allegations" as Equal Protection claim); *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (Substantive Due Process claim dismissed where the allegations were better addressed as First Amendment or Equal Protection claims).

Here, Plaintiffs base their Substantive Due Process claims on the same allegations as the other section 1983 claims. Indeed, the complaint does not even attempt to differentiate the Substantive Due Process: it merely states that "[w]hile the Fourth Amendment covers specific excessive force and seizure issues . . . to the extent any of the Defendants'[3] conduct falls outside the immediate context of seizure, it still violates Plaintiffs' substantive Due Process rights." Compl. ¶ 316. Simply stating that a Substantive Due Process violation might exist does not make it plausibly so. *See In re NYSE Specialists Sec. Litig.*, 503 F.3d at 95 (courts analyzing 12(b)(6) motions need not accept legal conclusions as true). As such, Plaintiffs' Due Process claim (count VII) must be dismissed.

---

[3]  Note the group label with no individual allegations.

**III.     Plaintiffs' _Monell_ Claims Do Not Allege a Policy or Custom for Tonawanda.**

It is fundamental that "a municipality may not be held liable under §1983 on a _respondeat superior_ theory." _Monell v. Dep't of Soc. Servs._, 436 U.S. 658, 691 (1978). Instead, plaintiffs seeking §1983 liability against municipalities (i.e., _Monell_ liability) must show that a municipal policy or custom (and not mere status as the principal of an unconstitutional actor) was a "moving force of [a] constitutional violation." _Id._ at 694.   To survive a Rule 12(b)(6) motion, a _Monell_ plaintiff must plead enough factual allegations – not conclusory statements – permitting the inference of an unconstitutional municipal policy or custom. _See Montero v. City of Yonkers_, 890 F.3d 386, 404 (2d Cir. 2018) ("[T]he mere assertion . . . that a municipality has . . .a custom or policy is insufficient in the absence of [supporting] allegations of fact . . . .").   Put otherwise, to state merely that "there is a policy does not make it so." _Vasallo v. City of New York_, No. 15 Civ. 7125 (KPF), 2016 U.S. Dist. LEXIS 162704, *42 (S.D.N.Y. Nov. 22, 2016).

To show sufficient factual allegations of a municipal policy or custom, plaintiffs must plead more than their _own_ experiences with non-decision makers. _See Jones v. Town of East Haven_, 691 F.3d 72, 81 (2d Cir. 2012) (stating that "isolated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom . . . ."); _see also Pierre v. Doorley_, 830 F. App'x 58, 60 (2d Cir. 2020) (dismissing _Monell_ claims where the plaintiff "attempt[ed] to rest [them] entirely on his own experiences").   Moreover, failure-to-train section 1983 claims against municipalities are where _Monell_ liability "is at its most tenuous . . . ." _Connick v. Thompson_, 563 U.S. 51, 61 (2011).   When plaintiffs pursue that theory, they must show a failure to train "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come

into contact.'" *Id.* And 'deliberate indifference' itself is "a stringent standard of fault, requiring . . . actual or constructive notice that a particular omission in [a] training program causes [municipal] employees to violate . . . constitutional rights . . . ." *Id.*

Here, the *Monell* claims against Tonawanda are entirely conclusory. The complaint devotes some eleven pages to setting out the *Monell* claims, but paragraph by paragraph, it regurgitates legal conclusions against the group of municipalities rather than substantive allegations against Tonawanda. *See* Compl. ¶ 328 ("The Municipal Defendants…); Compl. ¶ 329; Compl. ¶ 332 ("[S]upervisory John Doe officers ... acted pursuant to official municipal policies ..."); Compl. ¶ 339 ("The municipalities involved knew or should have known that multi-agency deployments on college campuses risked constitutional violations . . . ."). These allegations are uniformly insufficient to plead *Monell* liability. *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (finding the plaintiff's "general and conclusory allegation" of a municipal policy insufficient).

To the extent any *Monell* allegations are well-pleaded, they miss the mark in that they merely show *isolated* instances of conduct by non-decisionmakers. In one paragraph, for example, the complaint quotes Officer Wright (*see* Compl. ¶ 333), but there is no allegation that Officer Wright is somehow responsible in creating Tonawanda policy. In another instance, the complaint also states that "policies or customs of suppressing protest with disproportionate force [was] evidenced . . . by their resorting to extreme force and mass arrest in a situation calling for patience and negotiation[,]" Compl. ¶¶ 347–48, but plaintiffs cannot rely on the 'extremeness' of their own allegations to show greater customs. *See Drawbridge v. Schenectady Cnty. Dep't of Soc. Servs.*, No. 23-1214, 2024 U.S. App. LEXIS 6381, *3–4 (2d Cir. Mar. 18, 2024) (rejecting the plaintiff's argument that "the individual conduct

10

alleged . . . was so grossly negligent that the only explanation" was a municipal policy/custom's existence)

Finally, Plaintiffs' backup *Monell* theory – failure to train – is similarly conclusory, as they provide no well-pleaded, factual allegations showing Tonawanda decisionmakers had "actual or constructive notice" of a constitutionally-faulty training omission. *Connick*, 563 U.S. at 61. In one instance, the complaint generally states that "the need for specific training on protest management . . . was obvious given the frequency of campus demonstrations and nationwide protests." Compl. ¶ 346. That allegation is vague and does not show that Tonawanda policymakers were on notice that its *own* training program was deficient. In another instance, the complaint states that "on information and belief . . . some of the Defendant agencies . . . have histories of aggressive protest policing . . . ." Compl. ¶ 350. But that allegation, despite also being conclusory, does not even mention Tonawanda on its face. And, of course, in terms of individuals, the complaint does not even mention any Tonawanda decisionmakers at all. *See* Section I-A, *supra*. The *Monell* claims must be dismissed.

## IV.   **Plaintiffs' state law claims must be dismissed for various reasons.**

Plaintiffs' myriad state law claims cannot make it past the motion to dismiss stage. Most of Plaintiffs' state law claims are procedural non-starters, and for those that may be procedurally viable, they nonetheless collapse under even cursory substantive analysis.

### A.  **All of Plaintiff Frazier's state law claims must be dismissed.**

As a preliminary matter, Plaintiff Jazmine Frazier never served a notice of claim on Tonawanda, requiring dismissal of the state law claims. Town Law § 67 sets out that "[a]ny claim . . . made against" New York towns "for damages for wrong or injury to person or

property . . . shall be made and served in compliance with [General Municipal Law § 50-e]." N.Y. Town Law § 67(1) (Consol. 2025).  General Municipal Law § 50-e provides in turn provides that before plaintiffs can sue New York municipalities, they must first serve a notice of claim.  *See* N.Y. Gen. Mun. Law § 50-e (Consol. 2025).  Federal courts strictly construe New York State notice-of-claim requirements.  *See Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999).

In this case, Plaintiff Frazier asserted ten different state law claims against Tonawanda.[4]  Before a plaintiff can sue entities covered by Town Law section 67, however, they must first serve a notice of claim.  *See Collier v. City of Mount Vernon*, No. 19-CV-5230 (KMK), 2024 U.S. Dist. LEXIS 159330, *39 (S.D.N.Y. Sep. 3, 2024) (false arrest/malicious prosecution); *Stevens v. City of New York*, No. 10 Civ. 2172 (KBF)(JLC), 2012 U.S. Dist. LEXIS 165936, *10–15 (S.D.N.Y. Nov. 14, 2012) (assault/battery); *Alexander v. City of New York*, No. 02 Civ. 3555 (TPG), 2004 U.S. Dist. LEXIS 17042, *65 (S.D.N.Y. Aug. 24, 2004) (state constitutional provisions).[5]  Accordingly, Plaintiff Frazier's state law claims must be dismissed.

---

[4]   Count IX (N.Y. Const. art. I, §§ 8 & 9); Count X (N.Y. Const. art. I, § 11; Count XI (assault and battery); Count XII (false arrest/false imprisonment); Count XIII (abuse of process); Count XIV (negligence); Count XV (negligent hiring, training, and supervision); Count XVI (N.Y. Civil Rights Law § 40-c); Count XVII (N.Y. Civil Rights Law § 79-n); Count XIX (malicious prosecution).

[5]   Although Courts have held that a notice of claim is not required before asserting N.Y. Civil Rights Law claims against entities covered only by General Municipal Law §§50-e and 50-i, *see Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 709 (S.D.N.Y. 2011), Town Law §67's scope is much greater than the General Municipal Law, *compare* N.Y. Town Law §67 (applying to "[*a*]*ny* claim . . . which may be made . . . for wrong or injury to person") (emphasis added) *with* N.Y. Gen. Mun. Law § 50-e (applying only to "case[s] founded upon tort").

**B. Plaintiffs' Civil Rights Law section 40-c claims must be dismissed.**

Even disregarding a substantive analysis, Plaintiffs' N.Y. Civil Rights Law section 40-c claim is procedurally deficient and cannot survive. A prerequisite to a claim under N.Y. Civil Rights Law section 40-c is compliance with N.Y. Civil Rights Law § 40-d. *See Cardona Cmty. Access, Inc.*, No., 2013 U.S. Dist. LEXIS 10778, *36–37 (E.D.N.Y. Jan. 25, 2013). Civil Rights Law section 40-d states that "at or before the commencement of any action . . . , notice thereof shall be served upon the attorney general." N.Y. Civil Rights § 40-d (Consol. 2025). Failure to serve such notice on the New York Attorney General requires dismissal of the N.Y. Civil Rights Law section 40-c claims. *See Giamo & Vreeburg v. Smith*, 599 N.Y.S.2d 841, 844 (App. Div. 1993). Plaintiffs did not allege compliance with Civil Rights Law §40-d (*see* Compl. ¶¶12–16), and to Tonawanda's knowledge, Plaintiffs did not provide notice to the Attorney General. The failure to comply with clear procedural prerequisites requires *all of* Plaintiffs' Civil Rights Law §40-c claims to be dismissed.

**C. Plaintiffs' Civil Rights Law section 79-n claims must be dismissed.**

To succeed on a Civil Rights Law section 79-n claim, a plaintiff must show that the defendant injured or otherwise harassed him "in whole or in substantial part because of a belief or perception regarding [*inter alia*, his] race, . . . national origin, [or] religion . . . ." N.Y. Civ. Rights Law § 79-n (Consol. 2025).

Here, of course, there are no allegations that the Tonawanda Officers personally interacted with any Plaintiff besides Ms. Krull, *see* Section I, *supra*, and there are no allegations that Ms. Krull either practices Islam or is of Palestinian or Arab descent. In that vein, the idea that the Tonawanda Officers 'harassed' Ms. Krull for her race, national origin, or religion is implausible. And given that there is not a single well-pleaded allegation that

any Tonawanda Officer interacted with the other Plaintiffs, the idea that the Tonawanda Officers injured or harassed them for because of their religion becomes likewise implausible.

To the extent that the complaint claims that "[a]llowing similarly situated counter-protestors or other viewpoints to remain undisturbed" can form the basis for a Civil Rights Law § 79-n claim, there exists no support in the statute for such an argument.  The grounds for a cognizable Civil Rights Law § 79-n are set out clearly: "race, color, national origin, ancestry, gender, religion, religious practice, age, disability, or sexual orientation . . . ."  N.Y. Civ. Rights Law § 79-n.  'Political viewpoint' is not in that list.  Plaintiffs' Civil Rights Law § 79-n claims must be dismissed against the Tonawanda Officers.

### D.  Plaintiffs' Assault/Battery claims must be dismissed.

To prevail on an assault claim, plaintiffs must show defendants "intentional[ly] plac[ed them] in fear of imminent harmful or offensive contact."  *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.3d 105, 108 (2d Cir. 1993).  To prevail on a battery claim, plaintiffs must show defendants engaged in "intentional wrongful physical contact with [them] without consent."  *Id.*  Like federal §1983 claims, plaintiffs asserting state law assault/battery claims must show defendants' personal involvement.  *See Wyllie v. DA*, 770 N.Y.S.2d 110, 114 (App. Div. 2003) (holding there was no assault/battery where "the municipal defendants demonstrated that no City employee had physical contact with the plaintiff during her detention"); *see also Zeng v. Chell¸* No. 19-cv-3218 (JGK), 2022 U.S. Dist. LEXIS 36266, *16 (S.D.N.Y. Mar. 1, 2022) (dismissing assault and battery claims for failure to allege personal involvement).

As set out above, only one Plaintiff – Ms. Krull – alleges anything resembling personal contact with the Tonawanda Officers.  *See* Section I, *supra*.  One potentially

substantive allegation relating to Ms. Kroll says nothing about the officers' interactions with any other Plaintiff. Moreover, two Tonawanda officers, Officer Wright and Officer Currey, are not even discussed in relation to *any* plaintiff. Accordingly, along with the absence of well-pleaded factual allegations against the Tonawanda Officers, the claims that the officers "plac[ed Plaintiffs] in fear of imminent harmful or offensive contact" or engaged in "intentional wrongful physical contact" with any plaintiff are implausible. *United Nat'l Ins. Co.*, 994 F.3d at 108. The assault/battery claims must be dismissed.

### E. Plaintiffs' False Arrest and False Imprisonment claims must be dismissed.

To prevail on state law false arrest/false imprisonment claims, plaintiffs must establish four elements: (1) "the defendant intended to confine [the plaintiff]"; (2) "the plaintiff was conscious of the confinement"; (3) "the plaintiff did not consent to the confinement"; and (4) "the confinement was not otherwise privileged." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

As with the other claims, plaintiffs cannot prevail on state law false arrest/false imprisonment claims unless they demonstrate defendants' personal involvement. *See Lazare v. City of New York*, No. 19-cv-2274 (KAM)(PK), 2021 U.S. Dist. LEXIS 243332, *11 (E.D.N.Y. Dec. 21, 2021) (summary judgment granted because plaintiff "adduced no evidence whatsoever that Defendant had any involvement in the delay in [his] arraignment"); *Levantino v. N.Y. State Police*, 56 F. Supp. 3d 191, 207 (E.D.N.Y. 2014) ("[P]ersonal involvement on the part of the defendant is also a prerequisite to liability for [state law] false arrest...").

Thus, once again, the complaint's failure to allege facts showing the Tonawanda Officers' personal involvement (besides Ms. Krull) is fatal. *See* Section I, *supra*. And once

again, the complaint does not even allege that Officers Wright or Currey were involved in Ms. Krull's arrest. Given the absence of well-pleaded, factual allegations showing the Tonawanda Officers' personal involvement, the false arrest claims must be dismissed.

### F. Plaintiffs' Abuse of Process claims must be dismissed.

To prevail on an abuse of process claim, a plaintiff must establish: (1) that the defendant "employ[ed] regularly issued legal process to compel performance or forbearance of some act"; (2) that the defendant acted "with intent to do harm without excuse or justification"; (3) and that the defendant issued the process "to obtain a collateral objective that is outside the legitimate ends of the process." *Hernandez v. United States*, 939 F.3d 191, 204 (2d Cir. 2019) (quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)).

To show that a defendant acted with a collateral objective, it is insufficient to merely demonstrate "[a] malicious motive alone . . . ." *Id.* As such, plaintiffs cannot survive a motion to dismiss alleging only "that defendants were seeking to retaliate against them." *Id.* Motivations of simple 'punishment' are similarly deficient as well. *See Coleman v. City of New York*, 585 F. App'x 787, 788 (2d Cir. 2014). Rather, abuse of process plaintiffs must show that a defendant "had an improper *purpose* in instigating the action." *Savino*, 331 F.3d at 77 (emphasis added).

In this case, Plaintiffs' abuse of process claims fail against the Tonawanda Officers for two key reasons. First, the complaint did not sufficiently plead the Officers' individual involvement in the first element, "issu[ing] legal process to compel performance . . . ." *Hernandez*, 939 F.3d at 204. For instance, the complaint states that "Defendants caused criminal process to issue against Plaintiffs in the form of appearance tickets and initiating charges[,]" but there are no allegations that the Tonawanda Officers gave *any* of the Plaintiffs

16

appearance tickets or otherwise initiated charges.  *See* Section I, *supra*.  Even for the Officers that assisted in apprehending Ms. Krull, assisting in apprehending an individual is not equivalent to issuing an appearance ticket or bringing charges in the Town of Tonawanda. On the complaint's face, the decision whether to initiate 'charges' against Plaintiffs was outside Tonawanda's jurisdiction.

Second, even if Plaintiffs did sufficiently plead the first element, the claims do not demonstrate the Tonawanda Officers acted with an improper purpose.  The Second Circuit has explicitly held that allegations of 'retaliation' cannot serve as a sufficient purpose for abuse of process claims.  *See id.*  Yet 'retaliation' is exactly what Plaintiffs allege here: that "Plaintiffs were subjected to ongoing court involvement . . . to suppress their protected expression and retaliate against their participation in protest."[6]  Compl. ¶ 408.  Likewise, the Second Circuit has similarly found that allegations of wanting "to punish" a plaintiff are also insufficient.  *See Coleman*, 585 F. App'x at 788.  Plaintiffs plead this 'objective' as well.  *See* Compl. ¶ 406 (stating that "the process was used to punish Plaintiffs extra-judicially").  Plaintiffs do not allege an improper objective,[7] requiring dismissal of the abuse of process claims.

---

[6]    This allegation is a legal conclusion not entitled to the presumption of truth.

[7]    The Complaint states that "the process was . . . *possibly* used to justify the extreme police actions . . . ."  Compl. ¶ 406.  But there are no well-pleaded, factual allegations to support such a theory (e.g., conversations among justice personnel) – certainly not against Tonawanda Officers – and the use of the word "possibly" is significant.   The Supreme Court has affirmatively clarified that "[t]he plausibility standard . . . asks for a more than *a sheer possibility* that a defendant has acted unlawfully."   *Iqbal*, 556 U.S. at 678 (emphasis added).

### G.  Plaintiffs' Negligence/Gross Negligence claims must be dismissed.

As the Plaintiffs repeatedly pleaded that the Tonawanda Officers acted intentionally, their negligence claims cannot stand.  New York law bars plaintiffs from "recover[ing] under general negligence principles for a claim that law enforcement officers failed exercise the appropriate degree of care in effecting an arrest . . . ."  *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *Dollard v. City of New York*, 408 F. Supp. 3d 231, 238–39 (E.D.N.Y. 2019).  In addition, as a corollary to this rule, courts have also explained that when plaintiffs allege police officers engaged in "intentional conduct–such as for battery or excessive force–'[they] fail to state negligence.'"  *Boehner v. City of Rochester*, 609 F. Supp. 3d 220, 232 (W.D.N.Y. 2022).

Here, these principles require Plaintiffs' negligence claims to be dismissed.  First, the complaint alleges that Plaintiffs' suffered their injuries during their arrests, so under New York law, negligence is categorically improper.  *See Bernard*, 25 F.3d at 102.  Second, Plaintiffs base this negligence claim – already improper in its own right – on the same exact conduct they base their intentional tort claims.  *See* Compl. ¶ 421 ("The individual officers are liable for negligence to the extent their actions were not intentional but were carried out in a thoughtlessly unsafe way").  The negligence claims are therefore improper on that other level, too. *See Boehner* 609 F. Supp. 3d at 232.

### H.  Plaintiffs' State Constitutional Claims Must Be Dismissed.

Plaintiffs' claims under N.Y. State Constitution art. I, §§ 8,9 and 11 must be dismissed because they are duplicative of the section 1983 claims.   Second Circuit courts have held that "Where claims are brought pursuant to the New York State Constitution that mirror claims brought under Section 1983, . . . there is no private right of action on the state

constitutional claims." *Bowles v. State Univ.*, No. 21-CV-06048-FPG, 2022 U.S. Dist. LEXIS 58585, \*51 (W.D.N.Y. Mar. 30, 2022); *Wright v. City of Syracuse*, No. 5:10-CV-0661 (GTS/TWD), 2014 U.S. Dist. LEXIS 44524, \*55 (N.D.N.Y. Mar. 31, 2014).  Here, both the §1983 claims and the state constitutional claims arise out of the May 1, 2024 U.B. protests. *See* Comp. ¶ 368 ("Defendants violated these state constitutional rights of Plaintiff through the same actions described: violently suppressing Plaintiffs' peaceful expression and assembly at the May 1, 2024 protest.").  Accordingly, because the state constitutional claims mirror the §1983 claims, they cannot stand.  *See Wright*, 2014 U.S. Dist. LEXIS 44524, \*58 (dismissing the plaintiff's state constitutional claims for mirroring §1983 claims).

## I.    Plaintiffs' Negligent Hiring/Training/Supervision Claims Must Be Dismissed.

Under New York law, when plaintiffs sue defendants who act within the scope of their employment, they cannot prevail on a negligent/hiring supervision claim.  *See Ahluwalia v. St. George's Univ.*, 626 F. App'x 297, 299 (2d Cir. 2015); *Paul v. City of New York*, No. 16-CV-1952 (VSB), 2017 U.S. Dist. LEXIS 156416, \*20–23 (S.D.N.Y. Sep. 25, 2017) (dismissing the plaintiffs' negligent hiring/training/supervision claims where they affirmatively pleaded that "the officers '*were* acting within the course and scope of their employment'").  Here, Plaintiffs' complaint alleges that the Tonawanda Officers acted within the scope of their employment, *see* Compl. ¶¶ 45 & 219, requiring dismissal of the negligent hiring/training/supervision claims.  *See, e.g.*, *Ahluwalia*, 626 F. App'x at 299.

**V.    Plaintiff Ayoub's and Plaintiff Frazier's specific claims must be dismissed.**

The last two counts of the complaint are asserted only by Plaintiff Ayoub and Plaintiff Frazier. These counts must be dismissed for multiple reasons: (1) they rest mostly on legal conclusions; and (2) they allege no involvement on the Tonawanda Officers' behalf.[8]

First, both counts lean heavily on legal conclusions. In particular, Count XVIII states, *inter alia*, that "Defendants . . . initiated and maintained criminal proceedings against Plaintiffs Frazier and Ayoub arising from their arrest . . . without probable cause and malice"; that "[a]fter the initial charges against Plaintiff Frazier were dismissed, Defendants' agents and employees recommended criminal proceedings against them without any new evidence or lawful basis"; that "Defendants acted with malice, intending to punish and retaliate against Plaintiffs Frazier and Ayoub for their exercise of rights"; and that "Defendants baselessly and maliciously continued the prosecution against Claimant Ayoub through mid-September 2024"; Compl. ¶¶451–53, 456. These allegations offer no substantive factual content against the individual Tonawanda Officers.

Count XIX fares no better. It states, *inter alia*, that "Defendants commenced and continued criminal proceedings against Plaintiffs Frazier and Ayoub without probable cause and with actual malice"; and that "as a result, Plaintiffs Frazier and Ayoub suffered deprivations of their liberty, emotional distress, reputational harm, and other damages." Once again, these allegations lack factual substance. All of the above allegations are legal conclusions not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet

---

[8]    As it is a state law claim, Plaintiff Frazier's malicious prosecution claim must also be dismissed for failure to serve a notice of claim. *See* Section V-A.

that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions.").

Moreover, both counts' use of the group label "Defendants" is also problematic. The complaint specifies that both counts are asserted "Against All Defendant Officers[,]" so when they use the term 'Defendants,' they refer to, at a minimum, over seventy individuals. Yet without specific factual allegations elaborating which defendant officer did what for Plaintiff Ayoub's or Plaintiff Frazier's prosecution, the use of the catch-all group label "Defendants" is insufficient to state a claim. *See Atuahene*, 10 F. App'x at 34 ("By lumping all the defendants together . . . and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy [the 12(b)(6)] standard . . . ."). The only times these counts do get specific, they do not mention Tonawanda or the Tonawanda Officers. *See* Compl. ¶ 454 (discussing "Amherst Town Justice Kara Buscaglia" and "Defendant Erie County and UBPD Defendants"); Compl. ¶ 456 ("[T]he charges were dismissed in Amherst Town Court.")

For the foregoing reasons, coupled with the broad absence of any well-pleaded allegations against the Tonawanda Officers, (including events that occurred *after* May 1) Count XVIII must be dismissed against Tonawanda and the Tonawanda Defendants.

## VI.    The Tonawanda Officers Have Qualified Immunity.

Qualified immunity is a "forgiving" doctrine that "protects all but the plainly incompetent or those who knowingly violate the law." *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001)). As such, the doctrine is generally "applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). To render

21

qualified immunity inappropriate, a plaintiff must both: (a) "allege[] . . . or show[] . . . a violation of a constitutional right"; and (b) demonstrate that "the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Linton v. Zorn*, 135 F.4th 19, 31 (2d Cir. 2025) (quoting *Pearson*, 555 U.S. at 232).  In this case, the Tonawanda Officers have qualified against both the Non-Krull Plaintiffs and Ms. Krull.

### A.  The Tonawanda Officers Have Qualified Immunity Against Ms. Krull.

Probable cause for an arrest provides a complete defense against for false arrest and First Amendment retaliation.  *Pinto v. City of New York*, 728 F. App'x 26, 29 (2d Cir. 2018).  Probable cause determinations are made "not from the perspective of courts or lawyers, but from that of a reasonable officer in the defendant's position."  *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  Consequently, the probable cause determination is not one of hindsight – "courts [analyzing probable cause] must consider those facts *available to the officer* at the time of the arrest and immediately before it . . . ."  *Betts v. Sherman*, 751 F.3d 78, 83 (2d Cir. 2014).

More specifically, probable cause exists when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable cause in the belief that an offense has been committed . . . .'"  *Panetta v. Crawley*, 460 F.3d 388, 395 (2d Cir. 2006).  As such, the Second Circuit has explained that "When making a probable cause determination, police officers are 'entitled to rely on the allegations of fellow police officers.'"  *Id.*   And once officers have probable cause to make an arrest, they are "'neither required or allowed' to continue investigating, sifting and weighing information," *Id.* at 398.

Moreover, under federal law, "an officer is entitled to qualified immunity unless 'no officer of reasonable competence could have made the same choice in similar

circumstances.'"  *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017).  Accordingly, officers possessing *arguable* probable cause will also receive qualified immunity.  *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013).  The critical inquiry is whether any reasonable officer would have appreciated there was no legal basis for making an arrest.  See *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2014).

In this case, at a minimum, there was arguable probable cause for the Tonawanda Officers to apprehend Ms. Krull under N.Y. Penal Law § 240.20.  Under that statute, "A person is guilty of disorderly conduct when, . . . [H]e congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."  N.Y. Penal Law § 240.20(6) (Consol. 2025).  Even staying within the complaint's four corners, the Tonawanda Officers both reasonably believed that (a) Ms. Krull congregated with other persons in a public place and (b) refused to comply with a lawful order to disperse.

First, it was reasonable for the Tonawanda Officers to believe that Ms. Krull "congregate[d] with other persons in a public place..."  N.Y. Penal Law § 240.20.  The complaint establishes that Ms. Krull took part in the May 1 protests – of which there were at a minimum dozens of participants (*see* Compl. ¶ 18) – and, at the time of her apprehension, Ms. Krull remained with other protestors (*see* Compl. ¶ 106).

Second, it was reasonable for the Tonawanda Officers to believe that Ms. Krull "refused to comply with a[n] ... order of the police to disperse."  N.Y. Penal Law §240.20.  Per the complaint, "UB officials and police officers ... demand[ed] that protestors vacate *the university grounds* by 8:23 p.m[,]" Compl. ¶ 7 (emphasis added), and, at the time of her apprehension, the complaint stated that Ms. Krull was in "area between the lawn and parking lots[,]" Compl. ¶ 106.  The "area between the lawn and parking lots" is *still* university

23

grounds.  There are no allegations that Ms. Krull had left university grounds when she was apprehended.

Third, it was reasonable for the Tonawanda Officers to believe that the dispersal orders was "lawful."  N.Y. Penal Law § 240.20.  U.B. is not within Tonawanda's jurisdiction – rather, U.B. "'requested assistance county wide assistance [including Tonawanda] to help disperse' the protest" (Compl. ¶ 324).  The complaint likewise states that "Defendants . . . from UBPD briefed all responding agencies on law enforcement's plan and protocol prior to dispersal efforts" (Compl. ¶ 84) and that "UBPD Officers . . . were primarily responsible for arresting the demonstrators" (Compl. ¶ 87).  Thus, Tonawanda Officers arrived on site and were given dispersal orders to enforce that they did not promulgate.  Under Second Circuit law, "police officers are 'entitled to rely on the allegations of fellow police officers.'" *Panetta*, 460 F.3d at 395.  The Tonawanda Officers were therefore entitled to rely on UBPD's characterization of the situation.

The complaint puts great emphasis in challenging the meaning of the word "overnight" in protest policies, but whatever the word "overnight" means, it is immaterial to the probable cause analysis *as to the Tonawanda Officers*.  Probable cause determinations must place from the perspective of "a reasonable officer in the defendant's position" (*Ganek*, 874 F.3d 73 at 81) and U.B. policies are not Tonawanda ordinances.  From the Tonawanda Officers' perspective, after briefing from U.B. (Compl. ¶84), Ms. Krull's conduct created (or at least arguably created) a *prima facie* violation of N.Y. Penal Law section 220.20(6).  Requiring the Tonawanda Officers to engage in statutory analysis of the meaning of the word "overnight" – in a policy that *is not Tonawanda's policy* – before apprehending Ms. Krull

24

would contravene Second Circuit law. *See Ganek*, 874 F.3d at 73 (stating that probable cause determinations are "not [made] from the perspective of courts or lawyers")

Accordingly, the Tonawanda Officers are entitled to qualified immunity against Ms. Krull's claims.

**B. The Tonawanda Officers have qualified immunity against the Non-Krull Plaintiffs.**

Finally, the Tonawanda Officers are also entitled to qualified immunity against the Non-Krull Plaintiffs. When a plaintiff does not "allege[] . . . or show[]" that a defendant police officer actually violated his constitutional rights, the police officer maintains qualified immunity against the plaintiff's claims. *Linton*, 135 F.4th at 31; *see Tangreti*, 983 F.3d at 612 (concluding the defendant had qualified immunity because the plaintiff did not show she "violate[d] a statutory or constitutional right"). Here, for all the reasons set out in Section I, *supra*, the Non-Krull Plaintiffs have not alleged that the Tonawanda Officers violated their constitutional rights – one substantive allegation regarding Ms. Krull is not a substantive allegation regarding any other Plaintiff. Thus, the Tonawanda Officers are entitled to qualified immunity against the Non-Krull Plaintiffs' section 1983 claims.

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask that the Court grant their motion to dismiss all of Plaintiffs' claims.

DATE: September 2, 2025
        Buffalo, New York

COLUCCI & GALLAHER, P.C.



Paul G. Joyce
Marc S. Smith
800 Main Place Tower
350 Main Street
Buffalo, New York 14202
(716) 853-4080
pjoyce@cgbuffalo.com
msmith@cgbuffalo.com
*Attorneys for Defendants*
*The Town of Tonawanda,*
*Police Officer Grant F. Currey,*
*Police Officer Nicholas J. Lund,*
*Police Officer Mitchell F. Maraschiello,*
*Police Officer Jeremiah J. Walsh-Steines,*
*and Police Officer Kelly J. Wright*

TO:    Robert M. Corp, Esq.
       LIPSITZ GREEN SCIME CAMBRIA, LLP
       *Attorneys for Plaintiffs*
       42 Delaware Avenue, Suite 120
       Buffalo, New York 14202
       (716) 849-1333
       rcorp@lglaw.com