UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

YOUSEF AHMED, et. al.,

               Plaintiffs,

                                      Case No.: 1:25-CV-00391-JLS

v.

CITY OF BUFFALO, et. al.,

               Defendants.
_____

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
### MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL
### PROCEDURE 12(b)(6)

---

**HURWITZ FINE P.C.**
Stephen M. Sorrels, Esq.
*Attorneys for Town of Amherst,*
*Captain Kari McFayden,*
*Captain Charles Persons,*
*Lieutenant Matthew LoBuglio,*
*Lieutenant Craig Pelt,*
*Investigator Richard Walter,*
*Officer Brett Christmann,*
*Officer Michael Kubek,*
*Officer Patrick Luvender,*
*Officer Joshua Militello, and*
*Officer Dererk Neuman*
1300 Liberty Building
Buffalo, New York 14202
Telephone: (716) 849-8900
Facsimile: (716) 855-0874
sms@hurwitzfine.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………..iii

PRELIMINARY STATEMENT…………………………………………………………………..1

STATEMENT OF THE CASE……………………………………………………………………1

LEGAL STANDARD…………………………………………………………………………..2

ARGUMENT…………………………………………………………………………………...3

POINT I………………………………………………………………………………………...3

    A. PLAINTIFF'S CLAIMS FOR MONELL LIABILITY ARE
       INSUFFICIENTLY PLED AND REQUIRE DISMISSAL………………….3

POINT II………………………………………………………………………………………..7

    B. THE NEW YORK STATE CLAIMS MUST BE DISMISSED AS THE
       PLAINTIFF FILED DEFECTIVE NOTICE OF CLAIMS………………….7

POINT III……………………………………………………………………………………..10

    C. PLAINTIFFS' FEDERAL CONSTITUTION CLAIMS FAIL……………..10

        1. AMHERST OFFICES ARE ENTITLED TO
           QUALIFIED IMMUNITY…………………………………………..12

        2. FIRST AMENDMENT – REASONABLE TIME, PLACE,
           AND MANNER RESTRICTIONS……………………………………17

        3. FOURTH AMENDMENT CLAIMS………………………………..20

        4. FOURTEENTH AMENDMENT……………………………………22

           a. SELECTIVE ENFORCEMENT……………………………..22

           b. FREE EXERCISE AND EQUAL PROTECTION…………..23

           c. SUBSTANTIVE AND PROCEDURAL DUE PROCRESS...24

        5. MONELL LIABILITY………………………………………………25

           a. PLAINTIFFS FAIL TO SUFFICIIENTLY ALLEGE
              IMPROPER POLICIES OR CUSTOMS……………………29

b.  WIDESPREAD PRACTICE OF MISCONDUCT………….30

c.  DELIBERATE INDIFFERENCE…………………………...32

POINT IV……………………………………………………………………………………..37

D.  NEW YORK STATE CLAIMS MUST BE DISMISSED…………………..37

1.  PLAINTIFFS HAVE NOT SET FORTH THE REQUIRED
CONDITION PRECEDENT………………………………………..37

2.  DISCRIMINATION CLAIM…………………………………………38

3.  NEW YORK CONSTITUTIONAL LAW CLAIMS ARE
SUPERSEDED BY THE FEDERAL CONSTITUTIONAL
CLAIMS…………………………………………………………………..38

4.  AMHERST DEFENDANTS ARE IMPROPERLY GROUPED……39

5.  AMHESRT OFFICERS ARE ENTITLED TO NEW YORK
STATE QUALIFIED IMMUNITY…………………………………….39

6.  OTHER STATE LAW COUNTS……………………………………40

7.  COURT SHOULD DECLINE EXERCISING SUPPLEMENT
AND DIVERSITY JURISDICTION…………………………………...41

CONCLUSION……………………………………………………………………………….41

# TABLE OF AUTHORITIES

**Cases**

*Aasir Azzarmi v. Neubauer*, 2024 U.S. Dist. LEXIS 173355, *29-30 (S.D.N.Y. Sept. 24, 2024)..8

*Abdelhami v. Altria Group, Inc*., 515 F.Supp.2d 384 (S.D.N.Y. 2007)......................................... 2

*Albright v. Oliver*, 510 U.S. 266, 273 (1994)……………………………………………………24

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) ...................................... 30, 33

*Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010)………………………………………………12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 1, 2

*Ashley v. City of New York*, 7 A.D.3d 742 (2nd Dept. 2004)………………………………………40

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87 (2d Cir. 2007) ......................................... 2

*Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)…………………………………4

*Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 405 (1997)…………………………………28

*Beck v. Hastings on Hudson Union Free Sch. Dist.* 365 F.3d 107, 122 (2d Cir. 2004)…………..3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 1

*Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)…………………………………...13, 40

*Bird v. Cnty. of Westchester*, No. 20-CV-10076, 2022 U.S. Dist. LEXIS 111672, 2022 WL 2263794, at *12 (S.D.N.Y. June 23, 2022)........................................................................... 26, 36

*Blackwood v. Westchester Cnty*., 2024 U.S. Dist. LEXIS 173608, *18 (S.D.N.Y. Sept. 25, 2024)………………………………………………………………………………………………..38

*Blakely v. Wells*, 209 Fed. Appx. 18, 20 (2d Cir. 2006)…………………………………………10

*Blanton v. State University of New York*, 489 F.2d 377, 387 (2d Cir. 1973)……………………19

*Blouin ex rel Estate of Pouliot v. Spitzer*, 356 F.3d 348, 364 (2d Cir. 2004)……………………39

*Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997) ...................... 30

*Boggs v. Town of Riverhead*, 2018 U.S. Dist. LEXIS 190772 (E.D.N.Y. Nov. 7, 2018)............. 35

*Boyce v. Erie County*, No. 13-CV-619S, 2014 WL 4923588 (W.D.N.Y. Sept. 30, 2014)............. 2

*Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411 (S.D.N.Y. 2002).................................... 29

*Brown v. City of New York*, 2024 U.S. Dist. LEXIS 170444, *14 (S.D.N.Y. Sept. 20, 2024)....... 9

*Buari v. City of New York*, 530 F. Supp. 3d 356 (S.D.N.Y. 2021) ................................................. 30

*Buchanan v. City of New York*, 556 F. Supp. 3d 346, 365 (S.D.N.Y. 2021)…………………….38

*Burbar v. Inc. Vill. of Garden City*, 961 F. Supp. 2d 462, 474 (E.D.N.Y. Aug. 19, 2013)……...40

Burris v. Whitney Capital Inc., 2021 U.S. Dist. LEXIS 265162, *10-11 (E.D.N.Y. Feb. 25, 2021)…………………………………………………………………………………..6

*Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704 (2d Cir. 2002)..................................................... 2

*Carey v. Maloney, 480 F.Supp.* 2d 548, 557 (D. Conn. Mar. 30, 2007)…………………………..6

*Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79 (2d Cir. 2006)………………………..39

*Chapman v. City of Albany*, No. 23-CV-686-LEK-PJE, 2025 U.S. Dist. LEXIS 12632 (N.D.N.Y. Jan. 24, 2025)..................................................................................................................................... 31

*Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)…………………………..18

*City of Canton*, 489 U.S. at 391…………………………………………………………………33

*City of Oklahoma City v. Tuttle,* 471 U.S. 808 (1985) ................................................................... 28

*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986)…………………………………………………………………………………………….18

*City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988)..................................................................... 27

*Connick v. Thompson,* 563 U.S. 51 (2011)....................................................................... 32, 34, 36

*Conte v. County of Nassau*, 2008 U.S. Dist. LEXIS 25694, *45 n.12 (E.D.N.Y. Mar. 31, 2008)…………………………………………………………………………………………24, 25

*Corbett v. City of New York,* 15-CV-09214-GHW, 2016 U.S. Dist. LEXIS 178037 (S.D.N.Y. December 22, 2016) ....................................................................................................................... 34

*Corley v. United States*, 11 F.4th 79, 88 (2d Cir. 2021)…………………………………………39

*Cox v. City of Rochester*, No. 22-CV-6207-FPG, 2025 U.S. Dist. LEXIS 3843.......................... 27

*Crenshaw v. City of Mount Vernon*, 372 Fed. Appx. 202, 206 (2d Cir. 2010)…………………..14

Da Costa v. Marculli, 675 Fed. Appx. 15, 17 (2d Cir. 2017)……………………………………10

*Dava v. City of New York,* 15-CV-08575-ALC, 2016 U.S. Dist. LEXIS 115639 (S.D.N.Y. August 29, 2016) ........................................................................................................................ 34, 38

*Davidson v. Bronx. Mun. Hosp.*, 64 N.Y.2d 59, 62 (1984)……………………………………...37

*De Lourdes Torres v. Jones*, 26 N.Y.3d 742 (2016)……………………………………………..40

*DeCarlo v. Fry*, 141 F.3d 56 (2d Cir. 1998) ................................................................................... 29

*Delee v. Hannigan*, 729 Fed. Appx. 25, 30-31 (2d Cir. 2018)……………………………………4

*DiFolco v. MSNBC Cable L.L.C*., 622 F.3d 104, 111 (2d Cir. 2010)……………………………8

*Dillon v. Suffolk Cty. Dep't of Health Servs.*, 917 F. Supp. 2d 196 (E.D.N.Y. 2013) ................. 37

*Discon Inc. v. Nynex Corp*., 1992 U.S. Dist. LEXIS 22722, *16 (W.D.N.Y. June 23, 1992)…….5

*Dispenza v. City of New York*, 2023 U.S. Dist. LEXIS 38249, *48-49 (E.D.N.Y. Mar. 7, 2023)……………………………………………………………………………………………6

*Dorcely v. Wyandanch Union Free Sch. Dist*., 665 F.Supp. 2d 179, 194 (E.D.N.Y. Sept. 30, 2009)…………………………………………………………………………………………..23

*Douglas v. Peekskill*, No. 21-CV-10644-KMK, 2023 WL 2632217 (S.D.N.Y. March 24, 2023) ....................................................................................................................................................... 31

*Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)……………………………………………12

*Farrow v. City of Syracuse*, No. 12-CV-1401, 2014 U.S. Dist. LEXIS 42837 (N.D.N.Y. Mar. 31, 2014).................................................................................................................... 36

*Felder v. Casey*, 487 U.S. 131, 151 (1988)……………………………………………………37

*Festa v. Westchester Med. Ctr. Health Network*, 380 F.Supp. 3d 308, 314 (S.D.N.Y. March 29, 2019………………………………………………………………………..9

*Galgano v. Cty. of Putnam,* 16-CV-3572-KMK, 2020 U.S. Dist. LEXIS 116682 (S.D.N.Y. July 2, 2020) ................................................................................................................. 28

*Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2014)………………………………………………..12

*Golino v. New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)……………………………………..13

*Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013)……………………………21

*Graham v. Connor*, 490 U.S. 386, 396 (1989)………………………………………………..21

*Greene v. City of New York,* 742 Fed. Appx. 532 (2d Cir. 2018)........................................... 32

*Greene v. Furman*, 610 F.Supp.2d 234 (W.D.N.Y. 2009)............................................................. 2

*Guan v. City of New York*, 37 F.4th 797, 806 (2d Cir. 2022)……………………………………12

*Hamilton v. Martucello*, 2025 WL 713032, at *8-9 (W.D.N.Y. Mar. 5, 2025)…………………39

*Harmer v. Westchester Cty.,*16-CV-7610-VB, 2017 (S.D.N.Y. December 11, 2017) ................. 28

*Heicklen v. Toala*, 2010 U.S. Dist. LEXIS 14344, *16-17 (S.D.N.Y. Feb. 17, 2010)…………..15

*Herpel v. Joyce*, 1992 U.S. Dist. LEXIS 17642, *9 (D. Conn. Sept. 30, 1992)…………………13

*Hickey v. City of New York*, 2004 U.S. Dist. LEXIS 23941, *61 (S.D.N.Y. Nov. 24, 2004)……24

*Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019)…………………………………………23

*Humphrey v. County of Nassau*, 2009 U.S. Dist. LEXIS 27105, *17 (E.D.N.Y. March 30, 2009).23

*In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir. 2007)……………………………………5

*Infanti v. Scharpf*, 2008 U.S. Dist. LEXIS 45501, *7 (E.D.N.Y. June 10, 2008)………………10

*Int'l Action Ctr. v. City of New York*, 587 F.3d 521, *227 (2d Cir. 2009)………………………18

*Jablonski v. Special Counsel, Inc.* 2017 U.S. Dist. LEXIS 164167, *7
(S.D.N.Y. Sept. 28, 2017)..................................................................................................................10

*Jablonski v. Special Counsel, Inc.* 2018 U.S. Dist. LEXIS 140869, *16……………………..…10

*Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011)……………………………………………..12

*Jackson v. Suffolk County*, 87 F.Supp. 3d 386, 405 (E.D.N.Y. Feb. 20, 2015)…………………13

*James v. Monroe Cnty*., 2022 U.S. Dist. LEXIS 211669, *16-17 (W.D.N.Y. Nov. 22, 2022)…...4

*Johnson  v. City of New York*, 2019 U.S. Dist. LEXIS 10867, *18-19 (S.D.N.Y. Jan. 23, 2019).13

Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, 2017 U.S. Dist. LEXIS 22548,
*18 (S.D.N.Y. Feb. 15, 2017)……………………………………………………………………..5

*Jones v. Town of E. Haven*, 691 F.3d 72 (2d Cir. 2012)................................................... 28, 31, 40

*Kentucky Dep't of Corr v. Thompson*, 490 U.S. 454, 460 (1989)………………………………25

*Kirton v. Doe*, No. 20-CV-10860-KMR, 2023 U.S. Dist. LEXIS 47874 (S.D.N.Y. March 21,
2023)...................................................................................................................................................... 32

*Kravitz v. Purcell*, 87 F.4th 111, 120 (2d Cir. 2023)…………………………………………….23

*Laverne v. Corning*, 522 F.2d 1144, 1149 (2d Cir. 1975)………………………………………13

*LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)………………………………………...22

*Lehal v. Cent. Falls Det. Facility Corp.*, No. 13-CV-3923-DF, 2016 U.S. Dist. LEXIS 177587 (S.D.N.Y. Nov. 21, 2016) ........................................................................................................ 34

*Lidell v. Slocum-Dickson Med. Group, P.C.*, 273 A.D.2d 924 (4th Dept. 2000)…………………..40

*Lockett v. City of Middletown,* 19-CV-08255 (PMH), 2021 (S.D.N.Y. March 22, 2021)............ 28

*Lonesome v. Lebedeff*, 141 F.R.D. 397 (E.D.N.Y. April 16, 1992)……………………………...10

*Luongo v. Nationwide Mut. Ins. Co*., 1996 U.S. Dist. LEXIS 11186, *8 (S.D.N.Y. Aug. 6, 1996).38

*Lynch v. Ackley*, 811 F.3d 569, 578-579 (2d Cir. 2016)…………………………………………16

*Mancuso v. Vill. of Pelham*, No. 15-CV-7895, 2016 U.S. Dist. LEXIS 134788 (S.D.N.Y. Sep. 29, 2016)............................................................................................................................. 33

*Marareno v. City of New York*, 187 A.D.3dd 1164, 1166…………………………………………40

*Marcavage v. City of New York*, 2010 U.S. Dist. LEXIS 107724, *10 (S.D.N.Y. Sept. 10, 2010)………………………………………………………………………………………………..14

*Marcavage v. City of New York*, 689 F.3d 98, 104 (2d Cir. 2012)………………………………18

*McCants v. City of Newburgh*, No. 14-CV-556, 2014 U.S. (S.D.N.Y. Nov. 21, 2014) .............. 36

*McKenzie v. City of New York*, 2019 U.S. Dist. LEXIS 121937, *23-24 (S.D.N.Y. July 22, 2019)………………………………………………………………………………………………..19

*McKnight v. City of Rochester*, 2015 U.S. Dist. LEXIS 40608, *8-9 (W.D.N.Y. Oct. 30, 2015)………………………………………………………………………………………………..41

*Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 107 (S.D.N.Y. Sept. 29, 2016)…………...16

*Meyers v. City of New York*, 812 Fed. Appx. 11, 13 (2d Cir. 2020)…………………………….14

*Meyers v. City of New York*, 2019 U.S. Dist. LEXIS 53150, *24 (S.D.N.Y. March 28, 2019)…14

*Miller v. County of Nassau*, 467 F. Supp. 2d 308 (E.D.N.Y. 2006) ............................................. 30

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) and *Hunter v. Bryan*t, 502 U.S. 224, 227 (1991)………………………………………………………………………………………………13

*Monell v. Department of Social Services,* 436 U.S. 658 (1978) . …………….1, 3, 4, 7, 11, 25, 26, 27, 28, 29, 30, 31, 34

*Monterey Bay Military Hous., LLC v. AMBAC Assur. Corp*., 531 F.Supp.3d 673, 728 (S.D.N.Y. March 30, 2021)………………………………………………………………...4

*Morrison v. Shalach*, 67 Misc. 3d 451, 457 (Westchester Co. Feb. 25, 2020)…………………..41

*Naples v. Stefanelli*, 972 F.Supp. 2d 373, 390 (E.D.N.Y. Sept. 18, 2023)………………………..37

*New York City Dept. of Ed*., 400 F. Supp.3d 25 (S.D.N.Y. 2019)................................................... 2

*Newsom v. City of N.Y*., No. 16-CV-6773, 2-19 WL 3997466 (E.D.N.Y. Aug. 23, 2019) .......... 31

*Nnebe v. Daus*, 184 F. Supp. 3d 54, 62-63 (S.D.N.Y. Apr. 28, 2016)…………………………...25

*N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 400 (S.D.N.Y. 2021)…………………………………………………………………………………………………..30

*Ochre LLC v. Rockwell Architecture Plain. & Design, P.C*., 2012 U.S. Dist. LEXIS 172208, *16 (S.D.N.Y. Nov. 28, 2012)…………………………………………………..4

*Olubenga Akinnagbe v. City of New York*, 128 F.Supp.3d 539, 545-546 (E.D.N.Y. Sept. 1, 2015)…………………………………………………………………………………………………..14

*O'Neal v. City of New York,* 196 F. Supp. 3d 421 (S.D.N.Y. 2016)........................................... 32

*Oriental v. Vill. of Westbury*, No. 18-CV-3878,-DRH-GRB, 2019 U.S. Dist. LEXIS 171232 (E.D.N.Y. Oct. 2, 2019) ..................................................................................................... 8

Owens v. New York AG, 10 Fed. Appx. 34, 35 (2d Cir. 2001)………………………………10

*Papineau v. Parmley*, 465 F.3d 46, 60 (2d Cir. 2006)………………………………………..14, 39

*Perkins v. City of New York*, 2017 U.S. Dist. LEXIS 37046, *5 (S.D.N.Y. Mar. 15, 2017)…6, 37

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983)………………18

*Peterson v. Cnty. Of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998)…………………………21

*Pettiford v. City of Yonkers*, No. 14-CV-6271, 2021 WL 2556172 (S.D.N.Y. June 21, 2021).... 31

*Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)...…………………………………………23

*Phipps v. City of New York*, 2019  U.S. Dist. LEXIS 154315, *2 (S.D.N.Y. Sept. 10, 2019)……9

*Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)……………………………………………..17

*Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)………………………………………30

*Roberto's Fruit Mkt. v. Schaffer*, 13 F.Supp.2d 390, 395-396 (E.D.N.Y. July 16, 1998)………...9

*Roe v. City of Waterbury,* 542 F. 3d 31, 36 (2d Cir. 2008)........................................................... 27

*Roldan v. Lewis*, 2025 U.S. Dist. LEXIS 37621, *46-51 (E.D.N.Y. March 3, 2025)…………...39

*Ruiz v. City of New York*, No. 14-CV-5231-VEC, 2015 U.S. Dist. LEXIS 117947, 2015 WL 5146629 (S.D.N.Y. Sep. 2, 2015) ............................................................................................ 26

*Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)………………………………….12

*Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988)……………………………………………7

*Santana v. City of New York*, No. 15-CV-6715-ER, 2018 U.S. Dist. LEXIS 53865, 2018 WL 1633563 (S.D.N.Y. Mar. 29, 2018)........................................................................................... 29

*Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (citing Salahuddin, 861 F.2d at 42)………7

*Smith v. Collins,* No. 15-CV-216-PAE, 2016 U.S. Dist. LEXIS 23710 (S.D.N.Y. February 26, 2016) ................................................................................................................................................ 34

Sonterra Capital Master Fund, Ltd. V. Barclays Bank PLC, 366 F.Supp. 3d 516, 559 (S.D.N.Y. 2018)…………………………………………………………………………………5

*Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864 (2d Cir. 1992) ..................................................... 30

*Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009)……………………………..25, 30

*Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)……………………………………….4, 21

*Taranto v. Putnam Cnty*., 2023 U.S. LEXIS 174333, *74 (S.D.N.Y. Sept. 28, 2023)………….39

*Thomas v. Co. Westchester,* 215 F. Supp. 2d 329 (S.D.N.Y. 2002) ................................................. 4

*Thomas v. Genova*, 2025 U.S. App. LEXIS 4154, *8 (2d Cir. 2025)……………………………23

*Tieman v. City of Newburgh*, No. 13-cv-4178-KMK, 2015 U.S. Dist. LEXIS 38703, 2015 WL 1379652 (S.D.N.Y. Mar. 26, 2015)........................................................................................... 30

*Tolbert v. Dusza*, 2022 U.S. 69506, *2 (W.D.N.Y. Apr. 14, 2022)……………………………..35

*Tolbert v. Sullivan*, 2022 U.S. Dist. LEXIS 118794 (July 6, 2022) ……………………………35

*Triano v. Town of Harrison*, 895 F. Supp. 2d 526 (S.D.N.Y. 2012) ...................................... 33, 34

*Vann v. City of New York*, 72 F.3d, 1040 (2d Cir. 1995)............................................................... 33

*Vasquez v. City of New York*, No-CV-4641-ER, 2023 U.S. Dist. LEXIS 219614 (S.D.N.Y. Dec. 11, 2023)......................................................................................................................................... 31

*Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016)………………………………………………4

*Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007)……………………………………………12

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) .................................................... 32, 35

*Ward v. Rock Against Racism*, 491 U.S. 781, 804 (1989)………………………………………18

*Weiss v. Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011)……………………8

*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)…………………………………………………13

*Wheeler v. City of Middletown*, 2021 U.S. Dist. LEXIS 102770, *18 (S.D.N.Y. June 1, 2021)..40

*White v. City of New York*, 206 F. Supp. 3d 920 (S.D.N.Y. 2016) .............................................. 17

*White v. Pauly*, 580 U.S. 73, 79 (2017)……………………………………………………………17

*Whren v. United States*, 517 U.S. 806, 810 (1996)………………………………………………20

*Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004)………………………………………………7

*Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013)………………………………..16

*Zellner v. Sumemrlin*, 494 F.3d 344, 367 (2d Cir. 2007)……………….………………………..16

*Zoulas v. New York City Dept. of Ed*., 400 F. Supp.3d 25 (S.D.N.Y. 2019) ................................. 2

**Statutes**

42 U.S.C. § 1983..................................................................................................................... 1, 20

436 U.S. 658, 690-91 (1978)……………………………………………………………………27

28 U.S.C. § 1332………………………………………………………………………………41

28 U.S.C. § 1367(c)(3) ………………………………………………………………………..41

Federal Rule of Civil Procedure 8(a)(2) ......................................................................... 7

Federal Rule of Civil Procedure 12(b)(6) ................................................................. 1, 8

New York Civil Rights Law §§ 40-c………………………………………………………1, 38

New York Civil Rights Law §§ 40-d………………………………………………………38

New York Civil Rights Law §§ 79-n………………………………………………………1, 41

New York General Municipal Law § 50-e(1)(a) .......................................................... 20

New York General Municipal Law § 50-e(3)(a) .......................................................... 20

New York General Municipal Law § 50-h ................................................................... 21

New York General Municipal Law § 50-i(1) ............................................................... 20

New York Penal Law, §140.00………………………………………………………………..16

x

New York Penal Law, §240.20(6)……………………………………………………………14

## PRELIMINARY STATEMENT

This Memorandum of Law, together with the Declaration of Stephen M. Sorrels, Esq., is submitted on behalf of named Defendants, Town of Amherst, New York, ("Amherst"), Captain Kari McFayden, Captain Charles Persons, Lieutenant Matthew Lobuglio, Lieutenant Craig Pelt, Investigator Richard Walter, Officer Brett Christmann, Officer Michael Kubek, Officer Patrick Luvender, Officer Joshua Militello, and Officer Dererk Neuman (collectively "the Defendants") in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs seek to impose liability on the Town of Amherst and several of its officers by asserting nearly constitutional and state-law claims arising from activities that took place at the University at Buffalo ("UB") campus on May 1, 2024. In total, the 108-page Complaint alleges 19 claims, including First, Fourth, and Fourteenth Amendment claims, as well as state-law theories of assault, battery, false arrest, abuse of process, negligence, and discrimination under New York Civil Rights Law §§ 40-c and 79-n. The Complaint seeks to further extend liability to the Town under *Monell* and *respondeat superior* theories based solely on generalized assertions of "policies" and "customs."

The Complaint should be dismissed because it does not satisfy Rule 8 or the pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiffs rely on improper group pleading and conclusory assertions, offering no facts that plausibly connect the Amherst defendants to alleged First, Fourth, or Fourteenth Amendment violations, nor to their contradictory *Monell* theories of both failure to train and deliberate suppression. Absent specific factual allegations, the Complaint amounts to labels and conclusions that are insufficient to state a claim.

## STATEMENT OF THE CASE

For the sake of brevity, this Court is respectfully directed to the Declaration of Stephen M. Sorrels, Esq., for a complete recitation of the underlying facts pertinent to this motion.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendants are liable for the misconduct alleged." *Zoulas v. New York City Dept. of Ed.*, 400 F. Supp.3d 25, 47 (S.D.N.Y. 2019) (quoting *Iqbal*, 556 U.S. at 678.) Ultimately, a Plaintiff must "provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Id.* (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). In other words, the factual allegations should "amplify" the claim to render it plausible. *See Abdelhami v. Altria Group, Inc.*, 515 F.Supp.2d 384 (S.D.N.Y. 2007). Where Plaintiff fails to nudge her claims across the line from conceivable to plausible, the Complaint must be dismissed; a plausible entitlement to relief exists where the allegations in the Complaint move plaintiff's claims across the line separating the conclusory from the factual, and the factually neutral from the factually suggestive. *See Greene v. Furman*, 610 F.Supp.2d 234 (W.D.N.Y. 2009).

While the Court must "accept all factual allegations in the Complaint as true and make all reasonable inferences in a plaintiffs' favor," the "assumption of truth [applies] only to factual allegations and is inapplicable to legal conclusions," which must be disregarded. *Boyce v. Erie County*, No. 13-CV-619S, 2014 WL 4923588, at *1 (W.D.N.Y. Sept. 30, 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zoulas, supra* (quoting *Iqbal*, 556 U.S. at 678-79; *Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002)).

2

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## ARGUMENT

The Complaint should be dismissed because it does not meet the basic pleading requirements necessary to state a claim. First, it relies on improper group pleading by repeatedly referring to all "Defendant Officers" collectively, without identifying what conduct, if any, is attributable to the Amherst defendants. Second, the Complaint is not a "short and plain statement" as required by Rule 8, but instead spans more than 108 pages, contains contradictory allegations, and obscures rather than clarifies the claims. Third, even accepting the allegations as true, Plaintiffs have not pled facts that establish a violation of their federal constitutional rights under the First, Fourth, or Fourteenth Amendments. Fourth, Plaintiffs' *Monell* allegations are internally inconsistent and conclusory, asserting both a failure to train and supervise and, at the same time, a coordinated policy of deliberate suppression, which fails to provide fair notice of any viable municipal theory against the Town of Amherst. Finally, Plaintiffs' New York state law claims also suffer from threshold deficiencies, including failure to comply with statutory prerequisites and reliance on conclusory allegations. For these reasons, dismissal of the Complaint as against the Amherst defendants is warranted.

## POINT I

### A.   PLAINTIFFS' FAILURE TO SUFFICIENTLY DESCRIBE THE DEFENDANTS' CONDUCT RENDERS THEIR COMPLAINT DEFICIENT

To establish liability under 42 U.S.C. § 1983, a plaintiff must show a) that the defendant is a "person" acting "under the color of state law," and b) that the defendant caused the plaintiff to be deprived of a federal right. *Beck v. Hastings on Hudson Union Free Sch. Dist.* 365 F.3d 107,

122 (2d Cir. 2004). "Deprivation of a constitutional right is the *sine qua non* of Section 1983; absent such a violation, no claim — either against an individual or against a municipality under the Monell doctrine — will lie." *Thomas v. Co. Westchester*, 215 F. Supp. 2d 329 (S.D.N.Y. 2002). It is well-settled that liability under cannot be predicated on *respondeat superior* or collective allegations; instead, a plaintiff must plead the personal involvement of each defendant in the alleged constitutional violation. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020); *see also Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (personal involvement in "alleged constitutional deprivations is a prerequisite" to § 1983 liability) and *Delee v. Hannigan*, 729 Fed. Appx. 25, 30-31 (2d Cir. 2018).

"[I]n cases such as this that involve multiple defendants, a plausible claim is not stated where a complaint merely lumps defendants together; rather, the complaint must give each defendant fair notice of the claims being asserted against him." *James v. Monroe Cnty.*, 2022 U.S. Dist. LEXIS 211669, *16-17 (W.D.N.Y. Nov. 22, 2022) (relying on *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)) ("Although Fed.R.Civ.P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests. By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, Atuahene's complaint failed to satisfy this minimum standard[.]"). In other words, where allegations are made against multiple defendants, the "complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants." *Ochre LLC v. Rockwell Architecture Plain. & Design, P.C.*, 2012 U.S. Dist. LEXIS 172208, *16 (S.D.N.Y. Nov. 28, 2012). This principle applies "even where 'allegations are made against families or affiliated entities." *Monterey Bay Military Hous., LLC v. AMBAC Assur. Corp.*, 531 F.Supp.3d 673, 728

4

(S.D.N.Y. March 30, 2021) (quoting *Sonterra Capital Master Fund, Ltd. V. Barclays Bank PLC*, 366 F.Supp. 3d 516, 559 (S.D.N.Y. 2018)).

"It is not the duty of . . . [D]efendants or this Court to sift through the Complaint and guess which factual allegations support which claims. Rule 8(a) places the burden squarely upon the plaintiff to clearly and succinctly state its claims." *Infanti v. Scharpf*, 2008 U.S. Dist. LEXIS 45501, \*7 (E.D.N.Y. June 10, 2008) (quoting *Discon Inc. v. Nynex Corp*., 1992 U.S. Dist. LEXIS 22722, \*16 (W.D.N.Y. June 23, 1992)).

Here, Plaintiffs repeatedly refer to "Defendant Officers" as a monolithic group and broadly allege that all officers present at the protest engaged in unconstitutional conduct. The Complaint fails to specify what, if anything, Captain McFayden, Captain Persons, Lieutenant Lobuglio, Lieutenant Pelt, Investigator Walter, or Officers Christmann, Kubek, Luvender, Militello, and Neuman personally did to violate any Plaintiff's rights. The Complaint does not describe who gave orders, who effectuated arrests, or who used force. Instead, Plaintiffs attempt to impose liability through undifferentiated allegations that dozens of officers from multiple agencies collectively used excessive force, made arrests, or otherwise engaged in misconduct. In fact, **<u>nowhere</u>** within the 108-page Complaint do Plaintiffs allege any concrete action or conduct undertaken by the Amherst Defendants. Such a "laundry list of potentially actional conduct, without 'specification of any particular activities by any particular defendant,' cannot withstand a motion to dismiss. *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 2017 U.S. Dist. LEXIS 22548, \*18 (S.D.N.Y. Feb. 15, 2017) (quoting *In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir. 2007)). Absent such specificity, Plaintiffs fail to plausibly plead personal involvement by the Amherst defendants, and their constitutional claims must be dismissed. *See Iqbal*, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

At most, Plaintiffs allege that the Amherst Defendants' presence at the UB campus is enough to impose liability. Mere presence at a location, however, where a Plaintiff's rights "were allegedly violated is *not sufficient* to find that [the defendant] was personally involved in the violation of those rights." *Carey v. Maloney*, 480 F.Supp. 2d 548, 557 (D. Conn. Mar. 30, 2007) (emphasis added); *see also Dispenza v. City of New York*, 2023 U.S. Dist. LEXIS 38249, *48-49 (E.D.N.Y. Mar. 7, 2023) ("mere presence at the scene is not enough to create a disputed issue of material fact . . .") and *Burris v. Whitney Capital Inc*., 2021 U.S. Dist. LEXIS 265162, *10-11 (E.D.N.Y. Feb. 25, 2021) ("The detectives' alleged mere presence at the eviction is simply not enough to allege their direct involvement in any unlawful conduct alleged in this case, as opposed to their incidental involvement in some of the events related to Plaintiff's arrest and detention.").

Because Plaintiffs fail to plead specific, individualized conduct linking the Amherst defendants to the alleged violations, the claims against them are deficient and must be dismissed.[1] *See Perkins v. City of New York*, 2017 U.S. Dist. LEXIS 37046, *5 (S.D.N.Y. Mar. 15, 2017) ("Where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."). Lumping the Amherst defendants into this 108-page complaint without specifying (aside from their mere presence) what personal actions were

---

[1] To the extent Plaintiffs also allege that unknown Amherst "John Doe" defendants engaged in impermissible behavior, the same framework applies. *See James, supra*, 2022 U.S. Dist. LEXIS 211669 at *17-19 (discussing that although identities may not be known, Plaintiff still has to allege personal involvement and unconstitutional violations).

undertaken to deprive the Plaintiffs of their constitutional rights does not meet the *Iqbal* standard. As such, the Complaint is facially defective and must be dismissed.

## POINT II

**B.  THE COMPLAINT VIOLATES RULE 8 BY FAILING TO PROVIDE A SHORT AND PLAIN STATEMENT OF THE CLAIMS**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 is designed to give defendants fair notice of the claims and grounds upon which they rest, without imposing the burden of deciphering sprawling narratives, contradictions, or duplicative theories. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (dismissing complaint that was "prolix and unintelligible" and "failed to comply with Rule 8's requirement of a short and plain statement").  "When a complaint fails to comply with these requirements [contained in Rule 8], the district court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant or immaterial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (citing *Salahuddin*, 861 F.2d at 42).

Plaintiffs' 108-page, 466-paragraph Complaint does precisely what Rule 8 forbids.  It is unnecessarily long, repetitive, and confusing, obscuring rather than clarifying the nature of the claims. Plaintiffs allege 19 separate claims, many of which overlap or are duplicative of one another. Throughout, the pleading improperly lumps together dozens of individual officers from multiple municipalities, making it impossible to discern what each Amherst defendant is alleged to have done, and importantly frustrating Amhert's ability to "mount a defense." *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004).

The confusing and contradictory narratives in the Complaint are most pronounced in Plaintiffs' *Monell* allegations (Count 9). On one hand, Plaintiffs allege that the Town of Amherst

7

and other municipalities "failed to properly train and supervise officers in handling First Amendment assemblies and engaging in proper crowd control." (¶ 344). Yet, in the very same section, they also allege that these same defendants maintained a "uniform and concerted policy" to suppress peaceful demonstrations and followed "preexisting customs of suppressing protest speech." (¶¶ 327, 359). These assertions cannot be reconciled: a municipality cannot simultaneously have a failure-to-train theory premised on neglect or indifference and also a deliberate policy and custom of coordinated suppression. One theory implies a lack of direction or oversight; the other implies intentional direction from the top. Such internal inconsistency only furthers the confusion as to defending these sprawling allegations. *See e.g. Aasir Azzarmi v. Neubauer*, 2024 U.S. Dist. LEXIS 173355, *29-30 (S.D.N.Y. Sept. 24, 2024) (noting internal inconsistency as a factor in dismissing complaint).

Notably, these allegations arise out of a discrete incident on a single date - the May 1, 2024 protest at UB's North Campus, and not a complex web of long-running incidents. At its core, this Complaint alleges that officers should not have ordered dispersal orders at 8:23 p.m. The UB Picketing and Assembly Policy prohibits encampments and overnight assemblies.[2]  (*See*, **Exhibit**

---

[2] Defendants' citation to the Picketing & Assembly Policy is proper, as this policy is discussed in numerous sections in Plaintiff's complaint (*see e.g.* ¶¶ 59, 92), is incorporated in the complaint by reference. *Oriental v. Vill. of Westbury*, 2019 U.S. Dist. LEXIS 171232, *5-7 (E.D.N.Y. Oct. 2, 2019); and *DiFolco v. MSNBC Cable L.L.C*., 622 F.3d 104, 111 (2d Cir. 2010) ("in considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). Moreover, in deciding a motion to dismiss, a court is entitled to consider "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference" and "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint." *Weiss v. Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011)

1). Sunset occurred at 8:16 p.m. on May 1, 2024.[3]  Plaintiffs acknowledged being provided with at least four (4) dispersal orders: 1) around 8:00 p.m. (¶ 83); 2) around 8:15 p.m. (¶85); 3) around 8:22 p.m. (¶ 86); and 4) at 8:23 p.m. (¶ 89).  Around 8:23 p.m., officers effectuated the dispersal order while some Plaintiffs remained in prayer and had linked arms circling the prayer circle. Plaintiffs sought additional time to continue their protest and pray, but were not afforded that additional time.  The allegations in this Complaint mostly stem from these narrow facts.  There is no justification for an oversized pleading that relies on charged rhetoric to dramatize what is, in essence, a narrow factual dispute concerning one protest.

In *Roberto's Fruit Mkt. v. Schaffer*, 13 F.Supp.2d 390, 395-396 (E.D.N.Y. July 16, 1998), the Court determined that an "excessively long-winded and redundant" Amended Complaint that "tip[ped] the scales at a whopping 108 pages and 385 paragraphs" should be dismissed.  There, the Court recognized that while RICO allegations may "be somewhat longer than many complaints" and included 20 defendants, the Amended Complaint nevertheless violated Rule 8. *Id*.  The Court also took issue with "vague and inflammatory" language that ran afoul of Rule 12(f).  *Id*.

The length of Plaintiffs' Complaint – 108 pages – "alone is sufficient grounds for this Court's dismissal because it is neither short nor plain."  *Brown v. City of New York*, 2024 U.S. Dist. LEXIS 170444, *14 (S.D.N.Y. Sept. 20, 2024) (quoting *Phipps v. City of New York*, 2019 U.S. Dist. LEXIS 154315, *2 (S.D.N.Y. Sept. 10, 2019).  In *Brown*, for example, the Court

---

[3] A court can take into account matter of which judicial notice may be taken at the motion to dismiss stage. *Festa v. Westchester Med. Ctr. Health Network*, 380 F.Supp. 3d 308, 314 (S.D.N.Y. March 29, 2019).  Pursuant to the Old Farmer's Almanac, sunset in Buffalo, NY occurred at 8:16 p.m. on May 1, 2024.  *See* https://www.almanac.com/astronomy/sun-rise-and-set/NY/Buffalo/2024-05-01 last accessed on September 9, 2025.

dismissed an 86-page complaint that contained 245 paragraphs as the length was neither "short nor plain." *Id.* Other cases have followed suit, dismissing on similar grounds:

- 63-page complaint with 462 paragraphs dismissed pursuant to Rule 8. *Lonesome v. Lebedeff*, 141 F.R.D. 397 (E.D.N.Y. April 16, 1992).

- Second Circuit upheld District Court's decision to dismiss a second amended complaint that "spanned 57 pages and contained 597 numbered paragraphs" but remanded to allow a *pro se* defendant leave to amend the complaint. *Blakely v. Wells*, 209 Fed. Appx. 18, 20 (2d Cir. 2006).

- Second Circuit upheld District Court's decision to dismiss a 50-page complaint with hundreds of pages of exhibits since it was "convoluted and repetitive." *Da Costa v. Marculli*, 675 Fed. Appx. 15, 17 (2d Cir. 2017).

- Second Circuit finding that District Court's decision to dismiss 55-page amended complaint was supported due to complaint being neither short nor plain. *Owens v. New York AG*, 10 Fed. Appx. 34, 35 (2d Cir. 2001).

- Dismissing complaint containing 86 pages and 399 paragraphs. *Jablonski v. Special Counsel*, Inc. 2017 U.S. Dist. LEXIS 164167, *7 (S.D.N.Y. Sept. 28, 2017) *hearing on reconsideration Jablonski v. Special Counsel, Inc.* 2018 U.S. Dist. LEXIS 140869, *16 (reminding counsel to comply with Rule 8).

- Dismissing 90-page complaint that consisted of 500 paragraphs and 27 counts *Infanti v. Scharpf*, 2008 U.S. Dist. LEXIS 45501, * 5-6 (E.D.N.Y. June 10, 2008).

In sum, Plaintiffs' pleading is neither short nor plain, but rather a long-winded narrative that obscures the claims and unfairly prejudices defendants. Mounting a defense is only heightened in light of the improper group pleadings, as set forth above. The Court should dismiss the Complaint in its entirety.

## POINT III

## C.    PLAINTIFFS' FEDERAL CONSTITUTIONAL CLAIMS FAIL

Plaintiff alleges various violations of the First, Fourth, and Fourteenth Amendment pursuant to 42 U.S.C. § 1983. Specifically, Plaintiffs claim that officers retaliated against their speech, assembly, and recording activities (Counts 1 and 2); used excessive force, conducted

unlawful seizures, made false arrests, and engaged in malicious prosecution (Counts 3, 4, and 18); and engaged in equal protection and due process violations, including alleged discrimination based on religion and ethnicity (Counts 5-8). Plaintiffs further seek to impose municipal liability on the Town of Amherst under *Monell* for alleged policies, customs, and practices said to cause these violations (Count 9), while also asserting supervisory liability against senior Amherst officers in their individual capacities (Count 10).

Qualified immunity independently requires dismissal of Plaintiffs' federal constitutional claims. Even taking the allegations as true, the Complaint does not plausibly allege that the Amherst defendants violated clearly established rights under the First, Fourth, or Fourteenth Amendments. The conduct challenged here arose in the context of a large campus protest where officers were enforcing neutral time, place, and manner restrictions and issuing dispersal orders to maintain safety and order. Under these circumstances, reasonable officers could have believed their actions were lawful, and at minimum, had arguable probable cause to act as they did. Because Plaintiffs have not pled facts showing that Amherst officers violated any clearly established constitutional right, qualified immunity shields them from liability.

Separately from the qualified immunity analysis, Plaintiffs' constitutional claims fail as a matter of law. The First Amendment claims do not survive because the University's restrictions and the dispersal orders were neutral time, place, and manner regulations that did not target speech or expressive conduct. The Fourth Amendment claims are deficient because the allegations themselves reflect that dispersal orders were given and not followed, providing probable cause for arrest, and the Complaint does not plead facts showing that any Amherst officer used force that was objectively unreasonable. The Fourteenth Amendment claims add nothing beyond the Fourth Amendment theories and consist of conclusory assertions of discrimination or due process

violations without factual support linking them to the Amherst defendants. For these reasons, the First, Fourth, and Fourteenth Amendment claims are insufficient on their face and must be dismissed.

### 1.    Amherst Officers are Entitled to Qualified Immunity.

Even if Plaintiffs had adequately alleged individualized conduct, their constitutional claims fail because the officers had probable cause, or at minimum, arguable probable cause to effectuate arrests.  "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2014) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)).  As to the former, "[a] right is 'clearly established' when 'the contours of the right are sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Id*. (quoting *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011)).  As to the latter, "[i]n deciding whether an officer's conduct was objectively reasonable . . . , we look to the information possessed by the officer at the time of the arrest, but we do not consider the subjective intent, motives, or beliefs of the officer." *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010).  If a reasonable officer could disagree "on the legality of the action at issue in its particular factual context," then qualified immunity applies.  *Guan v. City of New York*, 37 F.4th 797, 806 (2d Cir. 2022) (quoting *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007)).

Additionally, an officer is entitled to qualified immunity where "arguable probable cause" to arrest is present.  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause

existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id*. quoting *Golino v. New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).

"The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). "[Pr]obable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id*.

"Qualified immunity is based on the common-sense rationale that the public interest requires that public officials be able to carry out their discretionary duties and act decisively without the intimidation that would result if good-faith errors in judgment were later to subject them to liability for damages." *Laverne v. Corning*, 522 F.2d 1144, 1149 (2d Cir. 1975). The defense creates "a *substantial* 'margin of error' for police officers in the exercise of their power to arrest." *Herpel v. Joyce*, 1992 U.S. Dist. LEXIS 17642, *9 (D. Conn. Sept. 30, 1992) (emphasis added). Because qualified immunity "is not merely a defense, but rather is also 'an entitlement not to stand trial or face the other burdens of litigation[,]" the issue should be decided "at the earliest possible stage in litigation." *Jackson v. Suffolk County*, 87 F.Supp. 3d 386, 405 (E.D.N.Y. Feb. 20, 2015) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) and *Hunter v. Bryan*t, 502 U.S. 224, 227 (1991)).

Here, it is undisputed that officials provided the Plaintiffs with dispersal orders. Plaintiffs' failure to comply with these orders provided officers with probable cause to arrest for offenses such as disorderly conduct, obstruction, and trespassing. The Second Circuit has upheld probable cause determinations in nearly identical protest contexts, finding that officers may reasonably rely

13

on dispersal orders to effectuate arrests when demonstrators fail to leave. *See e. g. Papineau v. Parmley*, 465 F.3d 46, 60 (2d Cir. 2006) (discussing that while officers did not issue a dispersal order, had such an order been issued, giving protesters fair warning, caselaw and the Penal Law, namely § 240.20(6), allowed for a disorderly conduct arrest).

Similarly, in *Meyers v. City of New York*, 812 Fed. Appx. 11, 13 (2d Cir. 2020), after the New York Police Department ("NYPD") ordered Zuccotti Park demonstrators to leave the area or face arrest, "[w]hile many protestors complied with the dispersal order, approximately 150 (including plaintiffs) refused to leave and were subsequently arrested." The Plaintiffs' refusal to comply with the lawful dispersal order provided officers with ample probable cause to arrest on disorderly conduct and trespass charges. *Id*. at 14-15. In this situation, the Second Circuit affirmed the District Court's judgment on the pleadings, finding no violations of the First, Fourth, and Fourteenth Amendments. *Id*. at 13, 15. The District Court delivered a detailed analysis, determining that the lawful dispersal order and the plaintiffs' defiance of the lawful order provided officers with sufficient probable cause to arrest for disorderly conduct, trespassing, and obstruction. *Meyers v. City of New York*, 2019 U.S. Dist. LEXIS 53150, *24 (S.D.N.Y. March 28, 2019).

In *Olubenga Akinnagbe v. City of New York*, 128 F.Supp.3d 539, 545-546 (E.D.N.Y. Sept. 1, 2015), the criminal violations of New York Penal Law § 240.20(6) (disorderly conduct) and § 195.05 (obstruction) "overlap[ped] to a large degree, because '[a]n officer has probable cause to arrest for obstructing governmental administration where a person refuses to comply with an order from the police.'" (quoting *Marcavage v. City of New York*, 2010 U.S. Dist. LEXIS 107724, *10 (S.D.N.Y. Sept. 10, 2010); *see also Crenshaw v. City of Mount Vernon*, 372 Fed. Appx. 202, 206 (2d Cir. 2010) (finding officer was entitled to qualified immunity when the defendant failed to

leave the scene after being instructed by the officer to do so); *Johnson v. City of New York*, 2019 U.S. Dist. LEXIS 10867, *18-19 (S.D.N.Y. Jan. 23, 2019) (finding that failure to comply with police order provided for "at a minimum," arguable probable cause). Similarly, in *Heicklen v. Toala*, 2010 U.S. Dist. LEXIS 14344, *16-17 (S.D.N.Y. Feb. 17, 2010), given the "plausible orders" from another officer, such as the UB police, arguable probable cause existed. *See also Garcia, supra*, 779 F.3d at 93.

Plaintiffs themselves allege that police issued dispersal orders and that they did not comply, instead continuing prayer and/or linking arms in a circle. Those allegations, on their face, supply at least arguable probable cause for arrest. Officers confronting a fluid situation need not parse the subjective motives of demonstrators; it is sufficient that they reasonably believed Plaintiffs failed to obey lawful dispersal commands.

To the extent Plaintiffs argue that the dispersal orders "were not clearly communicated or accompanied by a meaningful opportunity to comply," (¶ 96), Plaintiffs own allegations contradict this vague assertion. In fact, Plaintiffs discuss being provided with at least four (4) dispersal orders: 1) around 8:00 p.m. (¶ 83); 2) around 8:15 p.m. (¶ 85); 3) around 8:22 p.m. (¶ 86); and 4) at 8:23 p.m. (¶ 89). Multiple Plaintiffs discuss negotiating the dispersal time with various officials. *See e.g.* (¶ 85 "Plaintiff Jay Ayoub told Defendant [UB Chief Kimberly] Beaty and [UB Captain Jonathan] Officer Fletcher that the crowd would be amenable to leaving at 8:30pm, after the prayer concluded."). Based on Plaintiff's own pleading, dispersal orders were adequately provided, and Plaintiffs failure to comply with these orders subjected them to arrest.

Moreover, Plaintiffs cannot establish that officers violated clearly established rights. As further discussed below, it is not disputed that the UB Picketing and Assembly policy prohibited encampments and overnight protests. While Plaintiffs, by virtue of a letter by UB Faculty, appear

to quibble with the term "overnight," Plaintiffs cannot establish that it would be clear to a "reasonable officer" that the Plaintiffs' nonconformity with the dispersal order was a clearly established right. "If the illegality of the conduct would not be so apparent, the officer is entitled to qualified immunity." *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013). In other words, "[t]he ultimate question of whether it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, *i.e.,* whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court." *Zellner v. Sumemrlin*, 494 F.3d 344, 367 (2d Cir. 2007). "The Second Circuit has held that the 'clearly established' requirement 'is satisfied if the law on the subject was defined at the time with reasonable clarity or clearly foreshadowed in rulings of the Supreme Court or the Second Circuit, so that the defendant should have understood that her conduct was unlawful.'" *Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 107 (S.D.N.Y. Sept. 29, 2016) (quoting *Lynch v. Ackley*, 811 F.3d 569, 578-579 (2d Cir. 2016)). In *Mediavilla*, for example, the Court determined that "[a]lthough Plaintiff was participating in a protest, there was and is no clear law that would establish the arresting officers' conduct as violative of Plaintiff's First Amendment rights in light of the circumstances surrounding Plaintiff's arrest."

Since no clearly established right existed, officers cannot be faulted for effectuating arrests pursuant to the dispersal orders. Plaintiffs' reliance on New York Penal Law § 140.00 and the law school faculty's interpretation of "night" misses the point in the qualified immunity analysis. Even if "night" were defined as thirty minutes after sunset for purposes of the Penal Law, Plaintiffs identify no clearly established constitutional right to continue a protest after sunset or to maintain an overnight encampment. The faculty commentary underscores this gap, as it offers an abstract statutory interpretation but cites no controlling precedent holding that dispersal of a demonstration

16

after sunset violates the First, Fourth, or Fourteenth Amendments. If law school scholars are unable to provide clearly established authority, surely a reasonable officer cannot be expected to do so.

Qualified immunity protects officers unless existing case law places the constitutional question "beyond debate," and no such authority exists here. *See White v. Pauly*, 580 U.S. 73, 79 (2017). At most, Plaintiffs' argument highlights ambiguity, which only reinforces that reasonable officers could believe enforcing the University's overnight policy was lawful. *Garcia, supra*, 779 F.3d at 96 ("On the face of the Complaint, the officers were confronted with ambiguities of fact and law."). An objectively reasonable officer cannot be faulted for arresting violators of the dispersal order. As such, the qualified immunity doctrine applies and warrants dismissal of the federal constitutional claims.

### 2.    First Amendment – Reasonable Time, Place, and Manner Restrictions (Counts 1 and 2).

Plaintiffs allege that the Amherst defendants and other officers violated their First Amendment rights by retaliating against them for engaging in protected speech, assembly, and recording activities during the May 1, 2024 protest at UB's North Campus. Specifically, Plaintiffs contend that their arrests, the use of force, and the targeting of student journalists and protestors documenting police conduct were undertaken to suppress expressive activity, deter future participation in protests, and prevent public oversight of law enforcement. These free speech claims fail because the University at Buffalo's protest restrictions constituted permissible time, place, and manner regulations that did not infringe upon protected expression.

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert*, 576

17

U.S. 155, 163 (2015) (quoting U.S. Const. amend. I).  The Supreme Court has long recognized that the government may impose content-neutral restrictions on the use of public property, provided they are narrowly tailored to serve significant governmental interests and leave open ample alternative channels for communication.  *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) and *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983).  "A content-neutral time, place, or manner regulation must meet intermediate scrutiny. That is, the regulation must 'serve a significant government interest, be narrowly tailored to serve that interest, and leave open ample alternative channels of communication."  *Int'l Action Ctr. v. City of New York*, 587 F.3d 521, *227 (2d Cir. 2009) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 804 (1989) (dissent)).

Here, UB's directives limiting prohibiting encampments and overnight assemblies were aimed at maintaining campus safety, order, and accessibility, not suppressing any particular viewpoint.[4]  Plaintiffs were asked to comply with neutral, generally applicable restrictions that governed the time, manner, and place of the protest.  Notably, pursuant to the content-neutral policy, assemblies could not exceed 12 hours in one day and a prohibition existed as to overnight assemblies.  The overnight language at issue here is content-neutral, as it applies regardless of the protestors' message, and it serves important interests in maintaining campus safety, security, and access to facilities.  It is also narrowly tailored: it does not prohibit demonstrations or expressive activity during the day but simply restricts the use of campus grounds for encampments and after

---

[4] Plaintiffs cannot plausibly allege that the time, manner, and place restrictions were not content neutral, as the policy was established on January 30, 2020 and updated  on April 1, 2020 – over 4 years before this protest took place.  "A regulation is content neutral when it is 'justified without reference to the content of the regulated speech.'" *Marcavage v. City of New York*, 689 F.3d 98, 104 (2d Cir. 2012) (quoting *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986)).

hours protesting.  Plaintiffs remained free to speak, assemble, and advocate their views through numerous alternative channels, including daytime protests, literature distribution, and organized events.  Plaintiffs' Complaint acknowledge their ability to march through campus and protest in designated areas for hours unimpeded on May 1, 2024.   The overnight restriction, therefore, satisfies the well-established time, place, and manner standard and cannot form the basis of a First Amendment violation.

Notably, Plaintiffs have not attempted to cite any law in their Complaint to argue that such time, manner, and place restrictions were facially unconstitutional. *See Blanton v. State University of New York*, 489 F.2d 377, 387 (2d Cir. 1973) (discussing "that a sleep-in is not an acceptable form of advocacy.").  Because such restrictions were constitutionally valid, Plaintiffs cannot plausibly allege that their First Amendment rights were infringed.  Further, as discussed above, Plaintiff's failure to follow the dispersal order subjected them to arrest.

On the retaliation claim (Count 2), the Complaint's barebone allegations do not allege when the three (3) Plaintiffs were filming the incident and arrested for this conduct.  Such specificity is important because if the alleged retaliation occurred after officers had probable cause to arrest, as further addressed above, the "retaliatory arrest claim fails as a matter of law." *McKenzie v. City of New York*, 2019 U.S. Dist. LEXIS 121937, *23-24 (S.D.N.Y. July 22, 2019).  Moreover, as to any retaliatory intent, Plaintiffs only allege that an unnamed Buffalo Police Lieutenant told campus newspaper editor who was filming to "get the f—k out of here."  No allegations have been proffered that the Amherst Defendants were involved in any type of retaliatory behavior.  This claim must be dismissed.

### 3.    Fourth Amendment Claims (Counts 3, 4 and 18)

Plaintiffs assert that the Amherst defendants and other officers violated their Fourth Amendment rights through the alleged use of excessive force and by effectuating unlawful seizures and false arrests during the May 1, 2024 protest that led to malicious prosecutions.  Plaintiffs assert that officers tackled, restrained, and handcuffed them with unnecessary force despite their peaceful conduct, and that their arrests were carried out without probable cause, as they were lawfully present on campus and engaged in expressive activity when dispersal orders were issued.  These counts seek to hold individual officers liable for unreasonable force and seizures, while framing the arrests as constitutionally baseless.

The Fourth Amendment prohibits unreasonable searches and seizures, but it does not forbid all seizures; rather, only those lacking probable cause or those carried out in an objectively unreasonable manner.  *See Whren v. United States*, 517 U.S. 806, 810 (1996). To state a viable Fourth Amendment claim, Plaintiffs must allege facts showing that the Amherst officers arrested them without probable cause or used force that was objectively excessive under the circumstances. They have not done so.

As to the false arrest claim (Count 4), Plaintiffs acknowledge that law enforcement issued dispersal orders during the May 1, 2024 protest and that demonstrators, including some Plaintiffs, remained in place, linked arms, or continued prayer after those orders were given. Failure to comply with a lawful dispersal order provides probable cause, or at minimum arguable probable cause for arrest, as fully discussed above.

The probable cause to arrest the Plaintiffs further defeats the malicious prosecution claim (Count 18).  *See Olugbenga Akinnagbe v. City of New York*, 128 F.Supp.3d 549, 554 (E.D.N.Y. Sept. 1, 2015) ("a malicious prosecution claim will be defeated by a finding of probable cause to

arrest, unless the plaintiff can demonstrate mitigating facts to vitiate probable cause which were first uncovered after the arrest.").  Moreover, as discussed under qualified immunity below, "the 'arguable probable cause' standard applies equally to claims for malicious prosecution as well as to claims for false arrest." *Id*.

Plaintiffs' suggestion that dismissal of charges moots probable cause lacks merit.  "[T]he validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Peterson v. Cnty. Of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998).    For example, in *Caravalho, supra*, the Court discussed "the district attorney's decision to forgo prosecution does not, in and of itself, undermine the arresting officers' conclusions that there was probable cause to arrest each of the plaintiffs. The appropriate inquiry in a probable cause analysis 'is limited to whether the facts known by the arresting officer at the time of arrest objectively provided probable cause to arrest.'" *Id*. at *26-27 (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013)).

Finally, Plaintiffs' excessive force allegations are equally deficient (Count 3). The Complaint relies on vague, conclusory references to "Defendant Officers" using force, without identifying specific conduct by any Amherst officer. Such group pleading is legally insufficient. *Iqbal*, 556 U.S. at 678; *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Moreover, even crediting Plaintiffs' allegations, the brief use of physical restraint to effectuate lawful arrests does not constitute excessive force under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (reasonableness judged from perspective of officer on the scene). The Complaint fails to allege facts showing that Amherst officers employed force beyond what was necessary to secure compliance in a fluid protest setting.

###### 4.     Fourteenth Amendment (Counts 5-7)

Plaintiffs also seek to impose liability under the Fourteenth Amendment, asserting alleged violations of due process and equal protection, including claims of religious and ethnic discrimination. These claims are legally deficient for several reasons.

###### a.     Selective Enforcement

To state a claim for selective enforcement, a Plaintiff must allege that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980). The Plaintiffs must "prove that the disparate treatment was *caused by* the impermissible motivation." *Id*.

Here, Plaintiffs cannot do so. Plaintiffs acknowledge that approximately 50 protesters were continuing to protest into the early evening. (¶73). Plaintiffs also acknowledge that approximately 15 individuals were arrested. (¶ 135). Of the 10 Plaintiffs filing this lawsuit, half are of Palestinian and/or Muslim descent. (¶ 290). That leaves half of the arrestees of non-Palestinian and/or Muslim descent. Further, a majority of the individuals protesting were not arrested. In fact, in reviewing the picture on Plaintiff's Complaint on Page 35, it appears that approximately 45 individuals are standing outside Capen Hall. 2 individuals are holding a Palestinian flag, while 2 others are holding an Israeli flag. This picture alone severely undercuts Plaintiffs' arguments. Plaintiffs, therefore, fail on the first prong.

Further, while Plaintiffs assert that non-Palestinian counter-protestors in support of Israel were not "arrested or disturbed," Plaintiffs make no allegations that such counter-protestors were also subjected to the dispersal order and failed to comply. This is a big distinction. Although the

similarity standard does not require "identical" comparison, Plaintiffs must show he or she "was similarly situated in all material respects to the individuals with whom [he] seeks to compare [him]self." *Thomas v. Genova*, 2025 U.S. App. LEXIS 4154, *8 (2d Cir. 2025) (quoting *Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019)).

As to the second prong, the Complaint fails to allege specific facts showing that Amherst officers personally discriminated against Plaintiffs because of religion or ethnicity. Instead, Plaintiffs rely on generalized assertions that "Defendant Officers" targeted Muslim and Arab students, without identifying any statements, actions, or conduct attributable to Amherst officers. Such vague and conclusory allegations are not enough to survive a motion to dismiss.

### b.    *Free Exercise and Equal Protection*

As stated above, "[t]o prove a violation of the Equal Protection Clause, for example, a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). "[A] Plaintiff must allege that a government actor intentionally discriminated against [him] on the basis of [his] membership in a protected class." *Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F.Supp. 2d 179, 194 (E.D.N.Y. Sept. 30, 2009) (quoting *Humphrey v. County of Nassau*, 2009 U.S. Dist. LEXIS 27105, *17 (E.D.N.Y. March 30, 2009)).   "A regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for governmental neutrality if it *unduly burdens* the free exercise of religion." *Kravitz v. Purcell*, 87 F.4th 111, 120 (2d Cir. 2023).   The Free Exercise Clause looks to whether the government has placed a "substantial burden" on the observation of a central religious belief or practice.  *Id*.

Of the 10 Plaintiffs, it appears that 4 are alleged to have been engaged in the religious practice of praying.  (¶ 299).  However, Plaintiffs' recitation that the other 6 Plaintiffs (and

presumably other 5 – 15 arrested total) were not engaged in prayer, undermines their argument that the officers were motivated by a discriminatory purpose.  Moreover, it cannot be plausibly argued that the UB Assembly policy – a regulation neutral on its face – unduly burdened the Plaintiffs' free exercise to practice their religion.  Finally, Plaintiffs assign no discriminatory motive to the Amherst Defendants.

*c.*     **Substantive and Procedural Due Process**

The Supreme Court has made clear that where a constitutional claim is covered by a specific amendment, it must be analyzed under that amendment rather than the more generalized rubric of substantive due process. *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Hickey v. City of New York*, 2004 U.S. Dist. LEXIS 23941, *61 (S.D.N.Y. Nov. 24, 2004) ("substantive due process analysis is not available where a more specific constitutional standard is directly applicable.") Plaintiffs' allegations of unlawful arrest and excessive force fall squarely under the Fourth Amendment, not substantive due process. *See e.g. Graham v. Connor*, 490 U.S. 386, 394-395 (1989).  To the extent Plaintiffs attempt to recast those allegations as Fourteenth Amendment violations, such claims are duplicative and must be dismissed. Moreover, such allegations come nowhere close towards shocking the conscious and "[a]ny arguments that defendants discharged their discretionary duties [by commanding the dispersal order] without legal justification in such an outrageously arbitrary way as to constitute a gross abuse of governmental authority may not be based on a denial of due process rights."  *Conte v. County of Nassau*, 2008 U.S. Dist. LEXIS 25694, *45 n.12 (E.D.N.Y. Mar. 31, 2008).

On the procedural due process claim, it is difficult to determine what Plaintiffs are alleging that are not already covered with their other constitutional claims.  Nevertheless, courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or

24

property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Conte v. County of Nassau*, 2008 U.S. Dist. LEXIS 25694, *43-47 (E.D.N.Y. Mar. 31, 2008) (quoting *Kentucky Dep't of Corr v. Thompson*, 490 U.S. 454, 460 (1989). "As a matter of federal law, the 'touchstone' of procedural due process is 'the requirement that a person in jeopardy of serious loss [be given] notice of' and an 'opportunity' to respond to 'the case against him.'" *Nnebe v. Daus*, 184 F. Supp. 3d 54, 62-63 (S.D.N.Y. Apr. 28, 2016) (quoting *Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009)). To the extent Plaintiffs allege that they were denied a meaningful opportunity to defend themselves, Plaintiffs admit that their criminal charges were dropped. Based on the deficiency in the pleadings, it is hard to determine what procedural due process rights were violated. As such, Count 7 should be dismissed.

### 5. *Monell* Liability

In the Complaint, the Plaintiff seeks *Monell* liability against Amherst and others, alleging the following:

- A policy or custom of "[a]uthorizing or condoning the use of excessive force against peaceful protestors." (¶ 330(a)).

- A policy or custom of "implementing or tolerating policies that suppress First Amendment rights of free speech and assembly." (¶ 330(c)).

- A policy or custom of "failing to provide adequate training and supervision to law enforcement officers regarding constitutional rights and proper crowd control measures." (¶¶ 330(b), 344-351). Officers were "absent adequate training, supervision, and clearly articulated crowd management policies." (¶ 339). Officers had no protest management training, "were not adequately trained to deal with a peaceful protest", but had a policy or custom "of suppressing protest with disproportionate force." (¶¶ 346-347).

- Defendants were "without clear dispersal protocols, without guidance on accommodating religious observance, and without meaningful supervision on the use of force." (¶ 324). Defendants "failed to implement or enforce such policies." (¶ 339).

25

- Defendants had "official municipal policies or longstanding customs, including the issuance and enforcement of the curfew order and the refusal to accommodate religious practices." (¶ 332).

- Defendants "executed a coordinated" and "synchronized tactical response of "violent suppression of a peaceful campus protest without meaningful attempt to de-escalate or provide clear, individualized dispersal instructions." (¶¶ 325 and 326). Defendants had "preexisting customs of suppressing protest speech through intimidation, kettling, and arrests without probable cause." (¶ 327). The "uniform and concerted policy which represented a coordinated effort by these institutions and their members to violate Plaintiffs' constitutional rights by suppressing their peaceful demonstration." (¶ 359).

- Plaintiffs allege Defendants engaged in "deliberate indifference" to their constitutional rights. (¶¶ 329 and 337).

Based on the conclusory and vague allegations, Plaintiffs fails to meet the *Iqbal* and *Twombly* standard. *Ruiz v. City of New York*, 2015 U.S. Dist. LEXIS 117947, 2015 WL 5146629, at *12 (S.D.N.Y. Sep. 2, 2015) (describing plaintiff's argument that the alleged misconduct was "repetitive, continuous and systematic" as "vague and conclusory" and dismissing plaintiff's *Monell* claims); *see also Bird v. Cnty. of Westchester*, 2022 U.S. Dist. LEXIS 111672, 2022 WL 2263794, at *12 (S.D.N.Y. June 23, 2022) (dismissing a *Monell* complaint where conclusory allegations "allege[d] broadly that [the municipality] 'has engaged in a policy, custom, or pattern and practice'" of unconstitutional conduct).

In addition to Plaintiffs' *Monell* allegations being conclusory, the allegations, as noted above, are internally inconsistent and contradictory. At various points, Plaintiffs allege that municipalities had official "policies" authorizing excessive force against peaceful protestors (¶ 330(a)) and implementing "policies that suppress First Amendment rights" (¶ 330(c)), while simultaneously claiming that officers acted "absent adequate training, supervision, and clearly articulated crowd management policies" (¶¶ 324, 339, 346–47). One theory posits intentional, uniform suppression through "coordinated" and "synchronized" tactical responses (¶¶ 325–27,

26

359), while the other asserts municipal failure to train, supervise, or provide guidance (¶¶ 329, 337, 344–51). These allegations are mutually exclusive: a municipality cannot both deliberately orchestrate a policy of suppressing peaceful protest and at the same time neglect to provide officers with any policy or direction. The same contradiction appears in Plaintiffs' claim that Defendants "failed to implement or enforce" policies (¶ 339), yet simultaneously acted pursuant to "official municipal policies or longstanding customs," including curfew orders and protest suppression (¶ 332). Compounding the confusion, Plaintiffs improperly group all "Municipal Defendants" together, making no effort to distinguish what policies, customs, or practices, if any, apply specifically to the Town of Amherst. This type of collective pleading leaves the Amherst defendants guessing which allegations are directed at them and which are aimed at other municipalities, in violation of Rule 8's requirement giving fair notice of the claims.

In *Monell v. Department of Social Services*, the Supreme Court held that municipalities could be liable under Section 1983 for certain constitutional violations. 436 U.S. 658, 690-91 (1978). *Monell* does not provide a separate cause of action, rather, "it extends liability to a municipal organization where that organization's failure to train or supervise, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Cox v. City of Rochester*, 2025 U.S. Dist. LEXIS 3843, *7-8 (W.D.N.Y. Jan. 8, 2025). As such, "to prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove...that an official policy of the municipality caused the constitutional injury."[5] *See Roe v. City of Waterbury,* 542 F. 3d 31, 36 (2d Cir. 2008), *citing Monell, supra; see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 122 (1988) ("governments should be held

---

[5] As argued above, since the Plaintiffs have not suffered a constitutional injury, as officers had probable cause or at least arguable probable cause to effectuate the arrests, Plaintiffs cannot meet the causal link. *See Pesola, supra* 2016 U.S. Dist. LEXIS 42977, *45.

responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights"). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondent superior* basis for the tort of its employee." *Jones, supra*, 691 F.3d at 80. That is because a "municipality may not be found liable simply because one of its employees committed a tort." *Roe,* 542 F. 3d at 36, *citing Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 405 (1997).

In order to allege such a policy or custom:

> "[A] plaintiff may assert one of the following: (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the municipal employees."
>
> *Harmer v. Westchester Cty.,* 2017 U.S. Dist. LEXIS 203401, at *17-18 (S.D.N.Y. December 11, 2017).

"Such a claim cannot lie in the absence of an underlying constitutional violation." *See, Lockett v. City of Middletown,* 19-CV-08255 (PMH), 2021 U.S. Dist. LEXIS 53495, at *11 (S.D.N.Y. March 22, 2021), *(citing Galgano v. City. of Putnam,* 2020 U.S. Dist. LEXIS 116682 (S.D.N.Y. July 2, 2020).

Claims that rely on "isolated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability." *Jones, supra,* 691 F.3d at 81; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was

caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Bird, supra*, 2022 U.S. Dist. LEXIS 111672, at *12 ("[The] [p]laintiff fails to allege the existence of any other similar incident, which dooms [the] [p]laintiff's claim because a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality."); *see also Santana v. City of New York*, 2018 U.S. Dist. LEXIS 53865, 2018 WL 1633563, at *10 (S.D.N.Y. Mar. 29, 2018) (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("[A] 'single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'"); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

### a.    *The Plaintiffs Fail to Sufficiently Allege Improper Policies or Customs*

The Plaintiffs have not asserted an official policy within Amherst; nor has Plaintiffs asserted that decisions were made by officials with final decision-making authority within Amherst.  At most, Plaintiffs discuss an unnamed "policy maker existed to enforce UB's encampment prohibition and dispersal order through mass arrest."  (¶ 343).  This theory seems to suggest that UB officials, not Amherst officials enforced this policy.  In any event, Plaintiffs do not allege any final decisionmaker within Amherst.  Instead, throughout the Complaint, Plaintiffs allege that the policies and customs of the various agencies caused violations to their constitutional rights.  Notably, Plaintiffs do not allege that such policies were so persistent and widespread.  Providing Plaintiffs with a charitable inference that such widespread allegations were made, that *Monell* factor will be discussed below.  Plaintiffs do, however, allege the fourth

type of *Monell* violation – deliberate indifference.  These Defendants will, therefore, address the third and fourth theories of municipal liability.

### b.    Widespread Practice of Misconduct

"[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Tieman v. City of Newburgh*, No. 2015 U.S. Dist. LEXIS 38703, \*16 (S.D.N.Y. Mar. 26, 2015) (quoting *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997)). To demonstrate a *de facto* policy or custom through a widespread practice, a plaintiff must "show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Buari v. City of New York*, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021) (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)).  In other words, to satisfy liability based on a persistent and widespread practice, "a policy maker indirectly cause[s] the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006) (citing *Monell*, 436 U.S. at 694); *see also Tieman*, *supra*, 2015 U.S. Dist. LEXIS 38703 (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)) ("a local government is faced with a pattern of misconduct and does nothing, [it] compel[s] the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.").  Under this theory, such acquiescence implies "constructive knowledge of policy making officials." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 400 (S.D.N.Y. 2021) (citing *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)).

Plaintiffs allege no other unconstitutional examples by the Amherst Defendants, and therefore, do "not state any specific policy or allege any other facts to support an inference that a custom or policy, beyond Defendants' conduct in this instant action, exists." *Chapman v. City of Albany*, No. 23-CV-686-LEK-PJE, 2025 U.S. Dist. LEXIS 12632, *13 (N.D.N.Y. Jan. 24, 2025); *Vasquez v. City of New York*, No-CV-4641-ER, 2023 U.S. Dist. LEXIS 219614, *19 (S.D.N.Y. Dec. 11, 2023) ("Moreover, the single incident at issue here is insufficient to establish liability for the City."). Here, like in *Oriental, supra*, 2019 U.S. Dist. LEXIS 171232, *9-10, the Complaint "contains only a detailed account of plaintiffs' own experiences[,]" and lacks facts to "plausibly suggest . . . a widespread practice." Even if the Plaintiff had alleged multiple similar incidents, if those incidents fail to allege a pattern of misconduct, courts have routinely denied *Monell* liability claims. See *e.g. Cox, supra*, 2025 U.S. Dist. LEXIS 3843, *22-23 (granting summary judgment finding, in part, that three incidents of misconduct over three years was insufficient to establish a pattern of misconduct); *Jones, supra*, 691 F.3d at 85 (discussing that "two instances, or at the most three, over a period of several years" of related misconduct "fell far short of showing a policy custom, or usage . . ."); *cf. Newsom v. City of N.Y.*, No. 16-CV-6773, 2-19 WL 3997466, at *8 (E.D.N.Y. Aug. 23, 2019) (87 cases of prosecutorial misconduct, including 28 cases of withholding *Brady* and *Rosario* material "sufficiently alleged a pattern and practice of which municipal policymakers must have been aware.").

Since the Plaintiffs have only articulated "isolated incidents of unconstitutional behavior" they have "not plausibly allege[d] a well-settled custom[,]" to provide sufficient notice to Amherst. *See Douglas v. Peekskill*, 2023 WL 2632217, at *9 (S.D.N.Y. March 24, 2023) quoting *Pettiford v. City of Yonkers*, 2021 WL 2556172, at *12 (S.D.N.Y. June 21, 2021). This theory, therefore, has no basis to meet the *Iqbal* standard.

Additionally, without properly identifying what policies, customs, or practices were widespread, the Plaintiff cannot sufficiently "establish a causal link" between those policies and the unconstitutional conduct that is necessary to establish liability. *See Kirton v. Doe*, No. 20-CV-10860-KMR, 2023 U.S. Dist. LEXIS 47874, *24-27 (S.D.N.Y. March 21, 2023). Due to these threadbare and conclusory allegations, Plaintiff's claims related to Amherst employing a pattern or widespread misconduct must be dismissed.

### c.    *Deliberate Indifference*

The remaining arguments, and what appears to be the majority of Plaintiffs' allegations, relate to a conclusory failure to train and supervise officers, amounting to deliberate indifference. In order for a municipality to be liable under the "deliberate indifference" standard, a plaintiff has to show each of the following: (1) that "a [municipality] knows 'to a moral certainty' that her employees will confront a given situation," (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation," and (3) "that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *O'Neal v. City of New York,* 196 F. Supp. 3d 421, 435 (S.D.N.Y. 2016) (quoting *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)). A Section 1983 claim is "at its weakest" when it relies on alleged failures to train or supervise. *Vasquez, supra*, 2023 U.S. Dist. LEXIS 219614, *15-16 (quoting *Greene v. City of New York*, 742 F. App'x 532, 536 (2d Cir. 2018)); *see also Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its *most tenuous* where a claim turns on a failure to train.") (emphasis added).

To support a failure to supervise theory, a plaintiff may establish that (1) "there was a pattern of allegations of or complaints about similar unconstitutional activity," and (2) "the municipality consistently failed to investigate those allegations." *Tieman*, 2015 U.S. Dist. LEXIS 38703, 2015 WL 1379652, at *21.  Alternatively, a plaintiff may plead that (1) "there was a pattern of actual similar constitutional violations," and (2) "the municipality consistently failed to discipline those involved." *Id.* In other words, a plaintiff must not only establish an obvious need but also the municipality's deliberate indifference thereto. *See Vann v. City of New York*, 72 F.3d, 1040, 1049 (2d Cir. 1995) ("An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."). Thus, to survive a motion to dismiss, a plaintiff must plead sufficient facts to make it plausible that the municipality was "on notice" of similar misconduct. *Mancuso v. Vill. of Pelham*, 2016 U.S. Dist. LEXIS 134788, 2016 WL 5660273, at *10 (S.D.N.Y. Sep. 29, 2016). *Vasquez, supra*, 2023 U.S. Dist. LEXIS 219614, *16-17.

Under the failure to properly train theory, a plaintiff must "identify a specific deficiency in the [municipality's] training program and establish that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (quoting *City of Canton*, 489 U.S. at 391).  "Failure to train arguments are grounded in the showing of multiple, similar civil rights complaints in comparable contexts to the alleged constitutional injuries or close temporal proximity."  *Vasquez, supra*, 2023 U.S. Dist. LEXIS 219614, at *18.  This is because the plaintiff must allege that the municipality was on notice that its training program was "deficient in a particular respect." *Triano*

33

*v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012) (quoting *Connick*, 563 U.S. at 62).

When a plaintiff fails to allege specific factual allegations on a "failure to train" theory, Courts will routinely dismiss that claim. *See, Dava v. City of New York,* 2016 U.S. Dist. LEXIS 115639, at \*25-26 (S.D.N.Y. August 29, 2016); *see also Corbett v. City of New York,* 2016 U.S. Dist. LEXIS 178037, at \*10-11 (S.D.N.Y. December 22, 2016) (citing *Smith v. Collins,* 2016 U.S. Dist. LEXIS 23710 (S.D.N.Y. February 26, 2016)) ("While it may be true that Section 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery... this does not relieve them of their obligation under *lqbal* to plead a facially plausible claim.*"); Lehal v. Cent. Falls Det. Facility Corp.*, 2016 U.S. Dist. LEXIS 177587, 2016 WL 7377238, at \*11 (S.D.N.Y. Nov. 21, 2016) (dismissing failure to train *Monell* claim in part because each "of plaintiff's new allegations regarding a supposed lack of training are too general and speculative" and collecting cases); and *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539-40 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program.").

Starting with the failure to supervise claim, the Plaintiffs have not identified a single case, let alone a pattern of allegations of complaints or actual similar violations. Without establishing such a pattern, the Plaintiff cannot plausibly claim that Amherst was deliberately indifferent to misconduct. Like in *Vasquez, supra*, since the Plaintiffs have failed to allege any facts concerning Amherst's "awareness and tolerance of misconduct and instead simply assumes that [Amherst] is 'aware of the widespread nature of the issue . . .'" the Plaintiffs cannot demonstrate notice. 2023

U.S. Dist. LEXIS 219614.  As Amherst had no notice, it cannot be claimed that Amherst's "failure to supervise its employee was a policy of deliberate indifference."  *Id.*

As to the failure to train claim, Plaintiffs merely offers rote, conclusory, and boilerplate language alleging Amherst failed to properly train its employees.  Plaintiffs do not allege specific training deficiencies.  Nor do they cite any training manuals, procedural manuals, or any other aspects of Amherst's training to support an inference that Amherst failed to properly train and that such failure caused the alleged violations.  *See Walker v. New York*, 2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015) (dismissing failure to train claim since the plaintiff failed to cite to procedural manuals, training guides, or other aspects of police training); and *Vasquez, supra*, 2023 U.S. Dist. LEXIS 219614 (discussing the Plaintiff did "not identify procedural manuals or training guides, nor [does he] highlight relevant particular aspects of police training" that "would be required to plead a failure to train claim.").

Plaintiff, instead, attempts to use language such as "upon information and belief," but such language fails to include the facts upon which the beliefs are found.  *See e.g. Tolbert v. Dusza*, 2022 U.S. 69506, *2 (W.D.N.Y. Apr. 14, 2022) adopted by this Court in *Tolbert v. Sullivan*, 2022 U.S. Dist. LEXIS 118794 (July 6, 2022).  Plaintiff's "mere assertion" that Amherst failed to properly train its officers does not meet the *Iqbal* standard.  *Oriental, supra*, 2019 U.S. Dist. LEXIS 171232, *9-10.  In essence, the conclusory language "shed[s] no light on [Amherst's] customs, policies, or training."  *See Boggs v. Town of Riverhead*, 2018 U.S. Dist. LEXIS 190772, 2018 WL 5830824 (E.D.N.Y. Nov. 7, 2018) (discussing how courts "routinely reject claims such as these as bases for attaching municipal liability.").

Moreover, like the claims above, Plaintiffs have not cited any other incidents that would demonstrate that Amherst's training was specifically deficient, leading to deliberate indifference.

35

"There must be an affirmative link between [, for example,] the training inadequacies alleged, and the particular violation at issue." *Kirton, supra*, 2023 U.S. Dist. LEXIS 47874, at *24 quoting *Tuttle*, 471 U.S. at 824 n. 8. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, *supra*, 563 U.S. at 62. This lack of notice "dooms" the Plaintiff's claims. *Bird v. Cnty. of Westchester*, No. 20-CV-10076, 2022 U.S. Dist. LEXIS 111672, 2022 WL 2263794, at *12 (S.D.N.Y. June 23, 2022). Without plausibly alleging what training programs were deficient, the Plaintiffs cannot meet their burden.

This situation is far from the allegations in *McCants v. City of Newburgh*, No. 14-CV-556, 2014 U.S. Dist. LEXIS 165821, 2014 WL 6645987, at *4-5 (S.D.N.Y. Nov. 21, 2014), where the Court found the plaintiff sufficiently alleged the need for better training or supervision where the plaintiff listed and detailed seventeen other complaints over a seven-year period raising similar allegations against the same defendants. Nor is this case similar to *Farrow v. City of Syracuse*, No. 12-CV-1401, 2014 U.S. Dist. LEXIS 42837, 2014 WL 1311903, at *8 n.7 (N.D.N.Y. Mar. 31, 2014), where plausible failure to train claim arose where "at least 15 excessive force complaints ha[d] been filed against the [c]ity in the past 5 years". In those cases, the Plaintiffs were able to establish the necessary pattern to claim municipal deliberate indifference. Here, the Plaintiff falls far short of meeting the plausibility burden as no notice can be claimed.

## POINT IV

**D.    THE NEW YORK STATE CLAIMS MUST BE DISMISSED**

### 1.    Plaintiffs Have Not Set Forth the Required Condition Precedent

Pursuant to New York law, filing a notice of claim is a condition precedent before bringing a tort New York tort claim against a municipality or its employees.  Service of a notice of claim within 90 days after a claim arises is a condition precedent to a lawsuit against a municipality. *See* General Municipal Law § 50-e(1)(a).  Moreover, "New York law requires a plaintiff to affirmatively plead that he has complied with the notice of claim requirement."  *Perkins v. City of New York*, 2017 U.S. Dist. LEXIS 37046, *10-11 (S.D.N.Y. Mar. 15, 2017) (relying on *Davidson v. Bronx. Mun. Hosp*., 64 N.Y.2d 59, 62 (1984)); and General Municipal Law § 50-i(1) ("it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice").  "To survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed."  *Naples v. Stefanelli*, 972 F.Supp. 2d 373, 390 (E.D.N.Y. Sept. 18, 2023).

"While the Supreme Court has held that state law notice-of-claim requirements do not apply to actions under 42 U.S.C. § 1983, it carefully noted that 'federal courts entertaining state-law claims against . . . municipalities are obligated to apply the [state's] notice-of-claim provision.'" *Boggs*, *supra*, 2018 U.S. Dist. LEXIS 190772, *18-20 (quoting *Felder v. Casey*, 487 U.S. 131, 151 (1988)).  Notably, "[f]ederal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim." *Id*. (quoting *Dillon v. Suffolk Cty. Dep't of Health Servs.*, 917 F. Supp. 2d 196, 216 (E.D.N.Y. 2013)).

Here, Plaintiffs have not alleged compliance with General Municipal Law § 50-i(1). Nowhere in the 108-page Complaint is there any mention of this necessary condition precedent. Because Plaintiffs have failed to affirmatively plead that they filed a notice of claim with respect to the state law claim, those claims should be dismissed. *See e.g. Blackwood v. Westchester Cnty.*, 2024 U.S. Dist. LEXIS 173608, *18 (S.D.N.Y. Sept. 25, 2024).

### 2.    Discrimination Claim

Plaintiffs allege violations of New York Civil Rights Law Section 40-c (discrimination based on religion and ethnicity). Pursuant to Section 40-d, notice must be served upon the Attorney General of New York at or before the commencement of any actions under this section. Similar to above, Plaintiffs have not alleged the necessary condition precedent, and as such, this claim should be dismissed. *See Luongo v. Nationwide Mut. Ins. Co*., 1996 U.S. Dist. LEXIS 11186, *8 (S.D.N.Y. Aug. 6, 1996).

### 3.    New York Constitutional Law Claims are Superseded by the Federal Constitutional Claims.

Plaintiffs allege violations of the New York Constitution, in particular violations of Article 1, Sections 8, 9, and 11 (Counts 9 and 10). "It is a common view amount District Courts in this Circuit that there is no right of action under the New York State Constitution for claims that can be brought under § 1983." *Dava v. City of New York*, 2016 U.S. Dist. LEXIS 115639, *30-31 (S.D.N.Y. Aug. 29, 2016). Here, Plaintiffs are bringing free speech (Section 8 of NY Constitution; Count 9), freedom of assembly (Section 9 of NY Constitution; Count 9), and equal protection (Section 11 of NY Constitution; Count 10) claims that are subsumed within the various § 1983 claims. As such, these superfluous claims must be dismissed. *See Buchanan v. City of New York*, 556 F. Supp. 3d 346, 365 (S.D.N.Y. 2021) (dismissing free speech claim brought under article 1,

section 8 of New York Constitution because it could have been brought under Section 1983) and *Hamilton v. Martucello*, 2025 WL 713032, at *8-9 (W.D.N.Y. Mar. 5, 2025) (dismissing claims alleging violations of the New York State Constitution, article 1, section 9-11 because those claims could have been brought under Section 1983).

### 4.    The Amherst Defendants Are Improperly Grouped

Like the federal constitutional claims, the New York State claims improperly group the defendants without delineating what conduct applied to who.  Such lumping of defendants is impermissible pursuant to Fed. R. Civ. Proc. 8.  *See Athuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001).  Rule 8 governs the entire pleading here.  *See Century 21, Inc. v. Diamond State Ins. Co*., 442 F.3d 79 (2d Cir. 2006) and *Corley v. United States*, 11 F.4th 79, 88 (2d Cir. 2021).  Plaintiffs' failure to distinguish the behavior of the officers allegedly involve render these claims defective.  *See e.g. Taranto v. Putnam Cnty*., 2023 U.S. LEXIS 174333, *74 (S.D.N.Y. Sept. 28, 2023) (finding improperly lumped defendants together under a state negligence claim) and *Roldan v. Lewis*, 2025 U.S. Dist. LEXIS 37621, *46-51 (E.D.N.Y. March 3, 2025) (applying Rule 8 to state failure to report claim).

### 5.    Amherst Officers are entitled to New York State qualified immunity

New York law grants "government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis."  *Papineau, supra*, 465 F.3d at 63; and *Blouin ex rel Estate of Pouliot v. Spitzer*, 356 F.3d 348, 364 (2d Cir. 2004) ("The New York courts recognize the defense of qualified immunity to shield the government official from liability unless that action is taken in bad faith or without a reasonable basis.").  As argued above, since officers had probable cause, or arguable probable cause, that the Plaintiffs were violating the law, state qualified immunity applies here.  Moreover, it cannot be

said that a reasonable officer would find, based on clearly established rights, that the dispersal order was unlawful. These Defendants are entitled to qualified immunity. As such, the existence of probable cause exists as a defense as to the false arrest and false imprisonment claims (Count 12) and the malicious prosecution claims (Count 14). *Marareno v. City of New York*, 187 A.D.3dd 1164, 1166 ("""The existence of probable cause constitutes a complete defense to a cause of action alleging false arrest.") and *De Lourdes Torres v. Jones*, 26 N.Y.3d 742 (2016). Similar logic applies to the abuse of process claim (Count 13). *Wheeler v. City of Middletown*, 2021 U.S. Dist. LEXIS 102770, *18 (S.D.N.Y. June 1, 2021) (probable cause "functions as a defense when the only evidence of improper purpose is the alleged lack of probable cause.").

### 6. Other State Law Counts (Not Addressed Directly Above)

Plaintiff alleges general negligence and gross negligence (Count 14). "Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Burbar v. Inc. Vill. of Garden City*, 961 F. Supp. 2d 462, 474 (E.D.N.Y. Aug. 19, 2013) (quoting *Bernard v. U.S.*, 25 F.3d 98, 102 (2d Cir. 1994)). This allegation is duplicative of underlying claims and must be dismissed.

As to the negligent hiring, training, and supervision claim (Count 15), this, too, must be dismissed. Since the officers are alleged to have operated within their capacity as employees of the Town of Amherst, any liability falls upon the doctrine of *respondeat superior*, and "no claim may proceed against the employer for negligent hiring" or supervision." *Lidell v. Slocum-Dickson Med. Group, P.C.*, 273 A.D.2d 924 (4th Dept. 2000); *see also Ashley v. City of New York*, 7 A.D.3d 742 (2nd Dept. 2004) ("Generally, where an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under a theory of *respondeat*

*superior* and the plaintiff may not proceed with a cause of action to recover damages for negligent hiring and retention."). "Indeed, courts routinely dismiss negligent hiring, training and supervision claims asserted against municipalities arising out of the conduct of police officers who were acting within the scope of their employment." *McKnight v. City of Rochester*, 2015 U.S. Dist. LEXIS 40608, *8-9 (W.D.N.Y. Oct. 30, 2015). As such, this count must be dismissed.

On the assault and battery claim (Count 11), Plaintiffs fail to identify who was assaulted and battered and what defendant allegedly caused that harm. This count is insufficiently pled.

The same deficiency applies to the harassment and discrimination claim (Count 18). Moreover, this claim does not appear to apply to municipalities, as Civil Rights Law 79-n proscribes "any person" from causing physical injury to another based on protected classes. *See e.g. Morrison v. Shalach*, 67 Misc. 3d 451, 457 (Westchester Co. Feb. 25, 2020) (finding that "person" did not apply to a college organization).

### 7. This Court Should Decline Exercising Supplemental and Diversity Jurisdiction.

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Moreover, diversity jurisdiction may be established under 28 U.S.C. § 1332, where it is alleged that that the plaintiff and defendant are citizens of certain states. Here, since the federal § 1983 claims are defective, and since the Plaintiffs are all residents of New York (as are the Amherst Defendants), this Court should decline to exercise supplemental or diversity jurisdiction of the state-law claims.

### CONCLUSION

As is evident, the Complaint must be dismissed for failure to state cognizable and plausible claims. For the foregoing reasons, the Plaintiffs' Complaint on those claims must be dismissed.

DATED:    Buffalo, New York
            September 12, 2025

**HURWITZ FINE P.C.**

*Stephen M. Sorrels*

Stephen M. Sorrels, Esq.
*Attorneys for Town of Amherst,*
*Captain Kari McFayden,*
*Captain Charles Persons,*
*Lieutenant Matthew LoBuglio,*
*Lieutenant Craig Pelt,*
*Investigator Richard Walter,*
*Officer Brett Christmann,*
*Officer Michael Kubek,*
*Officer Patrick Luvender,*
*Officer Joshua Militello, and*
*Officer Dererk Neuman*
1300 Liberty Building
Buffalo, New York 14202
Telephone: (716) 849-8900
Facsimile: (716) 855-0874
sms@hurwitzfine.com