UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

YOUSEF AHMED,
JAY AYOUB,
MAJD AYOUB,
ELVI JO DOUGHERTY,
SOLIEGH M. DOUGHERTY,
JAZMINE C. FRAZIER,
TIMOTHY P. GEORGER,
IBRAHIM KHATIB,
HANNAH R. KRULL, AND
NOOR A. MOHAMMED,

               Plaintiffs,                       Civil Action No.: 25-cv-00391

     v.

CITY OF BUFFALO, et al.,

               Defendants.
_____


James P. Blenk, Esq., under penalty of perjury, hereby declares the following:

1.      I am an attorney at law duly licensed to practice in the United States District Court for the Western District of New York.  I am a partner with the law firm, Lippes Mathias LLP, attorneys for Defendants, Town of Cheektowaga ("Cheektowaga"), Police Officer Matthew Arnold ("Officer Arnold"), Police Officer Miller ("Officer Miller"), and Police Officer Shane Rogers ("Officer Rogers") (collectively "Cheektowaga Defendants") in this matter, and as such, I am fully familiar with the facts concerning the above-captioned action.

2.      I submit this declaration on behalf of the Cheektowaga Defendants and in support of their pending motion to dismiss Plaintiffs Complaint.

1

3.      In or about February 2025, the Plaintiff's counsel Robert Corp obtained bodycam footage of the events relevant to the complaint from the Town of Cheektowaga police department. (Declaration of Lt. Christopher Geelan, dated September 12, 2025, Exhibit 4 ( "Geelan Decl.").)

4.      Throughout the Complaint, the Plaintiff cites to bodycam footage, the Plaintiff cites to and relies upon bodycam footage.

5.      Upon information and belief, the bodycam footage referenced by the Plaintiff was the same that was obtained from Town of Cheektowaga and that is attached to the Geelan Declaration.  To wit, a copy of the bodycam footage of Officer Arnold and Officer Rogers during the relevant events of the evening of May 1, 2024 are attached to the Geelan Declaration at **Exhibit 2** (Upper Right Serial Stamp: X60A6988Q ("Arnold Video")) and **Exhibit 3** (Upper Right Serial Stamp: X60AC331E (Rogers Video)), respectively.

6.      At 20:32:15–17 (Arnold Video), video depicts Plaintiff Ahmed attempting to follow a group of students into Capen Hall. Before he could do so, a non-Cheektowaga officer closed the door in front of him. Plaintiff Ahmed asked, "am I allowed to go?" and the non-Cheektowaga officer responded, "no, come here." In apparent surprise, Plaintiff Ahmed exclaimed, "what the hell?" before immediately bolting away.



7.      At 20:32:21–24 (Arnold Video), video depicts Plaintiff Noor Mohammed ("Plaintiff Mohammed"), identifiable by her red, green, and white hijab, reacting to Plaintiff Ahmed's sudden flight and the ensuing chase. She exclaims, "oh my god no! Come here!" while retreating into the Capen Hall vestibule.



8.      At 20:32:29 (Arnold Video), video depicts the door to Capen Hall closed as non-Cheektowaga officers arrest an individual on the ground directly outside.



9.     At 20:32:30 (Arnold Video), video depicts Plaintiff Mohammed opening the door of Capen Hall.



10.     At 20:32:31-33 (Arnold Video), video depicts Officer Arnold forcing the door shut to keep a distance between officers on the ground effectuating an arrest and the bystanders in the Capen Hall vestibule.



11.    Officer Rogers' bodycam shows additional non-Cheektowaga officers holding another set of doors in the vestibule closed at 20:32:46 (Rogers Video). At 20:32:52-56 (Rogers Video), these same non-Cheektowaga officers instruct the students inside to "step back" from the door multiple times and to "relax."



12.    At 20:32:43–52 (Arnold Video), video depicts at least three students, including Plaintiff Mohammed, recording the arrest just outside the Capen Hall vestibule. No action is taken against the other two students, and, as the bodycam footage reflects at multiple points, numerous other students are also seen filming without any response from officers.



13.    At 20:33:03–06 (Rogers Video), video depicts Plaintiff Mohammed forcefully kicking the door that officers are clearly holding shut, striking it twice in an effort to push it open. This conduct was in clear contravention of the non-Cheektowaga officers' repeated warnings to students in the vestibule to "step back." Her actions briefly breached the barrier and threatened the safety of both the students inside the vestibule and the officers conducting the arrest.



14.    At 20:33:06–15 (Rogers Video), video depicts non-Cheektowaga officers enter the Capen Hall vestibule to apprehend Plaintiff Mohammed in response to her actions. Upon seeing the officers advance, Plaintiff Mohammed attempts to retreat further into the hallway, but the officers promptly intercept her and bring her to the ground to prevent further flight.



15.     These actions by Plaintiff Mohammed directly contradict allegations within the Complaint. Namely, the Complaint states that Plaintiff Mohammed "complied with all orders from officers," (Compl. [1][1] ¶¶ 29, 102) was "standing peacefully" (*id.* at ¶¶ 29, 102, 127) while not "pos[ing] a threat, interfere[ing] with any investigation, nor engag[ing] in any form of active resistance," (*id.* at ¶ 253) and that "without provocation, Ms. Mohammed was slammed to the ground, restrained by multiple officers, and arrested." (*Id.* at ¶ 29).

16.     At 20:33:16–19 (Arnold Video), video depicts Officer Arnold first makes physical contact with Plaintiff Mohammed, assisting non-Cheektowaga officers who had already brought her to the ground. Video does not depict Officer Arnold tacking Plaintiff Mohammed; his role is limited to helping flip her over and secure her hands behind her back for handcuffing.

17.     At 20:33:23 (Arnold Video), video depicts Plaintiff Mohammed resisting officers' efforts to place her in handcuffs by keeping her left arm raised and her elbow pointed upward rather than allowing it to be brought behind her back. During this struggle, video depicts her left hand remain lodged in the folds of her head covering, further complicating the officers' attempts to secure her.



---

[1] Bracketed References are to the document number on CM/ECF for the above-referenced index number.

18.     From 20:33:28–34 (Arnold Video), video depicts Plaintiff Mohammed's hijab becomes displaced as officers work to move her left arm from above her head to behind her back in order to apply handcuffs, though another layer of fabric continues to cover Plaintiff Mohammed's head.



19.     At 20:34:23–26 (Arnold Video), video depicts Plaintiff Mohammed as she is escorted out of Capen Hall toward the police vehicles, repeatedly stating, "please, I didn't do anything!"

20.     From 20:35:00–23 (Arnold Video), approximately ninety seconds after her hijab had become dislodged, video depicts Plaintiff Mohammed makes her first clear request to adjust it, asking, "wait, my hijab, can you at least put it back?" Officer Arnold responds politely, "How do you want it on? Like that?" and attempts to wrap it back around her head.

21.     Officer Arnold then permits Plaintiff Jay Ayoub (an older gentleman wearing a dark blue shirt and tan pants) to approach and readjust the hijab from 20:35:00–23 (Arnold Video).

22.     This portion of the bodycam footage directly refutes several of Plaintiffs' central allegations. The Complaint asserts that "[a]s the officers assaulted and harassed Ms. Mohammed,

8

she can be heard crying and begging for her hijab (which the officers had purposefully removed)" (Compl. [1] ¶ 197) and that "[s]he begged officers to allow her to readjust her religious garments to comply with her religious beliefs, but her pleas were ruthlessly refused." (*Id.* at ¶ 197). The footage shows otherwise. The claim that she repeatedly "begged" and that her request was "ruthlessly refused" is not a matter of mere embellishment—it is squarely contradicted by the video evidence.



23.    The Complaint alleges that Plaintiff Majd Ayoub approached Plaintiff Mohammed to assist with her hijab. (Compl. [1] ¶ 174). The footage, however, does no support this connection. By the time Majd Ayoub approaches, video decicts Officer Arnold and Plaintiff Jay Ayoub already assisting Plaintiff Mohammed and nearly finished. Video does not depict Majd Ayoub attempting to provide assistance with Plaintiff Mohammed's hijab. Despite being repeatedly instructed to back up on video, he retreats only slightly, remaining within arm's reach of the officers escorting Plaintiff Mohammed while continuing to argue with them.

24.    At 20:35:23–24 20:35:00–23 (Rogers Video), Officer Rogers' camera depicts Majd Ayoub taken to the ground and arrested. In the bottom right corner of the footage, Plaintiff Jay Ayoub can be seen beginning to notice his son's entanglement with police.



25.    At 20:35:26–28 20:35:00–23 (Rogers Video), video depicts Plaintiff Jay Ayoub placing his hands on the back of an officer engaged in arresting his son. Surrounding non-Cheektowaga officers promptly move to bring him to the ground. As this occurs, Jay Ayoub's arms are wrapped around the chest of the officer arresting his son and remain locked as he is taken down, causing that officer to be pulled down with him and further interfering with the arrest.



26.     This portion of the footage also flatly contradicts key allegations in the Complaint. Plaintiffs allege that both Cheektowaga officers tackled and subdued Plaintiff Majd Ayoub (Compl. [1] at ¶ 174). The video shows otherwise.

27.     Additionally, the Complaint alleges that Plaintiff Jay Ayoub was "assaulted and arrested while attempting to assist in keeping the peace," (Compl. [1] ¶ 174) and that he "tried to assist Majd while he was being attacked by police." (*Id.* at ¶ 107). These characterizations are nothing more than an attempt to sanitize the illegality of Plaintiff's actions by portraying them as benevolent and to disguise what the footage plainly depicts: Plaintiff Jay Ayoub placing his hands on an officer actively subduing his son and, as he is taken to the ground, wrapping his arms around that officer in a way that pulls the officer down with him. While Plaintiff is free to describe this action as "keeping the peace," it does nothing to change the fact that Plaintiff Jay Ayoub's actions supported probable cause for his arrest.

28.     From 20:35:23-49 (Arnold Video), video depicts Officer Arnold concluding his final interaction with the Plaintiffs by escorting Plaintiff Mohammed into the van for police custody.



29.     Officer Rogers's bodycam footage shows that he played no direct role in the arrest of Plaintiff Mohammed. With respect to Plaintiffs Majd and Jay Ayoub, his involvement was limited to briefly pressing down on them while non-Cheektowaga officers carried out the arrests. At no point is Officer Rogers shown striking, tackling, or twisting the arm of any Plaintiff, underscoring the minimal and restrained nature of his conduct.

30.     Officer Arnold's bodycam footage shows that his involvement with Plaintiff Mohammed was limited to assisting other officers in flipping her onto her stomach and guiding her arms behind her back so handcuffs could be applied. When Plaintiff Mohammed first requested an adjustment to her hijab, he responded politely and attempted to help reposition it. He then permitted Plaintiff Jay Ayoub to approach and complete the adjustment, further reflecting the measured and accommodating nature of his conduct.

## CONCLUSION

31.     For the reasons stated in the accompanying memorandum of law, this Court should grant the Cheektowaga Defendant's motion to dismiss Plaintiff's Complaint in its entirety and with prejudice along with any further relief the Court deems just and proper.


Dated: Buffalo, New York
          September 12, 2025

                                        _s/James P. Blenk___
                                        James P. Blenk, Esq.