# EXHIBIT L

STATE OF NEW YORK
COURT OF CLAIMS

In the Matter of the Claim of

YOUSEF AHMED,
JAY AYOUB,
MAJD AYOUB,
ELVI JO DOUGHERTY,
SOLIEGH M. DOUGHERTY,
JAZMINE C. FRAZIER,
TIMOTHY P. GEORGER,
IBRAHIM KHATIB,
HANNAH R. KRULL, and
NOOR A. MOHAMMED,

               Claimants,                       **CLAIM**

    - against –

THE STATE OF NEW YORK,

               Defendant.

PLEASE TAKE NOTICE, that JAY AYOUB, YOUSEF AHMED, MAJD AYOUB, ELVI JO DOUGHERTY, SOLIEGH M. DOUGHERTY, JAZMINE C. FRAZIER, TIMOTHY P. GEORGER, IBRAHIM KHATIB, HANNAH R. KRULL, and NOOR A. MOHAMMED, have and hereby make claim against THE STATE OF NEW YORK, and in support of said claim state the following:

**I. Claimants and Their Counsel**

1.     The Claimants named herein were participants in or present during a peaceful civic protest held on May 1, 2024, on the North Campus of the State University of New York at Buffalo ("UB") in Amherst, New York.

2.      The Claimants are residents of Erie County, New York, and assert this claim jointly, as their injuries arose from a single, unified course of unlawful conduct by state employees acting in concert during the planned, coordinated dispersal of a peaceful protest on May 1, 2024.

3.      The Post Office address of Claimant JAY AYOUB is 230 Palmdale Drive, Buffalo, NY 14221.

4.      The Post Office address of Claimant YOUSEF AHMED is 55 Ascot Circle, East Amherst, NY 14051.

5.      The Post Office address of Claimant MAJD AYOUB is 230 Palmdale Drive, Buffalo, NY 14221.

6.      The Post Office address of Claimant ELVI JO DOUGHERTY is 87 Chenango Street, Buffalo, NY 14213.

7.      The Post Office address of Claimant SOLIEGH M. DOUGHERTY is 87 Chenango Street, Buffalo, NY 14213.

8.      The Post Office address of Claimant JAZMINE C. FRAZIER is 225 Lafayette Avenue, Buffalo, NY 14213.

9.      The Post Office address of Claimant TIMOTHY P. GEORGER is 98 Waverly Avenue, Buffalo, New York 14217.

10.      The Post Office address of Claimant IBRAHIM KHATIB is 448 7th Street, Buffalo, New York, 14201.

11.      The Post Office address of Claimant HANNAH R. KRULL is 41 Sidney Street, Lower, Buffalo, New York 14211.

12.      The Post Office address of Claimant NOOR A. MOHAMMED is 11 Sussex Street, Buffalo, New York 14215.

13.      The attorneys for the claimants are LIPSITZ GREEN SCIME CAMBRIA LLP. The firm's principal office is located at (and mailing address is) 42 Delaware Avenue, Suite 120, Buffalo, New York 14202.

6937897v1 - 074223.0001

14.     The claim of each Claimant is for personal injuries, including without limitation, loss of income and medical expenses, and for consequential damages generally.

15.     Each Claimant seeks compensation for physical pain and suffering, psychological trauma, and the violation of core civil liberties, including freedom of speech, religious freedom, and freedom from unlawful arrest.  Claimants required medical treatment and/or mental health care.  All Claimants suffered indignity, humiliation, and reputational harm as a result of being arrested in front of peers and publicly identified in press reports.

## II. Jurisdiction

16.     This Court has jurisdiction over this claim pursuant to the Court of Claims Act §§ 8, 9, and 11.

17.     All Claimants other than JAZMINE C. FRAZIER served timely Notices of Intention to File a Claim within 90 days of the May 1, 2024 incident pursuant to Court of Claims Act § 10(3) and (3-b).

18.     Claimant JAZMINE C. FRAZIER did not serve a Notice of Intention to File a Claim within 90 days of the incident.  The delay in filing this claim was neither willful nor due to mere inattention; instead, it resulted from exceptional and coercive circumstances faced by Claimant in the aftermath of the protest.  Specifically, Claimant was subjected to a retaliatory criminal prosecution initiated by the State University Police at Buffalo ("UBPD"), which remained pending for several months following the protest.  On August 14, 2024, all charges against Claimant were dismissed. However, beginning on or about August 21, 2024, UBPD and UB officials refiled the previously dismissed charges, leading to additional legal proceedings that concluded with a dismissal in Claimant's favor in late February 2025.  Throughout the pendency of these prosecutions, Claimant reasonably feared that pursuing civil legal action could jeopardize their liberty or provoke further retaliatory conduct by the same officers who falsely arrested and charged them.  These fears were objectively reasonable given the conduct alleged.  The malicious prosecution functioned as a State-created impediment that prevented Claimant from asserting their rights in a timely manner.  Upon

6937897v1 - 074223.0001

-3-

dismissal of the charges, Claimant acted promptly and diligently to retain counsel, gather records, and join this action.

19.    Claimant Jazmine C. Frazier respectfully asserts that she has no other adequate remedy at law, that the State will not be prejudiced by the granting of permission to file a late claim, and that her proposed claim has the appearance of merit, as will be further detailed in her contemporaneous motion under Court of Claims Act § 10(6).  The State had notice of the essential facts constituting the claim, as the incident was widely reported in the media and involved multiple claimants, providing the State with ample opportunity to investigate the circumstances underlying the claim.

20.    Claimants respectfully state that this Claim is filed jointly to preserve factual and procedural coherence arising from the single protest event and uniform course of conduct by State agents.  Claimants acknowledge that JAZMINE C. FRAZIER's inclusion is contingent on a successful motion under § 10(6), which will be filed contemporaneously.

21.    This claim is being filed within the applicable time limitations for both intentional torts (1 year) and negligence-based claims (2 years) under the Court of Claims Act § 10, due to timely service of such notices.

22.    This Claim complies with Court of Claims Act § 11(b), as it states the time and place of the incident, the nature of the claim, the manner in which it arose, and the categories of injury and loss claimed by each individual Claimant.

### III. Background

23.    Defendant **The State of New York** is responsible for the acts and omissions of its agencies and employees, including the State University of New York system, and for the operation and conduct of the State University Police.

24.    The State University of New York at Buffalo (UB) is a constituent institution of the SUNY system and hosted the May 1, 2024 demonstration that gave rise to this claim.  The State University Police at Buffalo (UBPD) is a division of State law enforcement operating at UB.

6937897v1 - 074223.0001

Satish K. Tripathi is the President of the University at Buffalo and at all relevant times was responsible for overseeing campus safety, university policy development and enforcement, external law enforcement coordination, the implementation of public assembly guidelines, and had knowledge or constructive notice of the policies and practices that led to the mass arrest of peaceful student demonstrators.

25.    The New York State Police (NYSP) is a division of State law enforcement.

26.    The officers named herein were acting within the scope of their employment as agents of the State:

      a.  Chief Kimberly L. Beaty
      b.  Deputy Chief Scott Marciszewski
      c.  Captain Jonathan Fletcher
      d.  Lieutenant Christopher Kerr
      e.  Officer Robert Adamski
      f.  Officer Luke Galmarini
      g.  Officer Christopher Gruttaria
      h.  Officer Matthew Kostek
      i.  Officer Gregory Kurowski
      j.  Officer Alexis Pearce
      k.  Officer Michael Puerner
      l.  Officer Amy Revelas
      m. Officer Michael Saraceno
      n.  Officer Christopher Sprigg
      o.  Officer Douglas Takac
      p.  Investigator Timothy Thompson
      q.  Officer Kopacz (first name unknown)
      r.  Lieutenant Bacon (first name unknown)
      s.  Officer Majewski (first name unknown)
      t.  Officer Will (first name unknown)

27.    There are additional John Doe UBPD and NYSP officers whose names are not yet known but who participated in the crowd control, use of force, and arrests of the Claimants on May 1, 2024.

28.    After the demonstration in the Flint Loop lawn area and the protests that followed were disbanded, officers from UBPD and other agencies menacingly patrolled UB's campus outside the area of Capen Hall, Knox Hall, and Hochstetter Hall, harassing students who attempted to enter

6937897v1 - 074223.0001

or leave the buildings. The officers did not arrest or interfere with individuals present on campus who were not involved with the protest.

## IV. Individual Claimant Allegations

29.    **Yousef Ahmed** is a UB student and former Secretary of Students for Justice in Palestine. On May 1, 2024, he completed the first portion of Maghrib prayer before he was disrupted by the charging officers. Mr. Ahmed dispersed from the Flint Loop area to comply with the unconstitutional dispersal order. After Mr. Ahmed retreated, he attempted to enter Capen Hall (an academic building on UB's campus, where he is a student). Officers specifically targeted Mr. Ahmed because he was "inciting" others on campus and prevented him from entering Capen Hall (while allowing other students to enter) and began chasing him. Mr. Ahmed was violently tackled from behind by multiple Buffalo Police Department and unknown UBPD officers and other officers, slammed into a doorway, piled on by multiple officers, and zip-tied. Body camera footage confirms officers targeted him as "the guy in the black shirt." As he attempted to enter Capen Hall, several officers shouted profanities, violently tackled him, and drove his face into the ground. After the arrest, one officer bragged, "I f***ing blasted him — he went flying." He sustained head and shoulder injuries, symptoms of concussion, and deep psychological distress related to the interruption of prayer and the discriminatory nature of the arrest.

30.    **Jay Ayoub** is a 61-year-old Erie County resident and father of Plaintiff Majd Ayoub. He peacefully observed the protest from the perimeter and joined the Maghrib prayer. Mr. Ayoub dispersed from the Flint Loop area to comply with the unconstitutional dispersal order. Afterward, while trying to defuse tension near officers, he was tackled from behind by multiple officers including members of the Buffalo Police Department ("BPD"), UBPD, and other yet-to-be-identified officers. He was pinned under several officers, zip-tied, and cried out "I can't breathe, I have asthma." Officers responded, "I don't give a f***," and repeatedly punched and kneed him while he was restrained and was not resisting. Mr. Ayoub feared for his life and experienced chest pain, respiratory distress, and lasting trauma.

6937897v1 - 074223.0001

31.     **Majd Ayoub** is a UB student and protest organizer affiliated with Students for Justice in Palestine.  Majd dispersed from the Flint Loop area to comply with the unconstitutional dispersal order.   After attempting to assist another protester whose hijab was removed by officers, Majd attempted to back away and comply with officers' instructions.  He was then suddenly tackled by a group of officers including members of UBPD, BPD and other yet-to-be-identified officers, despite visibly retreating.  He was violently thrown to the ground, piled upon, struck, and zip-tied.  He sustained bruising and sprains to his right shoulder and hip. He continues to experience emotional and religious trauma.

32.     **Elvi Jo Dougherty** is a community member and mother of Plaintiff Soliegh Dougherty.  She stood on the perimeter of the protest and linked arms with others in a protective formation.  She intended to disperse from UB's campus after the Muslim evening prayer had concluded but was arrested while the prayer was ongoing.  Despite not resisting or threatening any officer, without warning, she was violently apprehended by UBPD officers.  Her arms were grabbed and she was tightly zip-tied, causing numbness, pain, and bruising to her wrist.  The zip ties caused loss of circulation and numbness, and were not loosened despite repeated requests until some time after she was seated on a UB bus for transport.  She required therapeutic care and suffered emotional injury.

33.     **Soliegh Dougherty** is a UB student who linked arms with other demonstrators to protect prayer participants.  She intended to disperse from UB's campus after the Muslim evening prayer had concluded but was arrested while the prayer was ongoing.  Despite not resisting or threatening any officer, without warning, she was swept off her feet by an officer, slammed into the ground face-first, and pinned under at least three officers, including UBPD officers.  She sustained chest bruising, abrasions, and emotional trauma including recurring nightmares and panic.  Her participation in protests has since ceased due to fear.

34.     **Jazmine C. Frazier** arrived at the May 1, 2024 protest shortly before 8:00 p.m. and joined the protective formation encircling students who were praying.  Then, Jazmine evacuated the Flint Loop lawn in accordance with orders issued by Defendant's officers and joined arms with other

6937897v1 - 074223.0001

protesters in a different location on campus. While filming with their phone and linking arms with other peaceful demonstrators, they were knocked to the ground by UB police officers. They were tackled, flipped over, and pinned under multiple officers who restrained her with zip ties and, after they failed, metal handcuffs. They screamed "I can't breathe" as officers applied pressure to their back and lower body. Jazmine sustained bruises to wrists, hands, hips, and knees, and suffered emotional trauma from the force used and the experience of being restrained while trying to retreat. Their arrest was later re-processed despite the original charges being dropped.

35.    **Timothy P. Georger** is a UB graduate student and Teaching Assistant who stood peacefully on the sidelines of the protest. He joined the protective formation encircling students who were praying. Then, Mr. Georger evacuated the Flint Loop lawn in accordance with orders issued by Defendant's officers and joined arms with other protesters in a different location on campus. Mr. Georger held a sign supportive of the Palestinian cause and peacefully stood. He was violently apprehended and manhandled by an unidentified officer who ripped at Mr. Georger's shirt and then handed Mr. Georger off to another unidentified officer to be zip-tied. He experienced physical soreness and emotional shock. He had never been arrested before and reported lasting emotional distress from the incident.

36.    **Ibrahim Khatib** is a UB student who participated in the protest and was engaged in silent prayer when the line of officers approached. Mr. Khatib was shoeless but attempted to get to his feet and run away in accordance with the dispersal order, as he had no intention of violating any curfew or police order. While shoeless (due to his participation in holy prayer), he was tackled from behind by multiple officers, including UBPD officers. Mr. Khatib was zip-tied tightly despite offering no resistance. His wrists were bruised and numb for days, and he developed psychological distress related to the religiously insensitive nature of the takedown. Mr. Khatib's exercise of his First Amendment rights was significantly chilled as a result of the incident. The experience caused religious trauma and withdrawal from congregational prayer.

37.    **Hannah R. Krull** is a UB graduate student who was documenting the protest with her phone. She was standing peacefully in the protective circle around the prayer participants when

6937897v1 - 074223.0001

NYSCEF DOC. NO. 1

officers rushed the group. Then, Ms. Krull evacuated the Flint Loop lawn in accordance with orders issued by Defendant's officers and joined arms with other protesters in a different location on campus. She was tackled face-first into the pavement and pinned by multiple unidentified officers, including UBPD officers. She suffered abrasions and bruising on her face, arms, and chest, and her left shoulder was injured badly, and emotional trauma, and continues to experience panic and difficulty focusing in academic settings.

38.    **Noor A. Mohammed** is a UB student, practicing Muslim, and was present on May 1, 2024 as a protest observer. Ms. Mohammed chose not to even participate in the sunset prayer due to the intimidation of the dozens of officers present at the site. After dispersing in compliance with orders, she sought refuge inside Capen Hall. Despite posing no threat and not having participated in prayer, she was pursued inside the building by officers from BPD. She was grabbed by the backpack, slammed to the ground, and pinned by three officers, including at least one UBPD officer — one on her head, one on her chest, and one on her legs. Her hijab and keffiyeh were forcibly dislodged. She was mocked and taunted while restrained, denied a chance to readjust her clothing, and transported in handcuffs. She sustained bruising to her face and limbs and suffered religious trauma and public humiliation.

39.    The incidents described above occurred in the context of a coordinated, multi-agency police operation involving UBPD, State University Police, NYSP, and multiple municipal departments. Claimants were targeted for arrest based on their religious expression, their protected political views, and their presence near the Flint Loop prayer circle. The force used was not only excessive but inflicted discriminatorily, with visibly Muslim participants arrested more aggressively and without lawful basis.

## V. Factual Allegations

40.    On May 1, 2024, a peaceful student-led protest occurred at the University at Buffalo's North Campus, specifically in and around the Flint Loop area, organized in solidarity with victims of the ongoing humanitarian crisis in Gaza.

6937897v1 - 074223.0001

41.    The demonstration was conducted in full accordance with UB's Picketing and Assembling Policy and involved speeches, chants, symbolic displays, and ultimately a brief sit-in and evening prayer near Capen and Hochstetter Halls.

42.    Claimants and other protest participants were nonviolent and cooperative. They complied with requests earlier in the afternoon to remove tents and did not obstruct access to any building or university operations.

43.    Despite this compliance, UB and UBPD officials significantly escalated law enforcement presence on campus throughout the day, calling in dozens of uniformed officers from the State University Police and stationing them at the perimeter of the protest by early evening. UB and UBPD officials also employed a "Mutual Aid Agreement" and requested the assistance of police agencies of municipalities throughout Western New York.

44.    Among those leading the police response, acting under the direction of their State supervisors, were Captain Jonathan Fletcher, Deputy Chief Scott Marciszewski, Lieutenant Christopher Kerr, and Chief Kimberly Beaty, all of whom acted with the knowledge and/or approval of University President Satish K. Tripathi.

45.    At no point prior to 8:15 p.m. were the Claimants informed that they were in violation of any campus policy or law. There was no posted curfew, no formally enacted dispersal policy, and no indication that religious prayer or peaceful assembly was unlawful.

46.    At approximately 8:15 p.m., UBPD officers issued a verbal warning over a loudspeaker indicating that all persons must disperse by 8:23 p.m. or face arrest.

47.    The timing of this dispersal demand directly interfered with the observance of Maghrib prayer by several Muslim protestors, including multiple Claimants.  The prayer had just begun and would have concluded peacefully within minutes.

48.    Despite the ongoing visible prayer and the presence of peaceful bystanders, UBPD officers, under the command of Defendant supervisors, began a coordinated charge into the crowd at or just after 8:23 p.m., without allowing time for compliance or concluding the prayer.

6937897v1 - 074223.0001

-10-

49.     Notably, at the same time, at the same location on campus, protestors who expressed an opposing viewpoint to the Plaintiffs (pro-Israel counter-speech) were not subjected to force or arrest – for example, some counter-protesters mocking the demonstration and even shouting insults ("F—k those terrorists") were left unencumbered by police while the crackdown on the pro-Palestinian protestors was taking place.  This constitutes selective enforcement and viewpoint discrimination.

50.     Officers used force indiscriminately. Claimants were tackled from behind, dragged by their limbs, zip-tied, pinned under multiple officers, and subjected to humiliating or painful treatment despite offering no resistance.

51.     Some Claimants, including Noor Mohammed, were wearing religious attire such as hijabs or keffiyehs. During her arrest, Ms. Mohammed's hijab was forcibly dislodged in public by one or more officers, causing her extreme emotional distress and violating her religious rights.

52.     Several other Claimants, including Jay Ayoub, Majd Ayoub, Soliegh Dougherty, Timothy Georger, Ibrahim Khatib, and Yousef Ahmed, were either tackled while seated or struck while attempting to back away.

53.     Officers used takedowns and holds that caused injury. Multiple officers pinned down each individual without justification, and in some cases, taunted or verbally abused them during arrest.

54.     Claimants were not offered medical attention at the scene despite injuries to their shoulders, faces, backs, ribs, and limbs.

55.     UBPD used a university shuttle bus to detain and transport protesters to a secondary location, the Center for Tomorrow, where they were processed and issued appearance tickets.

56.     The charges included disorderly conduct, loitering, trespass, and resisting arrest, none of which had factual basis. The overwhelming majority of these charges were later dropped or dismissed.

57.     All criminal charges against all Claimants were eventually dropped without any conviction or plea.  The criminal charges against eight Claimants (all but Claimants Jay Ayoub and

6937897v1 - 074223.0001

Jazmine Frazier) were dismissed on June 4, 2024 due to "insufficient evidence" during their first appearance after being arraigned in Amherst Town Court.

58.    UB did not pursue any additional discipline of any of the seven UB students arrested by UBPD on UB's campus during the night of the protest.

59.    Each of the non-UB students arrested during the protest, including Claimants Jay Ayoub, Elvi Jo Dougherty, Soliegh Dougherty, Jazmine Frazier, and Ibrahim Khatib, were issued *persona non grata* ("PNG") notices by agents of the State University of New York acting under color of state authority.  These notices bar Claimants from accessing any property owned or controlled by the University at Buffalo.

60.    The PNG notices are indefinite in duration and are not subject to immediate review or rescission.  According to the University's own procedures, recipients are not even eligible to request reconsideration of the PNG designation until at least one full year has passed from the date of issuance.

61.    The PNG status operates as an extra-judicial punishment that continues to harm Claimants.  It was imposed without prior notice, hearing, or any articulation of current threat or justification, and persists despite full dismissal of all underlying charges.

62.    The State of New York, through its agents, thereby violated Claimants' state constitutional rights to due process and free expression, and inflicted continuing injury for which Claimants seek damage.

63.    Upon information and belief, University President Satish K. Tripathi, in his capacity as President of the University at Buffalo, acting within the scope of his duties, was aware of the planned operation, endorsed the decision to remove protesters by force, and failed to intervene to prevent unconstitutional and tortious conduct by UBPD officers.

64.    The UB administration and the State University Police lacked any coherent written policy that justified mass arrest or use of force against peaceful protestors following sunset.

6937897v1 - 074223.0001

65.     Upon information and belief, other demonstrations have been permitted to continue after sunset at UB without incident, reflecting selective enforcement and/or failure to implement consistent campus policies.

66.     UB officials, including Tripathi, acting within the scope of their official duties, designed and enforced the arbitrary, unconstitutional curfew with the express purpose of suppressing speech and assembly.

67.     UB officials, including Tripathi, violated the SUNY Rules for the Maintenance of Public Order, which stipulate that, "No student . . . or authorized visitor shall be subject to any limitation or penalty for expressing his or her views or for assembling with others for such purpose."

68.     Upon information and belief, UB officials made ad hoc changes to the language of the UB Picketing and Assembly Policy on May 1, 2024 (or immediately thereafter).  UB officials then deleted the policy and terminated links to copies of the policy on their website and elsewhere.

69.     Despite the University's clinging to language disallowing "overnight assemblies" at UB, there is no record or support for the notion that such language prevents any assembly from occurring at the moment of dusk.  In fact, numerous high-profile and much larger protests occurred in hours after dusk on UB's campus in the years immediately preceding May 1, 2024 without any police enforcement.

70.     UB administrators did not utilize the Picketing and Assembly Policy to interrupt protests that extended past sunset on prior occasions.  There were high-profile protests against the on-campus speeches of Allen West in 2022 and Michael Knowles in 2023 that lasted well beyond sunset.  Knowles' speech drew hundreds of protesters, including community members not affiliated with the University.

71.     The events of May 1, 2024, caused significant physical and emotional injury to Claimants. Many suffered abrasions, joint sprains, concussions, nerve pain, or lasting psychological trauma, including panic attacks, religious distress, and withdrawal from school or work.

6937897v1 - 074223.0001

72. Upon information and belief, the Defendant's agents and employees coordinated and acted in concert to unlawfully disperse, arrest, and use force against Claimants, and are jointly and severally responsible for the injuries and violations alleged herein.

73. These injuries were the direct and foreseeable result of UB's negligent planning, supervision, and execution of its crowd control and protest response policies, as well as the reckless, unlawful, or excessive use of force by State officers under its command.

**VI. UB Faculty Response to May 1, 2024**

74. 307 members of the UB Faculty signed a May 3, 2024 letter to UB President Tripathi stating that they were "deeply disturbed by the University's decision to violently escalate the peaceful protest that students organized" on May 1, 2024. The letter noted that about 50 protestors had assembled and that "[t]he gathering was entirely peaceful," noting that the demonstrators immediately complied with policy when told to discontinue the erection of tents. The faculty observed that "The university policy barring overnight picketing and assembly does not mention sundown."

75. The faculty continued: "The rules about student protests were being updated in real time on the day of the protest, appearing discriminatory and making it difficult for even the most informed students to comply."

76. They stated: "the University demonstrated its intolerance towards free expression and flagrant disregard for student safety."

77. The letter explained: "Hyper surveillance, fear, and physical and psychological harm caused by violent policing is a well-documented structural determinant of health inequity, and on May 1st our University's decision undermined our own students' health and wellbeing."

78. It concluded: "The University's response is detrimental to the campus climate, the health and safety of students, and their ability to engage in peaceful protest."

79. On May 7, 2024, the UB Faculty Senate approved a resolution to Support the UB Faculty Statement on Police Action on Campus (the May 3, 2024 letter described herein), stating "there are reliable reports that the University responded dangerously and disproportionately to the peaceful protests held on UB's North Campus on May 1, 2024."

6937897v1 - 074223.0001

-14-

NYSCEF DOC. NO. 1

80.    The UB Faculty Senate resolved:

    a.   "that the Faculty Senate calls on the University to request that all charges against the demonstrators be dropped and that UB discontinue any process in relation to the UB code of conduct against the student protestors";

    b.   "that the Faculty Senate opposes the University calling in outside law enforcement to campus for peaceful protests";

    c.   "that the Faculty Senate calls for a public review of the policies and protocols of UB police, including the protocol for calling in outside law enforcement to campus"; and

    d.   "that the Faculty Senate calls for an investigation of the ad hoc changes to the campus picketing and assembly policy."

81.    On May 25, 2024, the UB Spectrum published a letter signed by 31 members of the UB Law School faculty to UB President Tripathi.  The Law School Faculty demanded that the UB administration request that all charges against the protestors be dropped.  The Law School Faculty compellingly explained:

> It would be particularly inappropriate for the University at Buffalo to deviate from this prudent course [requesting that all criminal charges be dropped] given the particular circumstances of the May 1 police action. The facts concerning the arrests on May 1 are largely undisputed. Before any arrests were made, the protesters had dismantled their encampment. They confined themselves to an outdoor public area of the campus. Shortly before sunset, which occurred by the calendar that day at 8:22 pm, the Muslims in attendance began the last of five mandatory prayers of the day. Mere seconds after the prayer was concluded, the police moved in to make their arrests. **Throughout this time, the protesters, students and non-students alike, were conducting themselves in a peaceful manner.** The SUNY Rules for the Maintenance of Public Order stipulate that, **"No student…or authorized visitor shall be subject to any limitation or penalty for expressing his or her views or for assembling with others for such purpose."** *See* Section I.E.1. The Rules then go on to specify that "peaceful picketing and other orderly demonstrations in public areas of campus grounds and buildings are not subject to interference provided there are no violations of the rules in section I.A. of this policy." *Id.* Section I.E.1.a.
>
> There are sixteen rules stated in terms of prohibited conduct under Section I.A**. None of these rules had been violated at the time of the arrests**. To read the applicable rules otherwise would be to nullify the command of Section I. E., noted above. The Rules For

the Maintenance of Public Order also provide for the promulgation of additional campus rules. *See* Section I.B. These supplementary rules applicable to the SUNY Buffalo campus are found in the Picketing & Assembling Policy. The only supplementary rule that would even arguably relate to the events of May 1 is the following: "Assemblies cannot last more than one day, duration not to exceed 12 hours in one day. No overnight assemblies/assemblies [sic] are allowed."

***The public protest on May 1, 2024, even to the extent that it may have extended beyond the official time of sunset, cannot reasonably be deemed a violation of the rule prohibiting "overnight assemblies."*** As noted above, any encampment had already been dismantled. ***The word "overnight" does not by its ordinary meaning imply the presence of assembled persons on public property for a brief duration beyond the moment of sunset.*** No one has suggested that the protesters were preparing to spend the night on campus. Even New York Penal Law Section 140.00, which provides definitions for terms found in those statutes governing criminal trespass and burglary, states that "'Night' means the period between thirty minutes after sunset and thirty minutes before sunrise. *See* NYPL § 140.00(4).

(emphasis added).

82.     The overwhelming response from faculty across UB reflects the stark reality that UB's response to May 1, 2024 was illegal, unjustified, and an affront to ideals of freedom and democracy.

## VII. Causes of Action

83.     The State of New York is liable for the tortious conduct of its agents, servants, and employees, including the University at Buffalo, the State University Police at Buffalo, and the individual officers named herein.

84.     The following causes of action are asserted on behalf of each Claimant against the State of New York and its officers, employees, and agents.

**COUNT I:     Violation of the New York State Constitution, Article I §§ 8, 9, and 11 (Speech, Assembly, Religion, and Equal Protection)**

85.     Claimants' rights to freedom of speech and expression (Art. I, § 8), freedom of assembly and petition (Art. I, § 9), religious freedom (Art. I, § 3), and equal protection of the laws (Art. I, § 11) were violated by the actions of Defendant's agents and employees on May 1, 2024.

86.     These constitutional protections were infringed by the unlawful dispersal orders, excessive force, wrongful arrests, and religious discrimination described above.

6937897v1 - 074223.0001

-16-

87.    Defendants further infringed these rights by issuing persona non grata orders barring Claimants from campus, thereby continuing to chill their speech and prevent access to public forums in retaliation for prior protected expression.

a) **Free Speech and Assembly:**

88.    Claimants were engaged in peaceful protest, protected chanting, prayer, and other expressive conduct in a public space.  Defendant's agents and employees disrupted and forcibly ended this protected activity through arrests, physical force, and arbitrary curfew enforcement.

b) **Religious Freedom:**

89.    Several Claimants were engaged in Maghrib prayer during the dispersal order and arrest. UBPD officers, acting on behalf of the State, dislodged religious garments, interfered with prayer, and refused reasonable accommodation, violating Claimants' right to free religious exercise.

c) **Equal Protection:**

90.    Officers disproportionately targeted Muslim students, visibly religious participants, and individuals perceived to be of Middle Eastern descent. At the same time, counter-protesters with opposing viewpoints were not subjected to arrest or force. This constitutes unlawful discrimination based on viewpoint, ethnicity, and religion.  Defendants' conduct reflected invidious discrimination, including targeted arrests of Muslim and Arab-American students, disproportionate force against visibly religious demonstrators, and leniency toward counter-protestors with opposing viewpoints.

91.    As a direct and proximate result of these violations of the New York Constitution, Claimants suffered physical injury, emotional trauma, economic loss, and damage to their dignity and liberty interests, for which they seek compensation.

**COUNT II:    Assault and Battery (New York Common Law)**

6937897v1 - 074223.0001

92.     Defendants intentionally, offensively, and without justification made physical contact with each Claimant by tackling, grabbing, restraining, dragging, and/or pinning them to the ground.

93.     The use of force was grossly disproportionate, occurred without legal cause, and in most cases was inflicted while Claimants were either seated, kneeling, praying, or attempting to comply.  The repeated pile-on tactics, excessive joint manipulation, and disregard for medical pleas (e.g., "I can't breathe") constituted malicious battery beyond any reasonable use of force.

94.     The physical injuries sustained by Claimants — including bruises, sprains, lacerations, concussions, and nerve trauma — were the direct result of this unlawful use of force.

95.     Defendants' conduct constituted common law assault and battery.

## COUNT III:  False Arrest and False Imprisonment (New York Common Law)

96.     Claimants were detained and arrested by UBPD and other state law enforcement officers acting within the scope of their employment.

97.     At the time of their arrests, Claimants had not engaged in criminal activity, nor had they been provided with lawful, individualized orders to disperse that could have justified seizure.

98.     The arrests were carried out under color of authority but without probable cause, individualized warnings, or lawful dispersal authority under any written university policy or statute.

99.     Claimants were held in police vehicles or on a campus bus for processing, denied timely medical evaluation, and transported to a secondary location where they were issued appearance tickets for fabricated charges.

100.     These detentions, which included physical restraint, public shaming, and involuntary transport, were unlawful and constituted false arrest and false imprisonment under New York law.

## COUNT IV:  Negligence (New York Common Law)

6937897v1 - 074223.0001

-18-

101.     The State of New York, through SUNY Buffalo and the State University Police at Buffalo, owed a duty of care to the Claimants as students, guests, and members of the public lawfully present on campus.

102.     Defendants breached this duty by planning and executing a mass arrest operation without clear policy, lawful foundation, adequate training, or meaningful regard for constitutional or physical safety, and by deploying poorly supervised, inadequately trained officers into a peaceful crowd setting with no clear communication strategy or contingency plan for accommodating religious observance.

103.     The failure to communicate dispersal standards, accommodate prayer, de-escalate the event, or provide medical attention were acts of negligence that proximately caused Claimants' injuries.

104.     UB's failure to establish a policy that was clearly defined, uniformly applied, or narrowly tailored to prevent injury constituted negligence in policy design and execution.

**COUNT V:     Negligent Hiring, Training, and Supervision (New York Common Law)**

105.     The State of New York failed to adequately train the officers involved in crowd management, peaceful protest policing, or handling of religious expression in public settings.

106.     The failure to provide UBPD and State University Police officers with clear protocols for managing protected First Amendment activity led directly to the excessive and indiscriminate use of force against nonviolent demonstrators.  For example, officers were not trained in respectful handling of religious head coverings, leading to flagrant violations of Muslim women's rights. Others showed poor fitness for duty, including taunting arrestees and celebrating takedowns.

107.     Defendant also negligently retained officers who were unfit for duty, including officers with known propensities for using excessive force, engaging in biased enforcement, or mishandling peaceful assemblies.  Upon information and belief, Defendant knew or should have known of these officers' histories of misconduct, complaints, or disciplinary issues, and failed to take

6937897v1 - 074223.0001

appropriate remedial action.  The negligent retention of these officers was a substantial factor in causing the violations of Claimants' constitutional and common law rights on May 1, 2024

108.    The failure to discipline officers for similar conduct in prior incidents and the lack of oversight on May 1, 2024, reflect a pattern of negligent supervision.

**COUNT VI:  Failure to Implement or Enforce Lawful Policy (New York Common Law)**

109.    The State of New York, acting through SUNY and UB, failed to promulgate, communicate, or enforce lawful and constitutional policies for the control of peaceful protest on public university grounds.

110.    The timing of the May 1 arrests — during or immediately after prayer — and the arbitrary "8:23 p.m." dispersal deadline imposed without any written curfew or regulation demonstrate this failure.

111.    Upon information and belief, UB has previously allowed campus events, protests, and demonstrations to continue well after sunset without enforcement of any "dispersal" policy, revealing a lack of consistency and a failure to develop enforceable standards.

112.    UB's vague encampment rule was inconsistently applied, weaponized without procedural safeguards, and enforced without any written curfew or individualized dispersal order. This arbitrary enforcement constitutes a de facto policy of unconstitutional suppression.

113.    The absence of a lawful, neutral policy — including any policy to accommodate religious observance during protest events — and the discriminatory enforcement of ad hoc directives, such as the arbitrary '8:23 p.m.' dispersal deadline, was a substantial factor in the escalation, constitutional violations, and physical and emotional injuries suffered by Claimants.

**COUNT VII: Abuse of Process (New York Common Law)**

114.    The Defendant, through its agents and employees, initiated criminal process against the Claimants, including issuing appearance tickets and charging them with offenses such as

6937897v1 - 074223.0001

trespass, loitering, and disorderly conduct, without lawful basis and for the improper purpose of punishing and silencing them for engaging in constitutionally protected protest activity.

115. The initiation and continuation of process against the Claimants was not to adjudicate genuine violations of law, but rather to chill further expressive conduct and retaliate against the Claimants' viewpoints.

116. The decision to re-prosecute Claimant Frazier further evidences an intent to chill lawful speech and exact punishment beyond the scope of any legitimate law enforcement interest.

117. The use of the criminal process for this ulterior purpose constitutes abuse of process under New York law.

118. The PNG orders were also issued without notice, hearing, or individualized review, denying Claimants' procedural due process and arbitrarily excluding them from state property.

119. As a direct and proximate result of the Defendant's abuse of process, Claimants suffered damages including emotional distress, reputational harm, deprivation of liberty, and related economic losses.

**COUNT VIII:** **Violation of the New York State Constitution, Article I, § 6 (Due Process)**

120. Article I, § 6 of the New York State Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law.

121. The Defendant, through its agents and employees, deprived Claimants of their liberty interests without due process by issuing an arbitrary and unwritten dispersal order, failing to provide fair notice or an opportunity to comply, and effectuating mass arrests without individualized justification.

122. Claimants were never given notice of any violation or individualized instruction to disperse, and officers took enforcement action during active religious observance without pause, reflection, or de-escalation.

6937897v1 - 074223.0001

-21-

123.    The sudden and unclear shift in University policy, including the unexplained 8:23 p.m. deadline, and the immediate use of force without reasonable warnings or individualized assessments, violated Claimants' procedural due process rights.

124.    The University's PNG procedures offered no prior notice, no hearing, and no meaningful opportunity to contest designation – nor were they rescinded upon dismissal of criminal charges – violating Claimants' procedural due process rights.

125.    As a direct and proximate result of these due process violations, Claimants suffered physical injuries, emotional distress, reputational harm, and other compensable damages.

## COUNT IX:   Violation of the New York Civil Rights Law § 40-c (Discrimination Based on Religion and Ethnicity)

126.    New York Civil Rights Law § 40-c provides that no person shall, because of race, creed, color, national origin, sex, disability, or marital status, be subjected to any discrimination in their civil rights by any person or institution.

127.    Defendant's agents and employees, acting within the scope of their employment, discriminated against the Claimants on the basis of their religion (Islam) and/or ethnicity (Arab and Palestinian descent) during the May 1, 2024 protest at the University at Buffalo.

128.    This discrimination included, but was not limited to:

a.    targeting Muslim students during Maghrib prayer for arrest;

b.    forcibly dislodging religious garments such as hijabs;

c.    selectively enforcing dispersal orders against Claimants based on their perceived religion and ethnicity; and

d.    failing to accommodate religious observance while allowing non-Muslim counter-protesters to remain unimpeded.

129.    Defendant officers' conduct included the use of discriminatory slurs, dismissive comments in response to requests for religious accommodation, and visible celebration of violent arrests targeting Muslim and Arab-American participants.

6937897v1 - 074223.0001

130. Defendant's conduct deprived Claimants of their civil rights in violation of New York Civil Rights Law § 40-c.

131. As a direct and proximate result of the Defendant's unlawful discrimination, Claimants suffered physical injuries, emotional distress, humiliation, loss of liberty, reputational harm, and other damages.

132. Claimants seek compensatory damages against the Defendant for the violation of their rights under New York Civil Rights Law § 40-c.

**COUNT X: Violation of New York Civil Rights Law § 79-n (Harassment and Intimidation Based on Religion and Ethnicity)**

133. New York Civil Rights Law § 79-n prohibits any person from harassing, intimidating, threatening, or otherwise depriving any individual of their civil rights because of their race, color, national origin, ancestry, gender, religion, religious practice, age, disability, or sexual orientation.

134. Defendant, through its agents and employees, acting within the scope of their employment, engaged in intentional harassment, intimidation, and interference with Claimants' civil rights based on Claimants' religion (Islam), religious practices (prayer and observance), and/or ethnicity and ancestry (Arab or Palestinian descent).

135. Defendant's agents and employees, among other actions:

    a. targeted Muslim students engaged in religious prayer for physical arrest and dispersal;

    b. forcibly dislodged religious garments, including hijabs;

    c. refused to accommodate ongoing religious observances despite visible religious practice;

    d. applied force and intimidation selectively against individuals of particular religious and ethnic identity; and

    e. permitted non-Muslim counter-protesters to continue assembling without similar enforcement or dispersal.

6937897v1 - 074223.0001

CLAIM NO. E25-6199
RECEIVED NYSCEF: 05/01/2025

136. Defendant officers' conduct included the use of discriminatory slurs, dismissive comments in response to requests for religious accommodation, and visible celebration of violent arrests targeting Muslim and Arab-American participants.

137. These actions were intended to and did intimidate, humiliate, and harass Claimants because of their religion, religious practice, and ethnicity.

138. As a direct and proximate result of Defendant's violations of New York Civil Rights Law § 79-n, Claimants suffered physical injuries, emotional and psychological trauma, religious injury, loss of liberty, and other compensable damages.

139. Claimants seek compensatory damages against the State of New York for the violation of their rights under New York Civil Rights Law § 79-n.

**COUNT XI: MALICIOUS PROSECUTION (NEW YORK COMMON LAW) (As to Claimants Jazmine Frazier and Jay Ayoub Only)**

140. Defendant, through its officers, agents, and employees, initiated and maintained criminal proceedings against Claimants Frazier and Ayoub arising from their arrests on May 1, 2024.

141. After the initial charges against Claimant Frazier were dismissed, Defendant's officers recommended criminal proceedings without probable cause and with malice, intending to punish and chill Claimants' constitutionally protected conduct.

142. Specifically, Claimant Frazier was subjected to a retaliatory criminal prosecution initiated by the State University Police at Buffalo ("UBPD"), which remained pending for several months following the protest. On August 14, 2024, all charges against Claimant were dismissed. However, beginning on or about August 21, 2024, UBPD and UB officials refiled the previously dismissed charges, leading to additional legal proceedings that concluded with a dismissal in Claimant's favor in late February 2025.

143. Defendants baselessly and maliciously continued the prosecution against Claimant Ayoub through mid-September 2024. Then, the charges were dismissed in Amherst Town Court.

144.    On August 14, 2024, Amherst Town Justice Kara Buscaglia dismissed all charges against Claimant Frazier.  One week later, beginning on or about August 21, 2024, UB officials and UBPD took part in efforts to arrest Claimant Frazier through the re-filing of the previously dismissed charges against Claimant Frazier.  Despite knowledge of the identity of Claimant Frazier's criminal attorney, UB officials and UBPD participated in a harassment campaign against Claimant Frazier.  Claimant Frazier's criminal attorney later produced them for additional charges.

145.    The renewed criminal charges against Claimant Frazier were ultimately dismissed in their favor in late February 2025.

146.    Defendant's officers acted with actual malice and without reasonable or probable cause in initiating and pursuing the renewed criminal charges.

147.    As a direct and proximate result of Defendant's malicious prosecution, Claimants Frazier and Ayoub suffered emotional distress, reputational harm, deprivation of liberty, financial harm, and other damages.

148.    Claimants Frazier and Ayoub seek compensatory damages against the State of New York for the injuries caused by the malicious prosecution.

## VIII. Damages

149.    As a direct and proximate result of the violations and torts alleged herein, each Claimant suffered the following categories of harm:

   a.  **Physical injuries**, including bruising, lacerations, contusions, joint sprains, head trauma, nerve damage, and impaired mobility;

   b.  **Emotional and psychological injuries**, including post-traumatic stress, anxiety, depression, and panic attacks;

   c.  **Religious injury**, including humiliation, interference with sacred religious observances, and violation of religious dignity;

   d.  **Economic injury**, including missed work, academic disruption, and out-of-pocket medical expenses; and

6937897v1 - 074223.0001

e. **Loss of liberty, dignity, and public reputation**, stemming from wrongful arrest, unlawful detention, and public exposure.

150.  These injuries were directly and proximately caused by the actions, omissions, and policies of the State of New York, acting through its agencies and employees, including those named herein.

**WHEREFORE,** Claimants respectfully demand judgment against the State of New York on all Causes of Action stated herein, and request the following relief:

1.  Compensatory damages in an amount to be determined at trial, including damages for physical pain and suffering, emotional distress, humiliation, constitutional and civil rights injury, and loss of liberty;

2.  Consequential damages for lost wages, medical expenses, and educational disruption;

3.  Damages for religious discrimination, violation of sacred observance, and public degradation; and

4.  Such other and further relief as this Court may deem just, proper, and equitable; and

5.  That the State of New York honor and pay this claim in accordance with the law.

## IX. Total Amount Claimed

Claimants each seek damages in amounts exceeding the jurisdictional minimum of this Court, and state that the **total amount claimed for all injuries and losses collectively is not less than $25,000,000.00**.

6937897v1 - 074223.0001

-26-

NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 05/01/2025

DATED:    Buffalo, New York
April 30, 2025

_____
YOUSEF AHMED

LIPSITZ GREEN SCIME CAMBRIA LLP

By:_____
   ROBERT M. CORP, ESQ.
Attorneys for Claimant
Office and P.O. Address
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333
[RMC: #74288.0001]

6729825v1 - 071535.0001

STATE OF NEW YORK      )
                       ) SS.:
COUNTY OF ERIE         )

YOUSEF AHMED, being duly sworn deposes and says that he is the claimant above named; and makes this claim on behalf of self; he has read the foregoing claim and knows the contents thereof; the same is true to the knowledge of the claimant except for the matters herein alleged upon information and belief, and as to those matters, he believes them to be true.

_____
YOUSEF AHMED

Sworn to before me on this
30th day of ___April___, 2025.

_____
Notary Public

ROBERT M. CORP
NO. 02CO6432876
Notary Public, State of New York
Qualified in Erie County
My Commission Expires May 24, 20__

6729825v1 - 071535.0001

Case 1:25-cv-00391-MAV    Document 79-13    Filed 01/30/26    Page 30 of 48

DATED:        Buffalo, New York
              April 30, 2025

                                        _____
                                        JAY AYOUB

                                        LIPSITZ GREEN SCIME CAMBRIA LLP


                                        By:_____
                                              ROBERT M. CORP, ESQ.
                                        Attorneys for Claimant
                                        Office and P.O. Address
                                        42 Delaware Avenue, Suite 120
                                        Buffalo, New York 14202-3924
                                        (716) 849-1333
                                        [RMC: #74284.0001]

6729825v1 - 071535.0001

STATE OF NEW YORK    )
                     ) SS.:
COUNTY OF ERIE       )


JAY AYOUB, being duly sworn deposes and says that he is the claimant above named; and makes this claim on behalf of self; he has read the foregoing claim and knows the contents thereof; the same is true to the knowledge of the claimant except for the matters herein alleged upon information and belief, and as to those matters, he believes them to be true.

_____
JAY AYOUB

Sworn to before me on this
30th day of ___April___, 2025.

_____
Notary Public

ROBERT M. CORP
NO. 02CO6432876
Notary Public, State of New York
Qualified in Erie County
My Commission Expires May 24, 20__26

6729825v1 - 071535.0001

DATED:     Buffalo, New York
             April 30, 2025

MAJD AYOUB

LIPSITZ GREEN SCIME CAMBRIA LLP

By:_____
     ROBERT M. CORP, ESQ.
Attorneys for Claimant
Office and P.O. Address
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333
[RMC: #74286.0001]

6729825v1 - 071535.0001

STATE OF NEW YORK   )
                              ) SS.:

COUNTY OF ERIE       )

MAJD AYOUB, being duly sworn deposes and says that he is the claimant above named; and makes this claim on behalf of self; he has read the foregoing claim and knows the contents thereof; the same is true to the knowledge of the claimant except for the matters herein alleged upon information and belief, and as to those matters, he believes them to be true.

_____
MAJD AYOUB

Sworn to before me on this
30th day of ___April___, 2025.

_____
Notary Public

ROBERT M. CORP
NO. 02CO6432876
Notary Public, State of New York
Qualified in Erie County
My Commission Expires May 24, 20_26_

6729825v1 - 071535.0001

CLAIM NO. E25-6199
RECEIVED NYSCEF: 05/01/2025

DATED:     Buffalo, New York
           April 30, 2025

ELVI JO DOUGHERTY

LIPSITZ GREEN SCIME CAMBRIA LLP

By: _____
     ROBERT M. CORP, ESQ.
Attorneys for Claimant
Office and P.O. Address
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333
[RMC: #74283.0001]

6729825v1 - 071535.0001

STATE OF NEW YORK    )
                     ) SS.:
COUNTY OF ERIE       )

ELVI JO DOUGHERTY, being duly sworn deposes and says that she is the claimant above named; and makes this claim on behalf of self; she has read the foregoing claim and knows the contents thereof; the same is true to the knowledge of the claimant except for the matters herein alleged upon information and belief, and as to those matters, she believes them to be true.

_____
ELVI JO DOUGHERTY

Sworn to before me on this
30th day of April, 2025.

_____
Notary Public

ROBERT M. CORP
NO. 02CO6432876
Notary Public, State of New York
Qualified in Erie County
My Commission Expires May 24, 2026

6729825v1 - 071535.0001

CLAIM NO. E25-6199
RECEIVED NYSCEF: 05/01/2025

Case 1:25-cv-00391-MAV   Document 79-13   Filed 01/30/26   Page 36 of 48

DATED:     Buffalo, New York
           April 25, 2025

 

 

SOLIEGH DOUGHERTY

LIPSITZ GREEN SCIME CAMBRIA LLP

By:_____
   ROBERT M. CORP, ESQ.
Attorneys for Claimant
Office and P.O. Address
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333
[RMC: #74224.0001]

6729825v1 - 071535.0001

STATE OF NEW YORK     )
                      ) SS.:
COUNTY OF ERIE        )


SOLIEGH DOUGHERTY, being duly sworn deposes and says that she is the claimant above named; and makes this claim on behalf of self; she has read the foregoing claim and knows the contents thereof; the same is true to the knowledge of the claimant except for the matters herein alleged upon information and belief, and as to those matters, she believes them to be true.


_____
SOLIEGH DOUGHERTY

Sworn to before me on this
30ᵗʰ day of ___April___, 2025.

_____
Notary Public

> ROBERT M. CORP
> NO. 02CO6432876
> Notary Public, State of New York
> Qualified in Erie County
> My Commission Expires May 24, 2026

6729825v1 - 071535.0001

CLAIM NO. E25-6199

RECEIVED NYSCEF: 05/01/2025

DATED:     Buffalo, New York
              April 15, 2025

_____

JAZMINE C. FRAZIER

LIPSITZ GREEN SCIME CAMBRIA LLP

By:_____

    ROBERT M. CORP, ESQ.

Attorneys for Claimant

Office and P.O. Address

42 Delaware Avenue, Suite 120

Buffalo, New York 14202-3924

(716) 849-1333

[RMC: #74222.0001]

6729825v1 - 071535.0001

NYSCEF DOC. NO. 1 Case 1:25-cv-00391-MAV    Document 79-13    Filed 01/30/26    Page 39 of 48
RECEIVED NYSCEF: 05/01/2025

STATE OF NEW YORK   )
                           ) SS.:

COUNTY OF ERIE     )

      JAZMINE C. FRAZIER, being duly sworn deposes and says that JAZMINE C. FRAZIER is the claimant above named; and makes this claim on behalf of self; JAZMINE C. FRAZIER has read the foregoing claim and knows the contents thereof; the same is true to the knowledge of the claimant except for the matters herein alleged upon information and belief, and as to those matters, JAZMINE C. FRAZIER believes them to be true.

_____
JAZMINE C. FRAZIER

Sworn to before me on this
__ day of __APRIL__, 2025.

_____
Notary Public

ROBERT M. CORP
NO. 02CO6432876
Notary Public, State of New York
Qualified in Erie County
My Commission Expires May 24, 20__

6729825v1 - 071535.0001

NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 05/01/2025

DATED:     Buffalo, New York
           April 30, 2025

_____
TIMOTHY GEORGER

LIPSITZ GREEN SCIME CAMBRIA LLP

By:_____
    ROBERT M. CORP, ESQ.
Attorneys for Claimant
Office and P.O. Address
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333
[RMC: #74289.0001]

6729825v1 - 071535.0001

STATE OF NEW YORK )
) SS.:
COUNTY OF ERIE )

TIMOTHY GEORGER, being duly sworn deposes and says that he is the claimant above named; and makes this claim on behalf of self; he has read the foregoing claim and knows the contents thereof; the same is true to the knowledge of the claimant except for the matters herein alleged upon information and belief, and as to those matters, he believes them to be true.

_____
TIMOTHY GEORGER

Sworn to before me on this
30th day of ___April___, 2025.

_____
Notary Public

ROBERT M. CORP
NO. 02CO6432876
Notary Public, State of New York
Qualified in Erie County
My Commission Expires May 24, 20 26

6729825v1 - 071535.0001

DATED:    Buffalo, New York
April 26, 2025

_____
IBRAHIM KHATIB

LIPSITZ GREEN SCIME CAMBRIA LLP

By:_____
    ROBERT M. CORP, ESQ.
Attorneys for Claimant
Office and P.O. Address
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333
[RMC: #74241.0001]

6936365v1 - 074241.0001

STATE OF NEW YORK   )
                               ) SS.:

COUNTY OF ERIE        )

IBRAHIM KHATIB, being duly sworn deposes and says that he is the claimant above named; and makes this claim on behalf of self; he has read the foregoing claim and knows the contents thereof; the same is true to the knowledge of the claimant except for the matters herein alleged upon information and belief, and as to those matters, he believes them to be true.

_____
IBRAHIM KHATIB

Sworn to before me on this
26th day of ___April___, 2025.

_____
Notary Public

ROBERT M. CORP
NO. 02CO6432876
Notary Public, State of New York
Qualified in Erie County
My Commission Expires May 24, 20__26

6936365v1 - 074241.0001

DATED:      Buffalo, New York
            April 30th 2025

                                    _____
                                    HANNAH KRULL

                                    LIPSITZ GREEN SCIME CAMBRIA LLP

                                    By:_____
                                        ROBERT M. CORP, ESQ.
                                    Attorneys for Claimant
                                    Office and P.O. Address
                                    42 Delaware Avenue, Suite 120
                                    Buffalo, New York 14202-3924
                                    (716) 849-1333
                                    [RMC: #74285.0001]

6729825v1 - 071535.0001

Case 1:25-cv-00391-MAV    Document 79-13    Filed 01/30/26    Page 45 of 48

STATE OF NEW YORK  )
                   ) SS.:
COUNTY OF ERIE     )

HANNAH KRULL, being duly sworn deposes and says that she is the claimant above named; and makes this claim on behalf of self; she has read the foregoing claim and knows the contents thereof; the same is true to the knowledge of the claimant except for the matters herein alleged upon information and belief, and as to those matters, she believes them to be true.

_____
HANNAH KRULL

Sworn to before me on this
30ᵗʰ day of ___April___, 2025.

_____
Notary Public

ROBERT M. CORP
NO. 02CO6432876
Notary Public, State of New York
Qualified in Erie County
My Commission Expires May 24, 2026

6729825v1 - 071535.0001

NYSCEF DOC. NO. 1 Case 1:25-cv-00391-MAV    Document 79-13    Filed 01/30/26    Page 46 of 48
RECEIVED NYSCEF: 05/01/2025

DATED:        Buffalo, New York
              April 30, 2025


_____
NOOR MOHAMMED

LIPSITZ GREEN SCIME CAMBRIA LLP


By:_____
    ROBERT M. CORP, ESQ.
Attorneys for Claimant
Office and P.O. Address
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333
[RMC: #74287.0001]

6729825v1 - 071535.0001

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 05/01/2025

STATE OF NEW YORK )
                              ) SS.:

COUNTY OF ERIE )

      NOOR MOHAMMED, being duly sworn deposes and says that she is the claimant above named; and makes this claim on behalf of self; she has read the foregoing claim and knows the contents thereof; the same is true to the knowledge of the claimant except for the matters herein alleged upon information and belief, and as to those matters, she believes them to be true.

                                              NOOR MOHAMMED

Sworn to before me on this
30th day of ___April___, 2025.

_____
Notary Public

ROBERT M. CORP
NO. 02CO6432876
Notary Public, State of New York
Qualified in Erie County
My Commission Expires May 24, 20_26_

6729825v1 - 071535.0001

**COURT OF CLAIMS**
**STATE OF NEW YORK**

Date Filed: _____
Court Date: _____
Assigned Justice: _____

File No.: _____

*Yousef Ahmed, et al.*

*VS.*

*The State of New York*

Plaintiff(s)/Petitioner(s)

Defendant(s)/Respondent(s)

STATE OF New York    , COUNTY OF ALBANY     SS.:

_____ James Perone _____ , being duly sworn deposes and says: Deponent is not a party herein, is over 18 years of age and resides in New York. On **Thursday, May 1, 2025** at **1:30 PM** . at **Justice Building, Albany, NY 12211** deponent served the within **Court Notice Regarding Availability of Electronic Filing Court of Claims Cases with Claim and Supporting Papers**

on: _____ **New York State Attorney General** _____

____**Defendant**____ therein named.

**CORPORATION**   By delivering to and leaving with___ **Amber Schofield, authorized to accept** and that deponent knew the person so served to be the
**#1** ☒   authorized agent of the corporation, and said person stated that he/she was authorized to accept service on behalf of the corporation.

A description of the Defendant, or other person served, or spoken to on behalf of the Defendant is as follows:

**DESCRIPTION**   Sex:__Female__   Color of skin:__White__   Color of hair:___Blonde___   Age:_22 - 35 Yrs._   Height:_5' 4" - 5' 8"_
**#2** ☒   Weight:_131-160 Lbs._   Other Features:
(use with #1, 2 or 3)

**#3 WIT. FEES**   $ the authorized witness fee and / or traveling expenses were paid (tendered) to the recipient.
☐

**#4 OTHER**
☐

Sworn to before me on this 1st day of May 2025

Heather Morigerato
Notary Public, State of New York
No. 01MO6261464
Qualified in Albany County
Commission Expires May 14, 2028

James Perone

Job # S1924882

*Servico, Inc. P.O. Box 871, Albany, NY 12201*

1 of 1