UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

YOUSEF AHMED, et al.,

                        Plaintiffs,

vs.

CITY OF BUFFALO, et al..

                        Defendants.

Case No. 25-cv-00391

---

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS

LETITIA JAMES
Attorney General of the State of New York
Daniel R. Maguire
Main Place Tower, Suite 300A
350 Main Street
Buffalo, New York 14202
Tel: (716) 853-8419

*Attorneys for State Defendants*

Defendants Satish K. Tripathi ("President Tripathi"), Kimberly Beaty, Scott Marciszewski, Jonathan Fletcher, Timoty Bacon, Christopher Kerr, Robert Adamski, Luke Galmarini, Christopher Gruttaria, Matthew Kostek, Gregory Kurowski, Alexis Pearce, Michael Puerner, Amy Revelas, Michael Saraceno, Christopher Sprigg, Douglas Takac, Timothy Thompson, Robert Majewski, Kevin Will (collectively, the "State Defendants" and, collectively without President Tripathi, the "UBPD Defendants") submit this reply memorandum of law in support of their partial motion to dismiss.

## ARGUMENT

## POINT I

**PLAINTIFFS CANNOT OBTAIN INJUNCTIVE RELIEF AGAINST THE STATE DEFENDANTS SUED IN THEIR INDIVIDUAL CAPACITIES**

**A.      Plaintiffs cannot obtain injunctive relief against the UBPD Defendants.**

In Counts 1, 2, 4, 5, 6, and 7, Plaintiffs seek injunctive relief against the UBPD Defendants requiring those individuals to implement policies and procedures relating to the policing of future protests.  Compl., ECF No. 1, ¶¶ 249, 259, 283, 296, 305, 320.  Plaintiffs, however, cannot obtain injunctive relief against the UBPD Defendants because Plaintiffs named the UBPD Defendants in their individual capacities only.  *Id.* at ¶ 38; *see* State Def. Mem., ECF No. 49-1, 3-4.

Plaintiffs do not dispute that they only named the UBPD Defendants in their individual capacities.  Pl. Opp. Mem., ECF No. 79, 88.  Instead, Plaintiffs argue that "courts applying Federal Rule of Civil Procedure 8's liberal pleading standards permit plaintiffs to amend capacity designation or construe injunctive relief as requests as directed to defendants in their official capacities."  *Id.*  It is unclear whether Plaintiffs are requesting leave to amend their complaint to change the capacity designations or asking the court to merely construe the

complaint as naming these individuals in their official and individual capacity. If it is the former, the State Defendants do not object provided the State Defendants have an opportunity to move against the amended complaint. If it is the latter, the Court should deny the request.

While Plaintiffs assert that courts can construe a claim naming a defendant in their individual capacity as an official capacity claim when the plaintiff seeks injunctive relief, Plaintiffs cite no cases supporting that assertion. This is not surprising. In such cases, courts instead will dismiss the injunctive relief claim. *See Marsh v. Kirschner,* 31 F. Supp. 2d 79, 80 (D. Conn. 1998); *see also Kuck v. Danaher,* 822 F.Supp.2d 109, 143 (D. Conn. 2011) ("Plaintiffs cannot obtain prospective injunctive relief from the Defendants sued in their individual capacities as such Defendants would not have the authority to provide such relief in their individual capacities."); *Nassau & Suffolk County Taxi Owners Association, Inc. v. State,* 336 F. Supp. 3d 50, 69 (E.D.N.Y. 2018) ("since Plaintiffs are not seeking money damages but only prospective relief, a suit against the Individual Defendants in their individual or personal capacities is improper").

**B.    Plaintiffs cannot obtain injunctive relief against President Tripathi**

Similarly, Plaintiffs cannot seek injunctive relief against President Tripathi because every claim against President Tripathi is explicitly asserted against him in his personal capacity. *See* ECF No. 49-1, 4; Compl., Counts 1, 2, 5, 6, 7, 18, 19. Plaintiffs assert this argument "rests on a factual error" because the complaint "names President Tripathi in both his individual and official capacities for certain claims." ECF No. 79, 87-88. While the complaint does name President Tripathi in his official capacity (*see* Compl. ¶ 35), every claim against President Tripathi is explicitly asserted against him *individually* (*see* Counts 1, 2, 5, 6, 7, 18, 19). As with the UBPD Defendants, the State Defendants do not object to Plaintiffs amending the complaint to assert claims against President Tripathi in his official capacity provided the State Defendants can move

against the amended complaint. The Court, however, should not simply interpret claims explicitly asserted against President Tripathi in his individual capacity as official capacity claims. Interpreting claims as such would deprive the State Defendants of the opportunity to raise defenses, including sovereign immunity, to the official capacity claims.

## POINT II

### PLAINTIFFS FAIL TO STATE A FIRST AMENDMENT RETALIATION CLAIM AGAINST PRESIDENT TRIPATHI BASED ON THE RECORDING OF PUBLIC OFFICIALS

In Count 2, Plaintiffs assert a First Amendment retaliation claim against President Tripathi asserting that he retaliated against Plaintiffs for filming police activity. Compl. ¶ 251. Plaintiffs, however, fail to allege that President Tripathi was at the protest or was aware that Plaintiffs were filming police activity. *See* ECF No. 49-1, 4-5. In response, Plaintiffs argue that the complaint "alleges that [President Tripathi] approved the coordinate dispersal and mass-arrest operation directed at the protest itself." ECF No. 79, 44-45. While this allegation may be adequate to support Plaintiffs' other First Amendment claim against President Tripathi (*see* Counts 1), it does not support Plaintiff's claim that President Tripathi retaliated against Plaintiffs for recording police activity. To state such a claim, Plaintiffs must allege that there was a causal connection between President Tripathi approving the coordinated dispersal of the protest and Plaintiffs' filming the police activity. There is no such allegation. Indeed, Plaintiffs fail to allege that President Tripathi even knew that Plaintiffs were filming the police activity. Courts have repeatedly dismissed First Amendment retaliation claims where the defendants had no knowledge of the allegedly protected speech. *See Kilduff v. Rochester City School Dist.*, 53 F. Supp. 3d 610, 617 (W.D.N.Y. 2014); *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 223 (N.D.N.Y. 2012), *aff'd*, 524 Fed. Appx. 742 (2d Cir. 2013); *Spencer v. Holley Cent. Sch. Dist.*, 734 F. Supp. 2d 316, 321 (W.D.N.Y. 2010).

## POINT III

### THE COURT SHOULD DISMISS THE NEW YORK CONSTITUTIONAL CLAIMS AGAINST THE STATE DEFENDANTS

In Counts 9 and 10, Plaintiffs assert New York constitutional claims against the State Defendants. Compl. ¶¶ 364-384. These claims must be dismissed because they are duplicative of Plaintiffs' Section 1983 claims. ECF No. 49-1, 5-6. This argument was also raised by the Municipal Defendants. In their omnibus opposition, Plaintiffs argue that "Defendants' motions to dismiss Plaintiffs' state constitutional claims should be denied as to all *municipal defendants*" (emphasis added) because Section 1983 is not an adequate alternate remedy for state constitutional claims asserted against municipalities under a respondeat superior theory. ECF No. 79, 77-79. Plaintiffs do not appear to be opposing the State Defendants request to dismiss the constitutional claims as against them, and, even if they were, Plaintiffs argument against dismissal of the constitutional claims is only relevant to the Municipal Defendants. Accordingly, the Court should grant the State Defendants' motion to dismiss the state constitutional claims against them.

## POINT IV

### THE COURT SHOULD DISMISS THE N.Y. CIV. RIGHTS LAW 40-C CLAIM AGAINST THE STATE DEFENDANTS

The Court should dismiss Plaintiff's N.Y. Civ. Rights Law 40-c claim because Plaintiffs failed to first provide notice to the Attorney General of New York. ECF No. 49-1, 6. Plaintiffs argue that they satisfied this requirement by serving the Attorney General with their Notices of Intention to File a Claim and their Claims relating to the incident at issue herein in July of 2024. ECF No. 79, 79. There are two problems with this argument. First, Plaintiffs do not allege in the complaint that they satisfied the notice requirement by filing the Notice of Intention to File a Claim or Claims. Instead, Plaintiffs make this argument for the first time in their opposition

4

brief and rely on evidence submitted in support of their opposition. *Id.* This is not permitted. *See Colliton v. Bunt*, 709 F. App'x 82, 83 (2d Cir. 2018) ("courts cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss"). Second, Plaintiffs' Notices of Intention to File a Claim and Claims do not satisfy the N.Y. Civ. Rights Law 40-d's notice requirement. The purpose of the notice requirement is to ensure that the Attorney General receives notice of potential N.Y. Civil Rights Law 40-c violations so that the Attorney General can investigate that violation if necessary pursuant to her statutory authority. *See New Hope Family Servs. Inc. v. James*, 2022 WL 449277, at *5 (N.D.N.Y. Sept. 28, 2022) (explaining that Attorney General has authority to prosecute violation of Civil Rights Law § 40-c). That purpose is not served when the Attorney General is served with Notices of Intention to File a Claim and Claims. Those documents and the requirement that the Attorney General be served with them serve an entirely different purpose related to the Attorney General's role in the Court of Claims. *See* Court of Claims Act, § 11.

## POINT V

### THE COURT SHOULD DISMISS THE NEGLIGENCE CLAIM AGAINST THE STATE DEFENDANTS

The Court should dismiss Count 14 because the alleged negligent conduct is the same conduct for which Plaintiff asserts their excessive force, battery, and false arrest claims. ECF No. 49-1, 7. Relying on *Maring v. City of Rochester*, No. 21-cv-6720, 2022 WL 2356721, at *9 (W.D.N.Y. June 30, 2022), Plaintiffs argue that they did not plead negligent arrest or negligent prosecution but instead plead operation and planning negligence in a coordinated multi-agency crowd-control operation. ECF No. 79, 84-85. In *Maring*, however, the court dismissed the negligence claims asserted against the individual defendants while allowing the negligence claims to proceed against the municipality. *Id.* at *10. Here, as to the State Defendants,

5

Plaintiffs only asserted the negligence claim against the individual UBPD Defendants. *See* Compl. Count 14. Accordingly, the court should follow the reasoning of *Maring* and dismiss the negligence claims asserted against the UBPD Defendants as duplicative.

### POINT VI

### THE COURT SHOULD DISMISS PLAINTIFFS' FOURTEENTH AMENDMENT CLAIM

The Court should dismiss Count 7 because Plaintiffs' Fourteenth Amendment claim because is duplicative of Plaintiffs' Fourth and First Amendment claims. ECF No. 49-1, 7-8. Plaintiffs acknowledge that to the extent their Fourteenth Amendment claim is duplicative of "Plaintiff's seizure, force, or speech claims" the Fourteenth Amendment claim should be dismissed. ECF No. 79, 56-57. Plaintiffs, however, argue that their Fourteenth Amendment claim "address distinct due-process problems that other counts do not fully capture, including: (1) vagueness in the ad hoc "dusk" dispersal rule and the enforced 8:23 p.m. arrest cutoff; and (2) exclusion and persona-non-grata (PNG) designations imposed without meaningful pre- or prompt post-deprivation process." *Id.* at 56. As to the former, this claim is duplicative of Plaintiffs' First Amendment claim. In the First Amendment claim, Plaintiffs explicitly object to the vague and arbitrary nature of the dispersal ultimatum and argues that it violated the First Amendment. Compl., ¶¶ 229-233. Accordingly, the Court should evaluate these allegations under the First Amendment not the Fourteenth Amendment.

As to the PNG, the Second Circuit has held that universities do not violate the Fourteenth Amendment when issuing PNG letters to campus visitors[1] because they do not "have a Fourteenth Amendment liberty or property interest in being present on campus." *Moore v.*

---

[1] Plaintiffs allege that only non-students were issued PNG letters. Compl. ¶ 149.

6

*Ricotta*, 29 Fed. Appx. 774, 775 (2d Cir. 2002). Accordingly, Plaintiffs cannot maintain a Fourteenth Amendment claim related to the PNG determinations.

## POINT VII

### THE COURT SHOULD DISMISS PLAINTIFFS' FOURTEENTH AMENDMENT MALICIOUS PROSECUTION CLAIM

In Count 18, Plaintiffs assert federal malicious prosecution claims under the Fourth and Fourteenth Amendments. The Court should dismiss the malicious prosecution claims asserted under the Fourteenth Amendment because malicious prosecution is properly analyzed under the Fourth Amendment. Plaintiffs agree. ECF No. 79, 60. Accordingly, the Court should dismiss Plaintiffs' Fourteenth Amendment malicious prosecution claim.

## CONCLUSION

For the foregoing reasons, the Court should grant the State Defendants' partial motion to dismiss.

Dated:  March 13, 2026
Buffalo, New York

>LETITIA JAMES
>Attorney General of the State of New York
>Attorney for State Defendants
>
>BY: /s/ *Daniel Maguire*
>DANIEL MAGUIRE
>Assistant Attorney General, of Counsel
>Main Place Tower, Suite 300A
>350 Main Street
>Buffalo, NY 14202
>(716) 853-8400
>Daniel.Maguire@ag.ny.gov